**1822-CC11782**

Electronically Filed - City of St. Louis - December 06, 2018 - 02:10 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

███████████Y, a MINOR, )
████████████ a MINOR, )
███████████Y, a MINOR, )       Cause No.
████████████., a MINOR, )
And )                            Div. 1
███████████████ a MINOR, )
       Plaintiffs, )
v. **)**
**THE MISSOURI HIGHWAYS AND** )
**TRANSPORTATION COMMISISON**, )
       Defendant. )

<u>APPLICATION FOR APPOINTMENT OF NEXT FRIEND FOR A MINOR</u>

COMES NOW **CHRISTINA HILL, Maternal Aunt** for the Minors listed above, and moves to

become Next Friend for the above-listed Minors in order to pursue litigation (both wrongful

death and personal injury) arising out of a motor vehicle accident on October 26, 2018 in the

City of St. Louis, Missouri, and arising out of the death of their mother WHITNEY THOMAS.

In support of said Application, CHRISTINA HILL states as follows:

1.  On October 26, 2018, the **Decedent WHITNEY THOMAS**, DOB██████1987, who formerly

resided within the City of St. Louis a ████████████, St. Louis, MO 63137, died in a motor

vehicle accident.

2.  At the time of her death, the Decedent was unmarried.

3.  At the time of her death, the Decedent WHITNEY THOMAS was survived by six minor

children:



1

Electronically Filed - City of St. Louis - December 06, 2018 - 02:10 PM

█████████████████████████

4.  All of these minors are under the age of 14.

5.  With respect to five of the children (all of the children except fo ███████████████), no father is listed on the birth certificates of the minor children.

6.  No Legal Guardian currently exists for those five children.

7.  There is a possibility that the biological father of the three older children ████████ ██████████████████████████████████Y) might be an individual named CORNELL MANLEY, who is currently serving multiple life sentences in a Missouri correctional institution for crimes which include First Degree Murder.

8.  The Guardian fo ███████████████N is ANTHONY MILTON, SR., who was also seriously injured in the accident.  This Application does NOT seek Next Friend status relating to ████████████████because ANTHONY MILTON, SR. is her Legal Guardian.

9.  There is a possibility that ANTHONY MILTON, SR. is the biological father of ██████████ ██████████████. an ███████████████████ although that status will need to be proven later in a Guardianship proceeding.

10.  *Mo. S. Ct. Rule 52.02* provides that where there is no current Legal Guardian for a minor child under the age of 14, any blood relative may apply to become the Next Friend for such a Minor Child for purposes of pursuing litigation on behalf of that Minor Child.

11.  There is no current Legal Guardian for the five Minor children listed above.

Electronically Filed - City of St. Louis - December 06, 2018 - 02:10 PM

12. Applicant **CHRISTINA HILL** ████████████, St. Louis MO 63123, DOB ████/1990, SSN: XXX-XX-3857, ████████████, is one of the Minor children's three surviving MATERNAL AUNTS.

13. In this Application, CHRISTINA HILL seeks to be declared the Next Friend for the five Minor Children listed above. If a Court later determines that any person is the Legal Guardian for any of these five Minor Children, then, at that time, the Guardian shall substitute for the Next Friend to make litigation decisions for that child for whom he/she is a Legal Guardian.

14. CHRISTINA HILL has consulted with an attorney, JOHN F. MEDLER, JR., MO Bar #38533, with THE MEDLER LAW FIRM, LLC, and believes that each of the children has a legitimate wrongful death claim for the wrongful death of their mother, WHITNEY THOMAS, against, among other possible Defendants, the MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION.

15. In addition, each of the six minor children was injured in the aforementioned accident. The oldest child ████████████Y, is currently believed to be paralyzed from the waist down as a result of the accident. The third chil ████████████ suffered a broken femur and other serious injuries in the accident.

16. The Next Friend also seeks to be appointed Next Friend for the five minor children listed above who have no Legal Guardian so that she can pursue, on behalf of the five Minors, personal injury negligence claims against, *inter alia,* THE MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION.

Electronically Filed - City of St. Louis - December 06, 2018 - 02:10 PM

17.  The attached forms for the appointment of a Next Friend are attached hereto as Exhibit A. These forms contain the Consent of CHRISTINA HILL to act as Next Friend, and a proposed Order for the Court.

WHEREFORE, Plaintiff respectfully requests that the Court appoint CHRISTINA HILL the lawful Next Friend of the five Minor Children referenced above, and that she be entitled to make all litigation decisions on the behalf of the Minors for both their wrongful death and personal injury claims.

Respectfully Submitted,

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM, LLC
2030 Main Street, Suite 1300
Irvine, CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Attorney for the proposed Next Friend CHRISTINA HILL*

**FILED**

DEC 11 2018

# MISSOURI CIRCUIT COURT

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ DEPUTY

# TWENTY-SECOND JUDICIAL CIRCUIT
(CITY OF ST. LOUIS)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ _et al_

VS

Mo Highways and Transportation Commission

CASE NO. 1822-CC11782 DIVISION ___1___    12/11   18

## ORDER/JUDGMENT/MEMORANDUM

Plaintiff's request for appointment of next Friend for a minor is hereby granted.

Christina Hill is appointed lawful next friend for the five minor children in this case.

So Ord _____

_____

**ENTERED**

DEC 13 2018

LK

FORM 14 (Rev 11/02)

# MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
## (ST. LOUIS CITY)

CHRISTINA HILL NEXT FRIEND FOR )
▮▮▮▮▮▮▮▮▮▮ ET AL , )
          Petitioner )
           )    Cause No.    1822-CC11782
           )
           )    Division No. 6
           )
           )

**FILED**

**DEC 17 2018**

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY_____ DEPUTY

## **ORDER**

Cause hereby set for Status Hearing on Tuesday, January 22, 2019 at 9 am.

**SO ORDERED:**

*[signature]*

**Michael F. Stelzer, Circuit Judge**

December 17, 2018

cc: *all parties of record*

**ENTERED**

**DEC 18 2018**

**MS**

Electronically Filed - City of St. Louis – January 13, 2019 - 05:43 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| **CHRISTINA HILL**, *in her capacity as* | ) | |
| *Next Friend for the following Minor* | ) | |
| *Plaintiffs:* | ) | |
| ██████████████Y, | ) | |
| ██████████████Y, | ) | |
| ████████████████ | ) | Cause No. 1822-CC11782 |
| █████████████████████ | ) | |
| a ██████████████ | ) | |
| Plaintiff, | ) | |
| | ) | Div. 1 |
| vs. | ) | |
| **THE MISSOURI HIGHWAYS AND** | ) | |
| **TRANSPORTATION COMMISSION** | ) | |
| **a/k/a THE MISSOURI DEPARTMENT** | ) | |
| **OF TRANSPORTATION a/k/a** | ) | |
| **"MODOT,"** | ) | |
| Hold Service, | ) | |
| Defendant. | ) | |

## PETITION FOR WRONGFUL DEATH AND PERSONAL INJURY

COMES NOW Plaintiff CHRISTINA HILL, by and through counsel, and, as the

Maternal Aunt and Next Friend of the Minor Plaintiffs ████████████████████

████████████████████████████████████., and ██████████████ files this

Petition for Wrongful Death and Personal Injury against Defendant:

1.  The Decedent WHITNEY THOMAS, DOB██████/1987, was a former resident of the City of

St. Louis.  She was a citizen of Missouri. When she died, she was not married and had no living

parents.

2.  The Decedent WHITNEY THOMAS died in a motor vehicle accident on October 26, 2018.

At the time of her death, the Decedent had six minor children:

██████████████████████████████
████████████████████████████████
████████████████████████

1

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



3.  No biological father is listed on the birth certificates of the oldest three children.  Therefore, the oldest three childre                                                                        y at present have no Legal Guardian.

4.  ANTHONY MILTON, SR.  is listed on the birth certificate as the biological father for the fifth of the six children--Min                                    Therefore, ANTHONY MILTON, SR. is the Legal Guardian

5.  No biological father is listed on the birth certificates f                                      and                                   Therefore, at present, they have no Legal Guardian.

6.  ANTHONY MILTON, SR. apparently claims to be the biological father o                           a                               However, at this time, he has not been appointed their Legal Guardian.

7.  When the Decedent WHITNEY THOMAS died on October 26, 2018, she left all five of the six children (the five Minor Plaintiffs herein) without a Legal Guardian.

6.  Pursuant to the Missouri Next Friend Statute, *Rev. Stat. Mo. Secs. 507.184 and 507.120,* when a parent dies and leaves a Minor plaintiff with no Legal Guardian, a relative of the Minor may apply to become the child's Next Friend in order to pursue litigation on behalf of the child.

7.  On December 11, 2018, the Circuit Court of the City of St. Louis appointed Plaintiff herein, CHRISTINA HILL, who is the maternal aunt of the Minor children, to act as Next Friend for all of the Minors excep                    .

8.  Plaintiff Christina Hill brings this case on behalf of the five Minor Plaintiffs. Plaintiff Christina Hill is a resident of the City of St. Louis and a citizen of Missouri.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

9.  Prior to their Mother's death, and at the present time, all five of the Minor Plaintiffs are/were residents of the City of St. Louis and citizens of Missouri. Pursuant to the Missouri wrongful death act, *Rev. Stat. Mo. Sec. 537.080 et seq*., because the Decedent died, left no spouse, and left no surviving parents, her six minor children are her wrongful death beneficiaries entitled to bring a wrongful death claim and collect damages arising out of their mother's wrongful death, which was caused by the negligence of Defendant.    The children are also entitled to bring their own personal injury lawsuits through their Next Friend Christina Hill.

10.  Defendant Missouri Highways and Transportation Commission ("MODOT") was a governmental department/agency of the State of Missouri.  For citizenship purposes, MODOT is a citizen of Missouri.

11.  This case accrued on October 26, 2018 within the City of St. Louis, Missouri.

12.  The Decedent was first injured and then died in a car accident within the City of St. Louis, Missouri.

13.  The five Minor Plaintiffs were each first injured in the crash which took place within the City of St. Louis, Missouri.

14.  Pursuant to Missouri's venue statute, *Rev. Stat. Mo. Sec. 508.010.4 and 508.010.11*, venue in this tort suit is proper within the City of St. Louis, Missouri because the cause of action accrued in the City of St. Louis; the Minor Plaintiffs were all first injured in the City of St. Louis; and the Decedent Whitney Thomas was first injured and died in the City of St. Louis.

15.  On October 26, 2018, Riverview Drive, also known as State Route H, was a public road and highway owned and maintained by Defendant MODOT.

16.  This accident occurred on Riverview Drive at or near the intersection of Scranton Avenue within the City of St. Louis, Missouri.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

17.   On the morning of October 26, 2018, at or about 9:37 a.m., driver Anthony Milton, Sr. was operating a gray 2006 Nissan Armada southbound on Riverview Drive, approaching the intersection with Scranton Avenue.

18.   At the time of the accident, it was raining and there was standing water on Riverview Drive.

19.   The speed limit on Riverview Drive was 45 miles per hour.

20.   On Riverview Drive, north of the intersection of Riverview Drive and Scranton Avenue, the northbound and southbound lanes are separated by one "suicide lane" in the middle.

21.   As the driver proceeds down the hill towards the intersection, the suicide lane ends and a grassy median begins, separating the southbound and northbound lanes.

22.   At the point when the southbound driver approaches the intersection, the southbound lane suddenly jogs to the right (west).

23.   At the point when the northbound driver approaches the intersection, the northbound lane suddenly switches from one lane to two lanes, with the second lane being a left-hand turn lane for drivers to turn left onto Scranton Avenue.

24.   The left-hand turn lane is angled to the west.

25.   The road in September 2016 (when these Google Earth photos were taken) looked like this:

4

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



26.  The road configuration of Riverview Drive just before the intersection, heading southbound, is angled slightly to the left (to the east).

27.  Because the southbound lane is angled to the east, and the northbound turn lane is angled to the west, it looks as if the southbound driver coming towards the intersection should proceed to the left (into the oncoming lane of northbound traffic).

28.  Compounding this problem is the fact that the white paint marks in the northbound lane, which include both lane separation arrows and "shark teeth" yield arrows, could also be viewed by a southbound driver as arrows pointing the southbound driver into the oncoming northbound lanes of traffic (i.e. arrows which say "come this way"):

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM





Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



These white-painted stripes, arrows and shark teeth were painted on the road by MODOT sometime between 2007 and 2009.

29.  To the north and west of the intersection is private property believed to be owned by the Estate of Bob Cassilly.  Cassilly, the former owner of the New City Museum, owned the property and had intended to develop the 54-acre former concrete plant into an attraction called Cementland.  On the northwest corner of the intersection, the owner has constructed a giant plateau:

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



30.  This plateau causes rainwater to rush down the hill and accumulate in pools on the roadway near the intersection.

31.  Riverview Drive, which runs along the Mississippi River, is a road on which drivers routinely travel at high rates of speed, in excess of the speed limit of 45 miles per hour.

32.  If the southbound driver successfully navigates the jog to the west in the roadway, Riverview Drive then suddenly turns again sharply to the east (left):

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM



33.  Riverview Drive, near its intersection with Scranton Avenue, is dangerous, then, because:

(1) drivers travel down Riverview at a high rate of speed; (2) southbound Riverview appears at the intersection to angle to the left into oncoming traffic; (3) northbound Riverview has an angled turn lane, which appears to be the receiving lane for southbound traffic; (4) white painted arrows also give the impression that the southbound driver should proceed left into oncoming traffic; (5) poor water drainage can leave excess water on the roadway; and (6) even if the driver successfully jogs to the right heading southbound, he then must immediately jog back left to stay on the road.

34.  These factors have led to the result that the intersection of Riverview Drive and Scranton Avenue has the ignominious honor of being one of the 25 most dangerous intersections in the State of Missouri, according to a massive study of accident data published in 2015.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

35.  In the last ten years, there have been hundreds of accidents at this intersection, including dozens with injuries, and at least five fatalities.

36.  Sometime between 2012 and 2016, MODOT realized that drivers were proceeding southbound into the oncoming lane of traffic and getting seriously injured, so MODOT installed red and white "DO NOT ENTER" AND "WRONG WAY" signs to advise drivers not to go to the left at the intersection when heading southbound.

37.  In addition, sometime between 2012 and 2016, MODOT posted a white "Median-Jog-Right" sign at the tip of the median near the intersection.

38.  Sometime prior to 2016, MODOT also installed a yellow diagonal sign further north on Riverview Drive for southbound drivers, to advise them in advance that the lanes up ahead of them were divided by a median:



39.  Sometime between September 2016 and October 2018, however, this safety sign was inexplicably removed by MODOT contractors, removing the safety notice to southbound drivers.

40.  In October 2018, the yellow sign above was not present.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

41.  On October 26, 2018, Anthony Milton, Sr. and Whitney Thomas were taking a drive along Riverview Drive in the Nissan Armada minivan.  Anthony Milton, Sr. was driving.  The Decedent Whitney Thomas was riding in the front passenger seat.  The six minor children of Whitney Thomas were occupying the rear seats.

42.  Anthony Milton, Sr. traveled southbound down Riverview Drive in the rain, at a high rate of speed.

43.  When he got to the intersection with Scranton Avenue, he became momentarily confused as to which way to go, due to the lack of the yellow warning sign and the bizarre and dangerous configuration and marking of the roadway.

44.  He made improper steering maneuvers due to that momentary confusion, and in the process, his vehicle began to fishtail.

45.  Anthony Milton, Sr. had purchased the Nissan Armada from a used car dealership called Davis Auto in approximately July 2018.

46.  The tires on the Nissan Armada purchased from Davis Auto did not have sufficient tread to channel the significant amount of water which was on the roadway.

47.   Because of the combination of inclement weather and heavy rain, poor roadway water drainage, excessive speeding, a confusing and dangerous MODOT roadway, the lack of appropriate roadway warnings, bad tires on the Armada, and other factors, Anthony Milton, Sr. lost control of his vehicle, hydroplaned on the water, and went into the oncoming lanes of northbound traffic.

48.  When he did so, the Nissan Armada collided head on with a 2007 black Isuzu operated by Rasim Mustedanagic.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

49.  As a result of the collision, Mustedanagic and Whitney Thomas were killed, and Anthony Thomas, Sr. sustained serious injuries.

50.  In addition, the eldest chil ███████████y, sustained catastrophic injuries which rendered her paralyzed.

51.  The third child ███████████y, was also seriously injured and required surgeries.

52.  The other minor children were also injured in the crash.

53.  Christina Hill, as Next Friend for the five Minor Plaintiffs, now bring this action for the wrongful death of Whitney Thomas, and also for the personal injuries of the five Minor Plaintiffs.

## COUNT I
(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq*.);
MODOT: Negligent Roadway Design and Negligent Failure to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*))

54.  Plaintiff incorporates by reference Paragraphs 1 through 53 as if more fully set forth herein.

55.  *Rev. Stat. Mo. Sec. 537.600.1(2)* waives sovereign immunity against public entities in Missouri if the Plaintiff establishes, *inter alia,* a dangerous condition of the state entity's property:

> 1.  Sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, **the immunity of the public entity** from liability and suit for compensatory damages for negligent acts or omissions **is hereby expressly waived** in the following instances:
> (1)
> * * *
> (2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that:
>
>> [a] **the property was in dangerous condition at the time of the injury;**
>>
>> [b] **that the injury directly resulted from the dangerous condition**,

13

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

[c] **that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred**, and that

[d] either:
[(1)] **a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition** or

[(2)] **a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.**

In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.
(emphasis added)

56.  MODOT owed a duty to the public who travel on its roadways to design its roadways in a manner which was safe for those persons using the roadway.

57.  Riverview Drive at or near its intersection with Scranton Avenue, at the time of the accident, was in a dangerous condition.

58.  The dangerous condition at Riverview Drive created a reasonably foreseeable risk of a serious motor vehicle accident, of drivers losing control near the median, and of a collision between northbound and southbound vehicles.  The dangerous condition also created a reasonably foreseeable risk of injury, including catastrophic and serious injury, and death of automobile passengers and drivers.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

59.   MODOT breached its duty or care and was careless and negligent, and acted wrongfully, in the following respects, each of which was caused by the negligence and wrongful acts of MODOT employees acting within the scope and course of their employment by MODOT:

(a) they re-designed the southbound lanes sometime after 1977 so that they angled slightly to the left at the intersection, giving the southbound driver the impression that he was supposed to travel to the left;

(b) they re-designed the northbound turn lane sometime after 1977 so that instead of going straight, the lane angles to the west (left), giving the appearance that the northbound turn lane, at the intersection with Scranton, is the receiving lane for southbound drivers;

(c) sometime after 1977, they painted and/or re-painted the western-most fog lines of southbound Riverview Drive so that they are confusing and appear to both direct drivers to the left and to the right;

(d) sometime after 1977, they painted, and/or re-painted, lane-separating white arrows and white shark-teeth yield arrows in the northbound lanes in a manner that appears to direct southbound drivers to drive into oncoming lanes of traffic;

(e) sometime after 1977, they re-designed southbound Riverview Drive to not only jog to the right but then to immediately jog sharply back to the left;

(f) sometime after 1977, MODOT removed the yellow "Median/Divided Roadway Ahead" sign which formerly served to give advance warning to southbound motorists of the median divide ahead, and failed to otherwise properly warn of the dangerous condition of the roadway ahead;

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

(g) despite its knowledge of hundreds of accidents at this intersection, including dozens of accidents with injuries, and multiple fatalities, MODOT chose not to make any improvements in the configuration or striping of the roadway; and

(h) MODOT had actual and constructive notice of the dangerous condition of Riverview Drive at its intersection with Scranton Avenue, and of the dangerous defects in the road as stated above, and had sufficient time within which to make the roadway safe and to eliminate the dangerous conditions, yet negligently failed to make any safety changes; and

(i) MODOT designed the roadway in a confusing manner which was dangerous and unsafe.

60.  As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, Whitney Thomas was killed, and the Minor Plaintiffs, along with the other wrongful death beneficiar ███████████, were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d)  they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

16

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor on Count I for wrongful death, for such compensatory damages which are fair and reasonable within the sovereign immunity cap, for court costs, and for such other relief as is just and proper.

<div align="center">COUNT II</div>

(Personal Injuries o █████████y: MODOT: Negligent Roadway Design and Negligent Failure to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)

61.  Plaintiff incorporates Paragraphs 1 through 60 as if fully set forth herein.

62.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, Minor Plaintiff █████████y was catastrophically injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long term nursing care;

(e) she will need long term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will nee long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████y, prays for judgment in her favor on Count II, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

<u>COUNT III</u>
(Personal Injuries o  MODOT: Negligent Roadway Design and Negligent
Failure to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)

63.  Plaintiff incorporates Paragraphs 1 through 62 as if fully set forth herein.

64.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as

set forth above and the aforesaid negligence and carelessness of MODOT, Minor Plaintiff

██████████████ was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life;

(f) she has a permanent injury;

(g) she will need substantial future medical care, treatments, and surgeries;

(h) her ability to obtain employment later in life will be adversely affected.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Mino ████████████ prays for

judgment in her favor on Count III, for compensatory damages in amount in excess of $25,000

which is fair and reasonable, for court costs, and for such other relief as the Court deems just and

proper.

<u>COUNT IV</u>
(Personal Injuries o ████████ MODOT: Negligent Roadway Design and Negligent Failure
to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)

65.  Plaintiff incorporates Paragraphs 1 through 64 as if fully set forth herein.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

66.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, Minor Plaintif  was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life;

(f) she has a permanent injury;

(g) she will need substantial future medical care, treatments, and surgeries;

(h) her ability to obtain employment later in life will be adversely affected.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Mino ▮▮▮▮▮, prays for judgment in her favor on Count IV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

<u>COUNT V</u>
(Personal Injuries of ▮▮▮▮▮: MODOT: Negligent Roadway Design and Negligent Failure to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)



67.  Plaintiff incorporates Paragraphs 1 through 66 as if fully set forth herein.

68.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, Minor Plaintiff ▮▮▮▮▮. was injured, and suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life;

(f) he has a permanent injury;

(g) he will need substantial future medical care, treatments, and surgeries;

(h) his ability to obtain employment later in life will be adversely affected.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ████████████prays for

judgment in her favor on Count V, for compensatory damages in amount in excess of $25,000

which is fair and reasonable, for court costs, and for such other relief as the Court deems just and

proper.

### COUNT VI
(Personal Injuries o ████████ MODOT: Negligent Roadway Design and Negligent
Failure to Warn; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))*

69.  Plaintiff incorporates Paragraphs 1 through 68 as if fully set forth herein.

70.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as

set forth above and the aforesaid negligence and carelessness of MODOT, Minor Plaintiff

████████████ was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life;

(f) she has a permanent injury;

(g) she will need substantial future medical care, treatments, and surgeries;

(h) her ability to obtain employment later in life will be adversely affected.

Electronically Filed - City of St. Louis - January 13, 2019 - 05:43 PM

WHEREFORE, Plaintiff Christina Hill, on behalf of the mino ███████, prays for judgment in her favor on Count VI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

Respectfully Submitted,

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM, A.P.C.
2030 Main Street Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Counsel for Plaintiffs*



FILED

JAN 22 2019

# MISSOURI CIRCUIT COURT
22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE

# TWENTY-SECOND JUDICIAL CIRCUIT
BY _____ DEPUTY
### (CITY OF ST. LOUIS)

Christina Hill Next Friend
_____
### VS

MO Highway and Transportation Commission
_____

CASE NO. 1822-CC11782 DIVISION 6 _____ 1/22/19

---

## ORDER/JUDGMENT/MEMORANDUM

Cause called for Status on Tuesday, January 22, 2019

at 9 AM. Cause hereby continued to Monday,

June 10, 2019 at 9 AM.

So Ordered:

~~ENTERED~~

~~JAN 22 2019~~

~~M S~~

FORM 14 (Rev 11/02)

Case: 4:20-cv-01236-MTS Doc. #: 1-1 Filed: 09/11/20 Page: 30 of 271 PageID #: 800

**FILED**

JUN 10 2019

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
_____MS_____ DEPUTY

# MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
### (CITY OF ST. LOUIS)

Christina Hill

**VS**

Missouri Highway and Transportation

CASE NO. 1822-CC11782 DIVISION 6

6/10/19

## ORDER/JUDGMENT/MEMORANDUM

Cause called. Parties fail to appear. Cause hereby

placed on the Dismissal Docket of June 24, 2019 at 2pm.

So Ordered.

**ENTERED**

JUN 10 2019

**M S**

FORM 14 (Rev 11/02)

Electronically Filed - City of St. Louis - June 10, 2019 - 03:06 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| **CHRISTINA HILL**, *in her capacity as* | ) | |
| *Next Friend for the following Minor* | ) | |
| *Plaintiffs:* | ) | |
| ▆▆▆▆▆▆▆▆ | ) | |
| ▆▆▆▆▆▆▆▆ | ) | |
| ▆▆▆▆▆▆▆ | ) | Cause No. 1822-CC11782 |
| ▆▆▆▆▆▆▆▆ | ) | |
| a ▆▆▆▆▆▆ | ) | |
| Plaintiff, | ) | |
| | ) | Div. 6 |
| vs. | ) | The Hon. Michael Stelzer |
| **THE MISSOURI HIGHWAYS AND** | ) | |
| **TRANSPORTATION COMMISSION** | ) | |
| **a/k/a THE MISSOURI DEPARTMENT** | ) | |
| **OF TRANSPORTATION a/k/a** | ) | |
| **"MODOT,"** | ) | |
| <u>Hold Service,</u> | ) | |
| Defendant. | ) | |

PLAINTIFF'S MOTION TO REMOVE CASE FROM THE DISMISSAL DOCKET AND TO
<u>CONTINUE THE CASE STATUS CONFERENCE UNTIL AUGUST 2019</u>

COMES NOW Plaintiff and, for her Motion to Remove the Case from the Dismissal Docket, and

to Continue the Case Status Conference until August 2019, states as follows:

1. This is a serious personal injury and wrongful death case.  The Petition was filed on

December 5, 2018.

2. The Plaintiff put a hold on service primarily because the St. Louis Metropolitan Police

Department has not completed its Accident Reconstruction Report.  Once the police finish the

Accident Reconstruction Report, Plaintiff will be able to obtain the evidence as to exactly how

this accident happened.  In addition, once the report is released, the police will also release the

police evidence photos and a critical videotape from another driver which may show critical

aspects of exactly how the accident occurred.  Plaintiff needs these items before she can proceed

on behalf of the Minor Plaintiffs.

Electronically Filed - City of St. Louis - June 10, 2019 - 03:06 PM

3.  In addition, Plaintiff is investigating whether or not the brakes of the Nissan may have played a part in this accident.  The answer to that question depends in part upon a download of certain diagnostic codes from the digital recorders of the Nissan.  Until just recently, that was impossible because: (1) the police had a hold on the vehicle; and (2) the undersigned did not have title to the Nissan.  However, just recently, the police have advised that they can now allow the title owner to the vehicle to take the vehicle and inspect it for determination as to these diagnostic codes.  In addition, within the last week, the undersigned counsel has obtained a certificate of title to the Nissan from the Missouri Department of Revenue.  The parties are now reaching out to Nissan and Continental Braking Systems to schedule a visit to the tow lot to inspect these diagnostic codes.  That has not yet occurred, but Plaintiff anticipated the meeting to take place in the next month or two.

4.  In addition, the Plaintiff has been waiting for MODOT to complete an Open Records Request.  Within the last two weeks, MODOT finally completed that request.  However, in Plaintiff's view, numerous items requested were not produced.  Plaintiff is attempting to work with MODOT to produce these additional items.  This has taken additional time.

5.  These are all critical facts to determine liability and causation before proceeding with the case.

6.  Therefore, the Plaintiff asks for the Court's indulgence to roll over the Case Status Conference until August 2019 to give the parties adequate time to develop these facts.

7.  The Plaintiff's counsel has not been dilatory with this case and has proceeded with all deliberate speed.  This Motion is for good cause shown.

8.  As soon as these facts are determined, the Defendants will be served.

Electronically Filed - City of St. Louis - June 10, 2019 - 03:06 PM

Respectfully Submitted,

**/s/ John F. Medler, Jr.**

John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM APC
2030 Main Street Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Counsel for Plaintiffs*

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI



22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ DEPUTY

**CHRISTINA HILL**, *in her capacity as* )
*Next Friend for the following Minor* )
*Plaintiffs:* )
        )
        )
        )       Cause No. 1822-CC11782
        )
        )
and        )
     Plaintiff, )
        )       Div. 6
vs.        )       The Hon. Michael Stelzer
**THE MISSOURI HIGHWAYS AND** )
**TRANSPORTATION COMMISSION** )
**a/k/a THE MISSOURI DEPARTMENT** )
**OF TRANSPORTATION a/k/a** )
**"MODOT,"** )
Hold Service, )
     Defendant. )

*Granted*
*So Ordered*
*M [signature]*
*6/13/19*

PLAINTIFF'S MOTION TO REMOVE CASE FROM THE DISMISSAL DOCKET AND TO
CONTINUE THE CASE STATUS CONFERENCE UNTIL AUGUST 2019

COMES NOW Plaintiff and, for her Motion to Remove the Case from the Dismissal Docket, and

to Continue the Case Status Conference until August 2019, states as follows:

1. This is a serious personal injury and wrongful death case. The Petition was filed on

December 5, 2018.

2. The Plaintiff put a hold on service primarily because the St. Louis Metropolitan Police

Department has not completed its Accident Reconstruction Report. Once the police finish the

Accident Reconstruction Report, Plaintiff will be able to obtain the evidence as to exactly how

this accident happened. In addition, once the report is released, the police will also release the

police evidence photos and a critical videotape from another driver which may show critical

aspects of exactly how the accident occurred. Plaintiff needs these items before she can proceed

on behalf of the Minor Plaintiffs.

**ENTERED**

JUN 1 3 2019

**M S**

3. In addition, Plaintiff is investigating whether or not the brakes of the Nissan may have played a part in this accident. The answer to that question depends in part upon a download of certain diagnostic codes from the digital recorders of the Nissan. Until just recently, that was impossible because: (1) the police had a hold on the vehicle; and (2) the undersigned did not have title to the Nissan. However, just recently, the police have advised that they can now allow the title owner to the vehicle to take the vehicle and inspect it for determination as to these diagnostic codes. In addition, within the last week, the undersigned counsel has obtained a certificate of title to the Nissan from the Missouri Department of Revenue. The parties are now reaching out to Nissan and Continental Braking Systems to schedule a visit to the tow lot to inspect these diagnostic codes. That has not yet occurred, but Plaintiff anticipated the meeting to take place in the next month or two.

4. In addition, the Plaintiff has been waiting for MODOT to complete an Open Records Request. Within the last two weeks, MODOT finally completed that request. However, in Plaintiff's view, numerous items requested were not produced. Plaintiff is attempting to work with MODOT to produce these additional items. This has taken additional time.

5. These are all critical facts to determine liability and causation before proceeding with the case.

6. Therefore, the Plaintiff asks for the Court's indulgence to roll over the Case Status Conference until August 2019 to give the parties adequate time to develop these facts.

7. The Plaintiff's counsel has not been dilatory with this case and has proceeded with all deliberate speed. This Motion is for good cause shown.

8. As soon as these facts are determined, the Defendants will be served.

Cause reset for Status 8/27/19 9Am

Respectfully Submitted,


**/s/ John F. Medler, Jr.**

John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM APC
2030 Main Street Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Counsel for Plaintiffs*

Electronically Filed - City of St. Louis - August 26, 2019 - 04:05 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| **CHRISTINA HILL**, *in her capacity as* | ) | |
| *Next Friend for the following Minor* | ) | |
| *Plaintiffs:* | ) | |
| ███████████Y, | ) | |
| █████████████ | ) | |
| ████████████ | ) | Cause No. 1822-CC11782 |
| ███████████████ | ) | |
| a ███████████ | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| **THE MISSOURI HIGHWAYS AND** | ) | |
| **TRANSPORTATION COMMISSION** | ) | |
| **a/k/a THE MISSOURI DEPARTMENT** | ) | |
| **OF TRANSPORTATION a/k/a** | ) | |
| **"MODOT,"** | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY OF APPEARANCE

COMES NOW Kelsy Simon Vollmer, and enters her appearance as co-counsel on behalf

of the Plaintiffs.

DEVEREAUX, STOKES,
FERNANDEZ & LEONARD, P.C.

/s/ Kelsy Simon Vollmer
_____
KELSY SIMON VOLLMER #68455
Attorney for Plaintiffs
133 South 11th Street
Suite 350
St. Louis, MO  63102
(314) 621-1252
Fax:  (314) 621-5705
kelsy@stltriallawyers.com

1

Electronically Filed - City of St. Louis - August 26, 2019 - 04:05 PM

<u>Certificate of Service</u>

  The foregoing document was filed with the Clerk of the Court via Missouri Courts e-Filing System this 26th day of August, 2019.

/s/ Kelsy Simon Vollmer
_____
KELSY SIMON VOLLMER



FILED

AUG 27 2019

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ MS _____ DEPUTY

# MISSOURI CIRCUIT COURT
# TWENTY-SECOND JUDICIAL CIRCUIT
### (CITY OF ST. LOUIS)

Hill

VS

Mo Dot

CASE NO. 1822-CC11782 DIVISION  6          8/27/19

---

## ORDER/JUDGMENT/MEMORANDUM

Ccccese should be set in Division
1 - therefore this case is
transferred to Div 1 for a
Status setting on the rolling
docket

So Ordered

[signature]

ENTERED

AUG 27 2019

MS

FORM 14 (Rev 11/02)

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

**CHRISTINA HILL**, *in her capacity as*    )
*Next Friend for the following Minor*   )
*Plaintiffs:*    )
   )
█████████████████████   )
█████████████████████   )     Cause No. 1822-CC11782
█████████████████████   )
and █████████████████   )
          **Plaintiff,**   )
   )     Div. 1
vs.    )
**THE MISSOURI HIGHWAYS AND**   )   JURY TRIAL DEMANDED
**TRANSPORTATION COMMISSION**  )
**a/k/a THE MISSOURI DEPARTMENT** )
**OF TRANSPORTATION a/k/a**   )
**"MODOT,"**   )
Serve:   )
Pamela Harlan   )
Secretary to the Commission   )
105 W. Capitol Avenue   )
Jefferson City, MO 65102   )
   )
**NISSAN NORTH AMERICA, INC.**   )
Serve:   )
CSC-Lawyers Incorporating Service   )
Company   )
221 Bolivar Street   )
Jefferson City MO 65101   )
   )
**CONTINENTAL AUTOMOTIVE**   )
**SYSTEMS, INC.**   )
Serve:   )
The Corporation Company   )
40600 Ann Arbor Rd. East   )
Suite 201   )
Plymouth, MI 48170   )
OR   )
Managing Officer or General Agent   )
Continental Automotive Systems, Inc.  )
One Continental Drive   )
Auburn Hills, MI 48326   )
And   )

1

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

**ANTHONY MILTON, SR.** )
Serve: )
*Counsel for Anthony Milton, Sr.* )
Jamie Boock, Esq. )
Rossiter & Boock, LLC )
124 Gay Avenue, St. Louis MO 63105 )
)
      Defendants. )

## FIRST AMENDED PETITION FOR WRONGFUL DEATH AND PERSONAL INJURY

COMES NOW Plaintiff CHRISTINA HILL, by and through counsel, and, as the

Maternal Aunt and Next Friend of the Minor Plaintiffs ██████████████████

██████████████████████████████████████, and ████████████████ files this

First Amended Petition for Wrongful Death and Personal Injury against Defendants:

1. This case relates to a fatal auto accident in the City of St. Louis on October 26, 2018, in

which the Minor Plaintiffs' mother was killed, and in which the Minor Plaintiffs sustained

serious personal injuries.

### PARTIES, JURISDICTION, AND VENUE

2. The Decedent WHITNEY THOMAS, DOB ████ 1987, was a former resident of the City of

St. Louis. She was a citizen of Missouri. When she died, she was not married and had no living

parents.

3. The Decedent WHITNEY THOMAS died in a motor vehicle accident on October 26, 2018.

At the time of her death, the Decedent had six minor children:



                      DOB ████ /2007
                        DOB ████ /2008
                DOB ████ /2010
                          DOB ████ 2013
                  DOB ████ /2017
                  DOB ████ 2018.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

4. No biological father is listed on the birth certificates of the oldest three children. Therefore, the oldest three children, ███████████████████████ and ███████████ at present have no Legal Guardian.

5. ANTHONY MILTON, SR. is listed on the birth certificate as the biological father for the fifth of the six children--Minor ████████████ Therefore, ANTHONY MILTON, SR. is the Legal Guardian of ██████████

6. No biological father is listed on the birth certificates for ██████████████ and ██████████. Therefore, at present, they have no Legal Guardian.

7. Defendant ANTHONY MILTON, SR., a citizen and resident of Missouri, apparently claims to be the biological father of ████████████ and █████████. However, at this time, he has not been appointed their Legal Guardian.

8. When the Decedent WHITNEY THOMAS died on October 26, 2018, she left all five of the six children (the five Minor Plaintiffs herein) without a Legal Guardian.

9. Pursuant to the Missouri Next Friend Statute, *Rev. Stat. Mo. Secs. 507.184 and 507.120,* when a parent dies and leaves a Minor plaintiff with no Legal Guardian, a relative of the Minor may apply to become the child's Next Friend in order to pursue litigation on behalf of the child.

10. On December 11, 2018, the Circuit Court of the City of St. Louis appointed Plaintiff herein, CHRISTINA HILL, who is the maternal aunt of the Minor children, to act as Next Friend for all of the Minors except ██████████

11. Plaintiff Christina Hill brings this case on behalf of the five Minor Plaintiffs. Plaintiff Christina Hill is a resident of the City of St. Louis and a citizen of Missouri.

12. Prior to their Mother's death, and at the present time, all five of the Minor Plaintiffs are/were residents of the City of St. Louis and citizens of Missouri. Pursuant to the Missouri wrongful

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

death act, *Rev. Stat. Mo. Sec. 537.080 et seq.*, because the Decedent died, left no spouse, and left no surviving parents, her six minor children are her wrongful death beneficiaries entitled to bring a wrongful death claim and collect damages arising out of their mother's wrongful death, which was caused by the negligence of Defendants. The children are also entitled to bring their own personal injury lawsuits through their Next Friend Christina Hill.

13. Defendant Missouri Highways and Transportation Commission ("MODOT") is a governmental department/agency of the State of Missouri. For citizenship purposes, MODOT is a citizen of Missouri.

14. Defendant Nissan North America, Inc. (hereinafter "Nissan") is a corporation organized under the laws of the State of California with its principal place of business in Gardena, California. Nissan is a citizen of California.

15. Nissan manufactures, designs, distributes, markets and sells automobiles.

16. Defendant Continental Automotive Systems, Inc. f/k/a Continental Teves (hereinafter "Continental") is corporation organized under the laws of the State of Delaware with its principal place of business in Auburn Hills, Michigan. Continental is a citizen of Delaware and Michigan.

17. Continental designs, manufactures, distributes, markets and sells braking systems for automobiles, including certain Nissan vehicles.

18. This case accrued on October 26, 2018 within the City of St. Louis, Missouri.

19. The Decedent was first injured and then died in a car accident within the City of St. Louis, Missouri.

20. The five Minor Plaintiffs were each first injured in the crash which took place within the City of St. Louis, Missouri.

21. This Court has subject matter jurisdiction over this matter because the circuit courts have plenary jurisdiction over civil matters. This Court has *in personam* jurisdiction over all Defendants because they are either located in Missouri or otherwise do regular and systematic business in Missouri and committed torts in Missouri.

22. Pursuant to Missouri's venue statute, *Rev. Stat. Mo. Sec. 508.010.4 and 508.010.11*, venue in this tort suit is proper within the Circuit Court of the City of St. Louis, Missouri, because the cause of action accrued in the City of St. Louis; the Minor Plaintiffs were all first injured in the City of St. Louis; and the Decedent Whitney Thomas was first injured and died in the City of St. Louis.

## FACTUAL ALLEGATIONS

### I. The Accident.

23. On October 26, 2018, Anthony Milton, Sr. and Whitney Thomas were taking a drive along Riverview Drive in the Nissan Armada minivan. Anthony Milton, Sr. was driving.

24. The Decedent Whitney Thomas was riding in the front passenger seat. The six minor children of Whitney Thomas (the five minor Plaintiffs herein, plus another sibling ▮▮▮▮▮▮ ▮▮▮▮▮▮ were occupying the rear seats.

25. Defendant Anthony Milton, Sr. traveled Southbound down Riverview Drive in the rain.

26. When Milton got to the intersection with Scranton Avenue he was given no warning of the his need to veer right because the yellow Divided Highway Warning Sign had never been replaced by MODOT (despite the fact that MODOT knew it was missing and needed to be replaced). Moreover, the design of the roadway intersection was confusing.

27. Milton tried to apply his brakes, but due to the Nissan Armada's defective braking system, it appeared to Milton as though his brakes had gone out.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

28. That fear and confusion relating to the brakes then caused Milton to panic and oversteer, sending his vehicle sliding and veering out of control.

29. The vehicle then went into the median and finally into the Northbound Riverview lanes, where the Nissan collided head-on with another vehicle.

30. Because of the confusing and dangerous configuration of the roadway; the lack of appropriate signage; and the bad braking system on the Armada, Anthony Milton, Sr. lost control of his vehicle, went over the grassy median, and traveled into the oncoming lanes of northbound traffic.

31. When he did so, the Nissan Armada collided head on with a 2007 black Isuzu operated by Rasim Mustedanagic.

32. As a result of the collision, Mustedanagic and Whitney Thomas were killed, and Anthony Thomas, Sr. sustained serious injuries.

33. In addition, the eldest child, ▮▮▮▮▮▮▮▮ sustained catastrophic injuries which rendered her paralyzed.

34. The third child, ▮▮▮▮▮▮ was also seriously injured, sustained a femur fracture, and required one or more surgeries.

35. The other minor children were also injured in the crash.

36. Christina Hill, as Next Friend for the five Minor Plaintiffs, now brings this action for the wrongful death of Whitney Thomas, and also for the personal injuries of the five Minor Plaintiffs.

## II. The Ownership and Maintenance of Riverview Drive.

37. On October 26, 2018, Riverview Drive, also known as State Route H, was a public road and highway owned by the City of St. Louis.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

38. This accident occurred on Riverview Drive near the intersection of Scranton Avenue (another City-owned road) within the City of St. Louis, Missouri.

39. Pursuant to Section (2) of a maintenance agreement entitled, "Missouri Highways and Transportation Commission Maintenance Agreement for City Streets," dated January 9, 2004 (Ex. A attached hereto and incorporated by reference), and *Article IV, Section 30(b)(3)(e)* of the Missouri Constitution, Defendant MODOT agreed with the City that after January 9, 2004, MODOT would assume all "maintenance and reconstruction" obligations for Riverview Drive, between I-270 and Hall Street, because Riverview Drive, for that length of highway, was deemed a "necessary continuation of various state highways."

41. Pursuant to the MODOT-City Agreement, the maintenance and reconstruction obligation of MODOT for Riverview Drive runs from "curb to curb." Where there are no curbs, the obligations run from pavement edge to pavement edge.

42. The accident between Hall Street and I-270. Therefore, the accident site was within the geographic area for maintenance and reconstruction obligations assumed by MODOT in the 2004 Maintenance Agreement.

43. Pursuant to Section (3)(A) of the 2004 Maintenance Agreement, MODOT agreed to "...*maintain the surface of the traveled way, from curb to curb, of the routes identified in (2) above, in the same manner and to the same extent that it maintains other state highways of a similar type in other areas of the state*."

44. Pursuant to Section 3(B) of the 2004 Maintenance Agreement, "*Maintenance and reconstruction, as contemplated by this Agreement, shall include resurfacing, rebuilding, pothole repair, sweeping debris, striping, signalization, and signing.....*"

45. Pursuant to Section 3(C) of the 2004 Maintenance Agreement:

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

*"Maintenance and reconstruction, as contemplated by this Agreement, shall not include the maintenance, installation, removal or repair of water supply lines, sanitary or storm sewers (except storm sewers constructed by the Commission to drain the highway), snow removal, sidewalks, curbs, and associate appurtenances, parking areas (except for the parking lane), trees, or other ornamental vegetation, street lighting systems, pole lines, conduits, or other utilities. All work and/or costs for work for all excluded functions shall be the responsibility of the City or owner of the facility involved.... The Commission shall not be responsible for snow and/or ice removal from the curbs and sidewalks."*

46. Pursuant to Section (4)(A) of the 2004 Maintenance Agreement, *"Except as specifically identified in this Agreement, the City shall retain all responsibilities and obligations of owning the specified streets and their associated appurtenances...."*

47. Pursuant to Section (6) of the 2004 Maintenance Agreement, MODOT *"...may install, remove and maintain such regulatory, warning and informational traffic signs, pavement markings, lights or signals as are prescribed by the policy of the Commission and in accordance with the Manual on Uniform Traffic Control Devices to the extent that the latter is approved by the Commission and the Federal Highway Administration."*

### III. Factual Basis for MODOT's Liability.

48. Under the 2004 Maintenance Agreement, MODOT is responsible for resurfacing, rebuilding, re-designing, striping, marking, repairing and maintaining Riverview Drive near its intersection with Scranton Avenue.

### A. MODOT's Negligent Failure to Warn:  Inadequate Signage

49. As a result of the 2004 Maintenance Agreement, MODOT was responsible for signage for Riverview Drive at Scranton Avenue.  This included the duty to install appropriate and adequate regulatory and warning signs to warn motorists of the dangers at Riverview Drive and Scranton.

50. Pursuant to MODOT Traffic Work Request No. 2016-0368, sometime between August 1, 2016 and September 19, 2016, MODOT installed a yellow, diagonal "Divided Highway"

Warning Sign ("W6-1") at a location just north of the intersection, on the west side of Southbound Riverview:



51.  The stated purpose of the installation of the sign was to **"enhance the warning of the approaching intersection, including the divided highway begins and ends…."**

52.  *Sec. 903.6.18* of the *MODOT Engineering Policy Guide* provides that a W6-1 sign "…should be used on the approaches to a section of highway (not an intersection or junction) where the opposing flows of traffic are separated by a median or other physical barrier." *See also Manual on Uniform Traffic Control Devices ("MUTCD"), Sec. 2C.22.*

53.  The photograph below reflects the placement of the sign in September 2016:



54.  Sometime between September 2016 and August 2018, the yellow, diagonal Divided

Highway Warning Sign (W6-1) was knocked down:



55.  At the time of the accident on October 26, 2018, the yellow, diagonal Divided Highway

Warning Sign (W6-1) was not present.

56.  No Traffic Work Requests or work orders were issued by MODOT after September 2016 to

replace this sign.

57.  MODOT knew that the sign was not present because MODOT responded to the accident site

two weeks earlier to respond to another fatal accident on October 8, 2018.

58.  Despite knowledge of the fact that the sign was missing, MODOT failed to issue any orders

to replace the sign.

59.  As of February 2019, even after the fatal accident that took the life of the Plaintiffs' mother,

the yellow, diagonal Divided Highway Warning Sign had still not been replaced by MODOT.

60. In plans submitted by MODOT in May 2019, seven months after this accident occurred, on Sheet 35 of the Plans, it shows an intent by MODOT to replace and re-install the W-6 sign at its former location.

### B. MODOT's Negligent Redesign and Marking of Riverview Drive in 2008; and Confusing Road Configuration Leading to Crossover Accidents

61. On Riverview Drive, north of the intersection of Riverview Drive and Scranton Avenue, there is one northbound lane; one southbound lane; and a "suicide lane" in the middle surrounded by double yellow lines:



62. As the Southbound Riverview driver proceeds towards the intersection, the suicide lane abruptly ends and, approximately 100 feet later, the tip of a grassy median begins, marking the

entrance to a divided highway. The median gradually widens and separates the southbound and northbound lanes. The Southbound Riverview Driver is supposed to pull his or her vehicle to the right at the intersection, proceeding to the right of the grassy median:



63. On the other side of Riverview, in the Northbound lanes, approximately 775 feet south of the intersection of Riverview and Scranton, there are two Northbound lanes. At a point approximately 600 feet south of the intersection, the left-hand northbound lane contains a white left-hand turn arrow and essentially becomes a left-hand turn lane for northbound drivers to turn left onto Scranton Avenue.

64. Approximately 225 feet south of the intersection, this left-hand turn lane suddenly angles off to the left (northwest) in an unconventional manner. In other words, the left-hand turn lane is not straight, but is angled to the west:

12

13





65.  Because the Northbound left-turn lane is angled to the west, and because of the

unconventional configuration of the roads, it looks as if the Southbound driver coming towards

the intersection should proceed to the left (into the oncoming left-hand turn lane of Northbound

traffic).





66.  Compounding this problem is the fact that the white paint marks in the Northbound lane, which include both white lane-separation arrows and a bar of white "shark teeth" yield arrows, could also be viewed by a Southbound driver as arrows pointing the Southbound driver into the oncoming Northbound lanes of traffic (i.e. arrows which direct the driver to "come this way"):



67. The dangerous road configuration was created by MODOT in 2008.

68. In August 2007, before the reconfiguration, the left-hand turn lane for northbound Riverview Drive was straight, and looked like this (photos from Google Maps):



Note that the turn lane is straight, and there are no white "shark teeth arrows" or white lane-separator arrows.

69. MODOT re-designed the road in 2008 as part of a road improvement project called J6P2128.

70. MODOT made the conscious decision to change the road configuration in 2008 so that the Northbound Riverview left-hand turn lane would be angled to the west. MODOT made the conscious decision to insert the white shark-teeth arrows and white lane-separator arrows.

71. MODOT knew or should have known that when it re-designed the road, the new configuration would lead to an increased likelihood of crossover accidents and that Southbound Riverview motorists could be confused and suffer a violation of driver expectancy.

17

72. After the changes were made by MODOT, beginning in 2008, there were an alarming number of crossover accidents.

73. On January 18, 2012, Dean D. Fry, a MODOT manager in the City Project Office, e-mailed Deanna L. Venker, Area Engineer, City of St. Louis for MODOT. In the e-mail, Fry stated, "**Considering the geometry at Riverview and Scranton, it is more unsafe here than most locations, and it appears fixable**…. (emphasis added)  Yet MODOT did not fix the geometry of the roadway.

74. After multiple additional crossover accidents, on September 17, 2012, with Work Request Number 386, Jeffrey Baird, a MODOT manager, with the approval of his supervisor Deanna Venker, sent a Work Request to the field at MODOT to re-stripe the roadway. The purpose of the Work Request was to "**prevent…crossover crashes."** The Work Request did not explain how a re-striping of the roadway would prevent crossover crashes.

75. However, despite the re-striping, no changes were made to the geometry of the roadway by MODOT. The confusing configuration continued to cause numerous crossover and run-off-road crashes, many of them with injuries, in the coming years.

76. One of these accidents occurred on July 18, 2014. On that date, as a Southbound driver on Riverview approached Scranton, "he **became confused by the layout of the road**." The officer explained, "[Driver] did not observe the low-grassy median separating the NB and SB lanes. The lighting along this portion of the road is very dim, and **the way the road aligns on the curve at Riverview and Scranton, it appeared to [Driver] that the left turn lane (going NB) was his correct lane for travel going SB on Riverview**. When [Driver] realized he was travelling into oncoming traffic, he attempted to veer out of the way; however, he was struck on

the right side of his vehicle by a gray Chevy Impala." (emphasis added) There were injuries from the accident.

77. On December 24, 2014, a Southbound Riverview driver at Scranton "**became confused by the lane switch**" and crossed over into the Northbound lanes, where he struck a second vehicle head on. There were injuries from the accident.

78. Despite all these accidents clearly caused by the confusing configuration on Riverview, MODOT did nothing to change the configuration of the roadway.

79. On March 11, 2015, MODOT manager Steven Lockett prepared a Traffic Work Request #2015-0083 for a "Keep Right" Sign ("R4-7") at Riverview and Scranton. This was the first time that a Keep Right sign was ordered for the tip of the median at Scranton. The Work Request stated that its purpose was to "**bring attention to the island and so vehicles will not drive into the northbound left turning traffic onto Scranton**."

80. Despite the fact that MODOT installed a new sign, the crossover accidents continued to occur. On June 4, 2016, a Southbound Riverview driver crossed over into the Northbound lanes at Scranton and **caused a fatality**. On June 10, 2016, a Southbound Riverview driver crossed over into the Northbound lanes and struck a Northbound driver head on.

81. On June 13, 2016, in Call Report 16-25-SL-192-2, MODOT manager Jeffrey Baird documented a conversation he had with a customer about problems at Riverview and Scranton. This "**led to a discussion of needing to review transition into and out of divided highway setup**."

82. Unfortunately, MODOT never changed the confusing configuration of the road, and numerous crossover and run-off-road accidents continued to occur. On June 1, 2017, there was another fatal accident at Riverview and Scranton, in which a pickup and a semi-truck collided.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

Numerous additional crossover and run-off-road accidents occurred in 2017 and 2018. MODOT did nothing.

83. On October 8, 2018, there was another fatal accident at Riverview and Scranton, in which a Northbound vehicle turned in front of a Southbound vehicle traveling at a high rate of speed. The Southbound vehicle clipped the Northbound vehicle, then crossed into the Northbound lanes and wound up on the east side of Riverview.

84. Still, MODOT did nothing to change the configuration of the road.

85. On October 26, 2018, approximately ten years since MODOT first created the dangerous configuration of roads at Riverview and Scranton, the accident in this case occurred, in which a Southbound driver on Riverview became confused by the configuration of the roads.

86. The confusion relating to the road layout, and the violation of driver expectancies, led the driver to apply the brakes on the Nissan suddenly. When the brakes on the Nissan appeared to be non-functioning, the driver over-corrected, lost control and went across the median, where he struck a Northbound vehicle head on, killing the Northbound driver. Also killed was the Minor Plaintiffs' mother, who was riding in the passenger seat of the Southbound vehicle. The oldest child, who was in the Southbound vehicle, was paralyzed in the accident.

87. For every one of the accidents above, MODOT was aware of and had knowledge of the accident and had access to the police accident reports. For the fatal accidents, serious accidents, and many of the other accidents listed above, MODOT representatives would have been on scene shortly after the accident occurred.

88. Based upon the evidence above, MODOT clearly knew or should have known of the dangerous configuration of Riverview Drive and Scranton and failed to take action to fix it.

89. In May 2019, seven months after this accident in this case occurred, MODOT held a public meeting to announce plans to finally make changes to the roadway.

90. In its "Fact Sheet" explaining the new changes, MODOT recognized that the stretch of Riverview Drive which includes the intersection of Riverview and Scranton had a **"significantly higher" number of crashes than other similar roads with similar traffic.**

91. On page 35 of its blueprints for future road changes, MODOT has plans now to eliminate the suicide lane north of the intersection, and in its place install a "raised median strip," which would be designed to channel Southbound drivers to the right at Scranton.

92. When MODOT representatives were asked at the public meeting why these changes were not made earlier, the MODOT representative replied, "Money."

**VI. Factual Basis for the Liability of Nissan and Continental.**

93. When Nissan decided to become a big player in the American SUV market, one of its first entries was the Nissan Armada. The Nissan Armada was developed in Japan by Nissan engineers between 1999 and 2003. Nissan chose Defendant Continental to design their braking system and its component parts.

94. The "Delta Stroke Sensor," or "DSS," is an electronic component manufactured and designed by Continental for Nissan which became part of the braking system for Nissan Armadas manufactured between 2004-2006. The DSS, which is contained within the sealed "Brake Booster Assembly," interfaces with and connects with the Electronic Control Unit ("ECU") of the vehicle and collects information about a vehicle's primary mechanical braking system and provides input and information to the ECU.

95. The DSS measures the application of manual driver pressure to the brake pedal. The DSS determines whether the driver has pressed the brake pedal, and if so, how far and how quickly.

The DSS performs these measurements by converting the mechanical movement of the brake pedal into an electrical signal within a range of pre-set values to be communicated to the ECU.

96. When properly functioning, the DSS monitors the performance of the primary mechanical braking system and reports a failure of that system to the ECU which will then trigger the functioning of the vehicle's secondary braking system, called "Optimized Hydraulic Braking," or "OHB."

97. However, Nissan Armadas manufactured between 2004 and 2006 began experiencing electronic failures in the DSS sensor. The result was that the DSS component mistakenly identified the braking system's primary mechanical braking system as having failed, when, it fact, the primary mechanical braking system had not failed.

98. The DSS sensor, then, incorrectly interpreting the primary braking system to have failed, sent a signal to activate the backup, secondary braking system.

99. This switch to a new braking system caused a violation of driver expectancies, a different feel for the driver, and a sense that the brakes had given out, leading frequently to driver panic, collisions, steering mistakes and over-corrections.

100. The defect in the DSS results in deactivation of an otherwise properly functioning primary mechanical braking system, and as the Defendant Nissan has known, materially and adversely affects the braking ability for the defective Armada vehicles.

101. Defendant Nissan has known for many years that it is possible to predict when a DSS failure will occur.

102. When the DSS fails, the electronic computer system in the defective Armada vehicles may record a Diagnostic Trouble Code "C1179." This error code can be downloaded and read by

technicians using certain proprietary diagnostic equipment used by Defendants Nissan and their braking system supplier Continental to diagnose and repair the defective Armada vehicles.

103. On numerous occasions, however, technicians at Nissan dealerships have not been able to reproduce a reported braking failure in defective Armada vehicles on an initial test drive, or to retrieve any error code, despite the driver's report of braking problems consistent with DSS failure.

104. Furthermore, DSS failures are not always reproducible, and resulting error codes are not always stored in the ECU indefinitely for a proper diagnosis.

105. Moreover, no inspection of a defective Armada's mechanical brake system would reveal the latent and dangerous hidden defect within the sealed Brake Booster Assembly that manifests itself intermittently.

106. Since 2002, Nissan has known of the defect in its 2004-2006 Armadas, Titan Trucks and Infinity QX56 vehicles ("the Defective Vehicles").

107. Despite that knowledge, Nissan failed to notify owners and consumers of the defect, until being finally forced to do so as a result of a class action settlement.

108. Instead, Nissan manufactured, produced, marketed, sold and distributed the defective vehicles.

109. By 2004, Nissan knew the DSS in the Defective Vehicles suffered from a serious safety defect.

110. On April 12, 2004, Nissan received a complaint from one of its dealers that a customer reported "brake pedal goes to the floor." In the first 25 months, there were 422 similar complaints of "brake pedal to the floor."

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

111. Other complaints from customers were "noise," "shaking in the pedal," "brake system failed," "brake would not stop car," "brake feels as it not stopping," and "brake pedal shakes, vehicle didn't stop."

112. In October 2005, one dealer reported to Nissan, three QX56s that have failed to stop when the brakes were applied. "[W]e understand from Infiniti that the brake booster is the problem. . .[T]he third occurred in Dallas neighborhood and the driver, Mrs. . . Lesier, ran 2 or 3 stop signs but did not hit anything or anyone. This is a dangerous situation."

113. On October 27, 2005, Nissan and Continental engineers held a "second meeting" to discuss investigation of DSS failures.

114. The discussions between Nissan and Continental let to a "Root Cause Analysis" implicating "[f]ailsafe logic not optimal against the tolerance of DSS signal."

115. On December 22, 2005, Nissan adopted an "[i]mproved failsafe" programming counter-measure to address this root cause. This reprogramming "fix," identified in a Technical Service Bulletin ("TSB"), did not work.

116. On May 12, 2006, as a result of the "Vital Issues Committee Number 1," Nissan issued a TSB No. NTB06-040. The TSB involves all 2004-2006 Nissan Armada and Titan vehicles fitted with Vehicle Dynamic Control ("VDC"). Likewise, Nissan issued a similar TSB, No. TSB06-011 involving the 2004-2006 Infinity QX56 vehicles.

117. The TSBs involved a braking defect which reveals Error Code C1179 only after computerized diagnostic interrogation. Error Code C1179 is the trouble code for a defective Delta Stroke Sensor.

118. These TSBs went only to Nissan dealers, and not Nissan owners. Dealers were told by Nissan that if a customer brought in a vehicle with had a braking problem resulting in a

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

Diagnosis Error Code of C1179, the DSS should be re-programmed by the dealer to eliminate the error. There was nothing done, however, to warn customers of the danger before a bad-braking accident occurred.

119. Nissan delivered the TSBs to the National Highway Traffic Safety Administration ("NHTSA") in compliance with 49 CFR Sec. 579.5 which requires that Defendant furnish NHTSA's Early Warning Division a copy of all notices, bulletins, and other communications [send to various sources] . . . regarding and *defect* in its vehicles or items of equipment (including any failure or malfunction beyond normal deterioration in use, or failure of performance, or any flaw or unintended deviation from design specifications, whether or not *such defect* is safety-related." (emphasis added).

120. Therefore, by May 2006, Nissan had concluded that the defect identified in the TSBs resulting in DSS failure/error code C1179 constituted a defect in the defective vehicles.

121. Despite Nissan's knowledge that the braking problem was a safety issue, which could lead to serious injury or death, Nissan described the problem in the TSBs sent to dealers merely as a "vibration" in the brake pedal.

122. In April 2008, Nissan manufactured new vehicles with safe DSSs that had been re-designed by Continental. But Nissan and Continental failed to disclose the defect to owners.

123. NHTSA provides a system for vehicle owners to report complaints relating to safety defects. This database is accessible to vehicle manufacturers like Nissan.

124. Since 2004, over 300 complaints were made to Nissan between 2004 and 2011 relating to the defective vehicles which are consistent with DSS defects and brake failure.

125. Some of these complaints describe accidents resulting in injuries.

126. In approximately 2008, Jim Blinkhorn from Nissan was tasked with conducting a "Full Engineering Analysis." Despite the fact that Defendant manufactures these cars in American, the analysis was performed in Japan. The results were never provided.

127. Subsequently, in the same year, Vital Issues Committee Number 2 was formed. According to handwritten notes from that meeting, the engineers discussed "floor-pedal." Mr. Yakushi, the Head of Nissan Product Safety, concluded after the meeting that customers were not high-tech people; determined that the braking issue in the vehicle was not a safety problem and was not dangerous; and resolved to do nothing.

128. In late 2009, Yakushi sent an e-mail to Blinkhorn which read, "Do you remember the problem with no braking?" Blinkhorn replied "the DS Sensor." Yakushi replied that Blinkhorn should get ready, because at a meeting Yakushi attended in Japan recently, he had been tipped off that NHTSA would be doing something about the DSS issue "unless we can head them off."

129. In the continuing years, hundreds more complaints came into Nissan about the braking problem.

130. In 2011, a class action was filed in the United States District Court for the Northern District of California, seeking damages for over 350,000 owners of the defective vehicles in question.

131. That class action was settled in 2014 for millions of dollars by Nissan.

132. On August 29, 2012, while the class action was pending, the operator of one of the defective vehicles, an Infinity QX56, had a DSS failure. The operator, Solomon Methenge, weaved around stopped cars due to the loss of braking, and careened into an intersection where he collided with a vehicle operated by Saida Mendez-Bernardino. As a result, Mendez-Bernardino and two young female passengers in the vehicle, Stephanie and Hilda Cruz, perished.

133. Despite the horrific deaths, Nissan took no action in 2013 or 2014 to fix the defects or warn motorists of the dangers.

134. A wrongful death lawsuit was brought by the relatives of the passengers who died against Nissan and Continental. Continental settled for a confidential amount. On July 21, 2017, a California jury awarded $25M in damages against Nissan. Nissan refused to pay the verdict and appealed the judgment.

135. While that appeal was pending, on October 26, 2018, this accident occurred. The accident was the result of a DSS failure.

136. The California Court of Appeals affirmed the verdict in the *Cruz* case on February 28, 2019.

137. Nissan was finally forced to pay the judgment in the summer of 2019.

## COUNT I
**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*);
MODOT: Negligent Signage; Negligent Roadway Design; Negligent Failure to Warn;
Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec.
537.600.1(2))***

138. Plaintiff incorporates by reference Paragraphs 1 through 137 as if more fully set forth herein.

139. *Rev. Stat. Mo. Sec. 537.600.1(2)* waives sovereign immunity against public entities in Missouri if the Plaintiff establishes, *inter alia,* a dangerous condition of the state entity's property:

> 1. Sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, **the immunity of the public entity** from liability and suit for compensatory damages for negligent acts or omissions **is hereby expressly waived** in the following instances:
> (1)

27

\* \* \*

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that:

[a] **the property was in dangerous condition at the time of the injury;**

[b] **that the injury directly resulted from the dangerous condition,**

[c] **that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred,** and that

[d] either:

[(1)] **a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition** or

[(2)] **a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition.**

In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.
(emphasis added)

140. MODOT, pursuant to the 2004 Maintenance Agreement with the City, owed a duty to the public who travel on its roadways to design and maintain Riverview Drive in a manner which was safe for those persons using the roadway, and to warn motorists of any roadway hazards.

141. Riverview Drive, at the time of the accident, was in a dangerous condition.

142. The dangerous condition at Riverview Drive created a reasonably foreseeable risk of a serious motor vehicle accident, of drivers losing control near the median, and of a collision between northbound and southbound vehicles. The dangerous condition also created a

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

reasonably foreseeable risk of injury, including catastrophic and serious injury, and death of automobile passengers and drivers.

143.   MODOT breached its duty of care and was careless and negligent, and acted wrongfully, for the reasons set forth in paragraphs 37 through 92 above.   In particular, MODOT was negligent for failure to replace the Divided Highway Sign; for re-designing Riverview Drive after September 12, 1977 (and most probably, in or around 2008) in such a manner so as to make the layout confusing and dangerous for motorists; by negligently failing to warn of the dangers; and by negligently maintaining the roadway in an unsafe condition.

144.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, Whitney Thomas was killed, and the Minor Plaintiffs, along with the other wrongful death beneficiary Adrene Milton, were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d) they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

that the value of the care provided by Whitney Thomas, is equal to one hundred

and ten percent of the state average weekly wage, as computed under *Rev. Stat.*

*Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the

Missouri Wrongful Death Act.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in

her favor against MODOT on Count I for wrongful death, for such compensatory damages in an

amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other

relief as is just and proper.

### COUNT II
**(Personal Injuries of ▮▮▮▮▮▮▮▮; MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

145. Plaintiff incorporates Paragraphs 1 through 144 as if fully set forth herein.

146.   As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive

as set forth above, and the aforesaid negligence and carelessness of MODOT, as set forth above,

Minor Plaintiff ▮▮▮▮▮▮▮▮ was catastrophically injured, and suffered the following

damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able

to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮▮▮ prays for judgment in her favor against MODOT on Count II, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

## COUNT III
**(Personal Injuries of  MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

147.  Plaintiff incorporates Paragraphs 1 through 146 as if fully set forth herein.

148.  As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above, and the aforesaid negligence and carelessness of MODOT, as set forth above, Minor Plaintiff ████████ was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ████████ prays for judgment in her favor against MODOT on Count III, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

## COUNT IV
**(Personal Injuries of ████████ MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

149.  Plaintiff incorporates Paragraphs 1 through 148 as if fully set forth herein.

150.  As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, as set forth above, Minor Plaintiff ████████ was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a significant femur fracture;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life, and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(f) she has scarring and disfigurement;

(g) she has a permanent injury;

(h) she will need substantial future medical care, treatments, and surgeries;

(i) her ability to obtain employment later in life will be adversely affected.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████, prays for judgment in her favor against MODOT on Count IV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

**COUNT V**
**(Personal Injuries of ███████; MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))*

151. Plaintiff incorporates Paragraphs 1 through 150 as if fully set forth herein.

152. As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, as set forth above, Minor Plaintiff ███████ was injured, and suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████, prays for judgment in his favor against MODOT on Count V, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

### COUNT VI
**(Personal Injuries of ██████████ MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

153.  Plaintiff incorporates Paragraphs 1 through 152 as if fully set forth herein.

154.  As a direct and proximate result of the aforesaid dangerous condition of Riverview Drive as set forth above and the aforesaid negligence and carelessness of MODOT, as set forth above, Minor Plaintiff ██████████ was injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

WHEREFORE, Plaintiff Christina Hill, on behalf of the minor ██████████ prays for judgment in her favor against MODOT on Count VI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

34

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

## COUNT VII
### (Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*); Nissan: Strict Products Liability for Design Defects)

155.  Plaintiff incorporates by reference Paragraphs 1 through 154 as if more fully set forth herein.

156.  The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

157.  The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

158.  The Armada was used in a manner reasonably anticipated.

159.  As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Whitney Thomas was killed, and the Minor Plaintiffs, along with the other wrongful death beneficiary ███████ were damaged in the following respects:

    (a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

    (b) they lost the reasonable value of their mother's services;

    (c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

    (d)  they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

    (e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption

that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

160. In addition to compensatory damages, the minor Plaintiffs seek aggravating circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

161. The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Nissan on Count VII for wrongful death, for such compensatory damages which are fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

## COUNT VIII
### (Personal Injuries of ⬛⬛⬛⬛⬛⬛ Nissan: Strict Products Liability for Design Defects)

162. Plaintiff incorporates Paragraphs 1 through 161 as if fully set forth herein.

163. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

164. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

165. The Armada was used in a manner reasonably anticipated.

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

166. As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Minor Plaintiff ████████████ was catastrophically injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

167. In addition to compensatory damages, the minor Plaintiff███████████ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

168. The minor Plaintiff ████████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ████████████, prays for judgment in her favor against Nissan on Count VIII for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT IX
**(Personal Injuries of ████████████ Nissan: Strict Products Liability for Design Defects)**

169. Plaintiff incorporates Paragraphs 1 through 168 as if fully set forth herein.

170. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

171. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

172. The Armada was used in a manner reasonably anticipated.

173.  As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Minor Plaintiff ███████████ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life; and

(f) she has a permanent injury.

174.  In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

175.  The minor Plaintiff ███████████, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor against Nissan on Count IX, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT X
**(Personal Injuries of ███████████: Nissan: Strict Products Liability for Design Defects)**

176.  Plaintiff incorporates Paragraphs 1 through 175 as if fully set forth herein.

177.  The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

178. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

179. The Armada was used in a manner reasonably anticipated.

180. As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Minor Plaintiff ▮▮▮▮▮▮ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a significant femur fracture;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life, and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(f) she has scarring and disfigurement;

(g) she has a permanent injury;

(h) she will need substantial future medical care, treatments, and surgeries;

(i) her ability to obtain employment later in life will be adversely affected.

181. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

182. The minor Plaintiff ▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮, prays for judgment in her favor on Count X, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

<div align="center">

**COUNT XI**
**(Personal Injuries of ▮▮▮▮▮▮▮▮ Nissan: Strict Products Liability**
**for Design Defects)**

</div>

183.  Plaintiff incorporates Paragraphs 1 through 182 as if fully set forth herein.

184.  The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

185.  The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

186.  The Armada was used in a manner reasonably anticipated.

187.  As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Minor Plaintiff ▮▮▮▮▮▮▮▮ was injured and suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

188. In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

189. The minor Plaintiff ███████████ through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor on Count XI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XII
**(Personal Injuries of ███████████ Nissan: Strict Products Liability for Design Defects)**

190. Plaintiff incorporates Paragraphs 1 through 189 as if fully set forth herein.

191. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

192. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use.

193. The Armada was used in a manner reasonably anticipated.

194. As a direct and proximate result of the defective condition of the Armada, as set forth above, as it existed when the product was sold, Minor Plaintiff ███████████ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life; and

(f) she has a permanent injury.

195.  In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

196.  The minor Plaintiff ▮▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the minor ▮▮▮▮▮▮ prays for judgment in her favor against Nissan on Count XII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XIII
### (Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*); Nissan: Strict Products Liability Failure to Warn)

197.  Plaintiff incorporates by reference Paragraphs 1 through 196 as if more fully set forth herein.

198.  The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

199.  The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

200. Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

210. The Armada was used in a manner reasonably anticipated.

211. The Plaintiff's decedent Whitney Thomas was killed as a direct result of the Nissan being sold without an adequate warning, and the Minor Plaintiffs, along with the other wrongful death beneficiary                were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d) they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

212. In addition to compensatory damages, the minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

213. The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Nissan on Count XIII for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

## COUNT XIV
### (Personal Injuries of ▮▮▮▮▮▮▮▮; Nissan: Strict Products Liability Failure to Warn)

214. Plaintiff incorporates Paragraphs 1 through 213 as if fully set forth herein.

215. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

164. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

216. Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

217. The Armada was used in a manner reasonably anticipated.

218. The Minor Plaintiff ▮▮▮▮▮▮ was catastrophically injured and paralyzed as a direct

result of the Armada being sold without an adequate warning, and ▮▮▮▮▮▮, as a direct

result, was injured and damaged in the following respects:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able

to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long

term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as

running, walking, engaging in sports and games and recreational activities, bathing herself,

grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

219. In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

220. The minor Plaintiff ███████████, through her Next Friend, seeks punitive damages damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor against Nissan on Count XIV for compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for punitive damages, court costs, and for such other relief as the Court deems just and proper.

<div align="center">

**COUNT XV**
**(Personal Injuries of ███████████ Nissan: Strict Products Liability**
**Failure to Warn)**

</div>

221. Plaintiff incorporates Paragraphs 1 through 220 as if fully set forth herein.

222. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

223. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

224. Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

225. The Armada was used in a manner reasonably anticipated.

226. Minor Plaintiff ███████████ was injured as a direct result of the Armada being sold without an adequate warning, and, as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

227. In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

228. The minor Plaintiff ███████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor against Nissan on Count XV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XVI
**(Personal Injuries of ███████████ Nissan: Strict Products Liability Failure to Warn)**

229. Plaintiff incorporates Paragraphs 1 through 228 as if fully set forth herein.

230. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

231. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

232. Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

233. The Armada was used in a manner reasonably anticipated.

234. Minor Plaintiff ███████ was damaged as a direct result of the Armada being sold without an adequate warning, and as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a significant femur fracture;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life, and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(f) she has scarring and disfigurement;

(g) she has a permanent injury;

(h) she will need substantial future medical care, treatments, and surgeries;

(i) her ability to obtain employment later in life will be adversely affected.

235. In addition to compensatory damages, the Minor Plaintiff ███████ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

236. The minor Plaintiff ███████, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███, prays for judgment in her favor against Nissan on Count XVI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XVII
### (Personal Injuries of ███: Nissan: Strict Products Liability Failure to Warn)

237.  Plaintiff incorporates Paragraphs 1 through 236 as if fully set forth herein.

238.   The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

238.  The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

239.  Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

240.  The Armada was used in a manner reasonably anticipated.

241.  Minor Plaintiff ███ was injured as a direct result of the Armada being sold without an adequate warning, and as a direct result, suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

242. In addition to compensatory damages, the Minor Plaintiff ▮▮▮▮▮▮▮▮ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

243. The minor Plaintiff ▮▮▮▮▮▮▮▮ through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮▮▮ prays for judgment in his favor against Nissan on Count XVII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XVIII
**(Personal Injuries of ▮▮▮▮▮▮▮▮ Nissan: Strict Products Liability Failure to Warn)**

244. Plaintiff incorporates Paragraphs 1 through 243 as if fully set forth herein.

245. The Armada driven by Anthony Milton Sr. was sold in the course of Nissan's business.

246. The Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to its reasonably anticipated use without knowledge of its characteristics.

247. Nissan did not give an adequate warning of the dangers of the Armada, and, in particular, of its defective braking system.

248. The Armada was used in a manner reasonably anticipated.

249. The Minor Plaintiff ▮▮▮▮▮▮▮▮ was injured as a direct result of the Armada being sold without an adequate warning and as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

250. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

251. The minor Plaintiff ▮▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the minor ▮▮▮▮▮▮ prays for judgment in her favor against Nissan on Count XVIII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XIX
**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*);**
**Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

252.  Plaintiff incorporates by reference Paragraphs 1 through 251 as if more fully set forth herein.

253. Nissan manufactured and designed the Armada. Nissan owed a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and had a duty to warn owners and users of any dangers. If Nissan

realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

254.  For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care in the design and manufacture of the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

255.  As a direct and proximate result of the aforesaid negligence of Nissan, the Plaintiff's decedent Whitney Thomas was killed.

256.  The negligence of Nissan directly caused and directly contributed to cause the Decedent's death.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

257. As a direct result, the Minor Plaintiffs, along with the other wrongful death beneficiary

▮▮▮▮▮▮▮, were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d) they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

258. In addition to compensatory damages, the minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

259.  The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Nissan on Count XIX for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

### COUNT XX
**(Personal Injuries of Minor Plaintiff ██████████: Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

260.   Plaintiff incorporates by reference Paragraphs 1 through 259 as if more fully set forth herein.

261.  Nissan manufactured and designed the Armada.  Nissan had a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and a duty to warn users and owners of any danger with the vehicle. If Nissan realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

262.  For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care to manufacture and design the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

263. As a direct and proximate result of the aforesaid negligence of Nissan, the Plaintiff ███████████ was catastrophically injured.

264. The negligence of Nissan directly and proximately caused, and directly and proximately contributed to cause, Plaintiff ███████████'s catastrophic injuries, including the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

265.  In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

266.  The minor Plaintiff ███████████, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████, prays for judgment in her favor against Nissan on Count XX for compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for punitive damages, court costs, and for such other relief as the Court deems just and proper.

## COUNT XXI
**(Personal Injuries of ███████████: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

267.  Plaintiff incorporates by reference Paragraphs 1 through 266 as if more fully set forth herein.

268.  Nissan manufactured and designed the Armada.  Nissan owed a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and a duty to warn users and owners of any danger with the vehicle. If Nissan realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

269.  For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care to manufacture and design the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:
(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

263. As a direct and proximate result of the aforesaid negligence of Nissan, the Minor Plaintiff ▮▮▮▮▮▮▮▮▮ was injured and damaged as follows:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

264. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮▮▮ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

265. The minor Plaintiff ▮▮▮▮▮▮, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮ prays for judgment in her favor against Nissan on Count XXI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XXII
**(Personal Injuries of**  **Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

267. Plaintiff incorporates by reference Paragraphs 1 through 265 as if more fully set forth herein.

268. Nissan manufactured and designed the Armada. Nissan owed a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and a duty to warn users and owners of any danger with the vehicle. If Nissan realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

269. For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

60

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

270. As a direct and proximate result of the aforesaid negligence of Nissan, the Minor Plaintiff ▮▮▮▮▮▮▮▮ was injured and damaged as follows:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a severely fractured femur;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(e) she has scarring and disfigurement;

(f) she has a permanent injury;

(g) she will need substantial future medical care, treatments, and surgeries;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(h) she suffered, and continues to suffer, a loss of enjoyment of life.

271.  In addition to compensatory damages, the minor Plaintiff ███████ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

272.  The minor Plaintiff ███████, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████ prays for judgment in her favor against Nissan on Count XXII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXIII
### (Personal Injuries of ███████ Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)

273.  Plaintiff incorporates by reference Paragraphs 1 through 272 as if more fully set forth herein.

274.  Nissan manufactured and designed the Armada.  Nissan owed a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and a duty to warn users and owners of any danger with the vehicle. If Nissan realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

275. For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

276. As a direct and proximate result of the aforesaid negligence of Nissan, the Minor Plaintiff █████████████████ was injured and damaged as follows:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;



(e) he suffered, and continues to suffer, a loss of enjoyment of life.

277. In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

278. The minor Plaintiff ███████████ through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor against Nissan on Count XXIII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

<div style="text-align:center">

**COUNT XXIV**
**(Personal Injuries of ███████████ Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

</div>

279. Plaintiff incorporates by reference Paragraphs 1 through 278 as if more fully set forth herein.

280. Nissan manufactured and designed the Armada. Nissan owed a duty of ordinary care to the public to ensure that its automotive products, including all of their component parts, were manufactured and designed in a safe manner so that the vehicles would be safe for motorists to operate on the roadways, and a duty to warn users and owners of any danger with the vehicle. If Nissan realized after the sale that their products were unsafe, Nissan had a duty to warn owners and users.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

281. For the reasons set forth in Paragraphs 93 through 137, Nissan breached that duty of ordinary care, failed to use ordinary care in the design and manufacture of the Armada, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Nissan negligently manufactured and designed an automobile with a defective braking and sensor system;

(b) Nissan chose to install in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Nissan was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Nissan knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Nissan did nothing;

(e) despite testing performed by Nissan which showed the defects, Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Nissan, even after multiple deaths and a lawsuit in which it was required to pay $25M, still refused to warn users of the vehicle that it was defective.

282. As a direct and proximate result of the aforesaid negligence of Nissan, the Minor Plaintiff ▇▇▇▇ was injured and damaged as follows:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

283. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮ seeks punitive circumstances damages against Nissan, in that the actions of Nissan were outrageous and showed complete indifference and conscious disregard for the safety of others.

284. The minor Plaintiff ▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Nissan for its egregious conduct and to deter Nissan and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮ prays for judgment in her favor against Nissan on Count XXIV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XXV
**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*);**
**Continental: Strict Products Liability for Design Defects)**

285. Plaintiff incorporates by reference Paragraphs 1 through 284 as if more fully set forth herein.

286. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

287. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use.

288. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

289. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor in the Armada, as set forth above, as they existed when the products were sold, Whitney Thomas was killed, and the Minor Plaintiffs, along with the other wrongful death beneficiary▮▮▮▮▮▮▮▮ were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d) they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

290. In addition to compensatory damages, the minor Plaintiffs seek aggravating circumstances damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

291. The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Continental on Count XXV for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

## COUNT XXVI
**(Personal Injuries of ▮▮▮▮▮▮▮▮ Continental: Strict Products Liability for Design Defects)**

292. Plaintiff incorporates Paragraphs 1 through 291 as if fully set forth herein.

293. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

294. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to their reasonably anticipated use.

295. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

296. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada, as set forth above, as they existed when the products were sold, Minor Plaintiff ▮▮▮▮▮▮▮ was catastrophically injured, and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

297. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮▮▮ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

298. The minor Plaintiff ▮▮▮▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮▮▮, prays for judgment in her favor against Continental on Count XXVI for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXVII
### (Personal Injuries of ▮▮▮▮▮▮▮▮: Continental: Strict Products Liability for Design Defects)

299. Plaintiff incorporates Paragraphs 1 through 298 as if fully set forth herein.

300. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

301. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. was, for the reasons set forth in Paragraphs 93 to 137,

were then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use.

302. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

303. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada, as set forth above, as they existed when the products were sold, Minor Plaintiff ▮▮▮▮▮▮▮ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

304. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

305. The minor Plaintiff ▮▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮ prays for judgment in her favor against Continental on Count XXVII, for compensatory damages in

amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXVIII
**(Personal Injuries of ▮▮▮▮▮▮: Continental: Strict Products Liability for Design Defects)**

306. Plaintiff incorporates Paragraphs 1 through 305 as if fully set forth herein.

307. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

308. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use.

309. The braking systems and Delta Stroke Sensor which were installed in and became part of the Nissan were used in a manner reasonably anticipated.

310. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada, as set forth above, as they existed when the products were sold, Minor Plaintiff ▮▮▮▮▮▮ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a significant femur fracture;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life, and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(f) she has scarring and disfigurement;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(g) she has a permanent injury;

(h) she will need substantial future medical care, treatments, and surgeries;

(i) her ability to obtain employment later in life will be adversely affected.

311. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

312. The minor Plaintiff ▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮ prays for judgment in her favor against Continental on Count XXVIII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXIX
**(Personal Injuries of ▮▮▮▮▮ Continental: Strict Products Liability for Design Defects)**

313. Plaintiff incorporates Paragraphs 1 through 312 as if fully set forth herein.

314. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

315. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and was unreasonably dangerous when put to their reasonably anticipated use.

316. The braking systems and Delta Stroke Sensor which were installed in and became part of the Nissan were used in a manner reasonably anticipated.

317. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor which were installed in and became part of the Nissan, as set forth above, as they existed when the products were sold, Minor Plaintiff ██████████ was injured and suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

318. In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive circumstances damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

319. The minor Plaintiff ██████████ through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ██████████, prays for judgment in her favor on Count XXIX, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

**COUNT XXX**

**(Personal Injuries of ▉▉▉▉▉: Continental: Strict Products Liability for Design Defects)**

320. Plaintiff incorporates Paragraphs 1 through 319 as if fully set forth herein.

321. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

322. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use.

323. The braking systems and Delta Stroke Sensor which were installed in and became part of the Nissan were used in a manner reasonably anticipated.

324. As a direct and proximate result of the defective condition of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada, as set forth above, as they existed when the products were sold, Minor Plaintiff ▉▉▉▉▉ was injured and suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

325. In addition to compensatory damages, the minor Plaintiff ▉▉▉▉▉ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

326. The minor Plaintiff ▇▇▇▇▇▇ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the minor ▇▇▇▇▇▇, prays for judgment in her favor against Continental on Count XXX, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXXI
### (Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*); Continental: Strict Products Liability Failure to Warn)

327. Plaintiff incorporates by reference Paragraphs 1 through 326 as if more fully set forth herein.

328. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

329. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

330. Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

331. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

332. The Plaintiff's decedent Whitney Thomas was killed as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada being

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

sold without an adequate warning, and the Minor Plaintiffs, along with the other wrongful death

beneficiary ▮▮▮▮▮▮, as a direct result, were damaged in the following respects:

   (a) they suffered pecuniary losses, including funeral expenses and the decedent's

   last medical expenses and bills;

   (b) they lost the reasonable value of their mother's services;

   (c) they lost their mother, and endured pain and suffering and mental anguish,

   and suffered a grievous and catastrophic loss of consortium, companionship,

   comfort, instruction, guidance, counsel, training, and support;

   (d)  they are entitled to damages for the pain and suffering their mother endured

   between the point just prior to impact (pre-impact terror) and her death;

   (e) because Whitney Thomas was not employed full time at the time of her

   death, and because she was more than fifty percent responsible for the care of six

   minor children, the Plaintiff Minors are entitled to the rebuttable presumption

   that the value of the care provided by Whitney Thomas, is equal to one hundred

   and ten percent of the state average weekly wage, as computed under *Rev. Stat.*

   *Mo. Section 287.250;*

   (f) court costs and such other relief as is just and proper and allowed under the

   Missouri Wrongful Death Act.

333.  In addition to compensatory damages, the minor Plaintiffs, through their Next

Friend, seek aggravating circumstances damages against Continental, in that the actions

of Continental were outrageous and showed complete indifference and conscious

disregard for the safety of others.

334. The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Continental on Count XXXI for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

## COUNT XXXII
**(Personal Injuries of ███████████ Continental: Strict Products Liability Failure to Warn)**

335. Plaintiff incorporates Paragraphs 1 through 334 as if fully set forth herein.

336. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

337. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

338. Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

339. The braking systems and Delta Stroke Sensor which were installed in and became part of the Nissan were used in a manner reasonably anticipated.

340. The Minor Plaintiff ███████████ was catastrophically injured and paralyzed as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

the Armada being sold without an adequate warning, and ███████████, as a direct result,
was injured and damaged in the following respects:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able
to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long
term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as
running, walking, engaging in sports and games and recreational activities, bathing herself,
grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

341.  In addition to compensatory damages, the minor Plaintiff ███████████ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

342.  The minor Plaintiff ███████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████, prays for judgment in her favor against Continental on Count XXXII for compensatory damages, punitive damages, court costs, and for such other relief as the Court deems just and proper.

## COUNT XXXIII
**(Personal Injuries of ███████████ Continental: Strict Products Liability Failure to Warn)**

343.  Plaintiff incorporates Paragraphs 1 through 342 as if fully set forth herein.

344.   The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

345.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

346.  Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

347. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

348. Minor Plaintiff ██████████ was injured as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada being sold without an adequate warning, and, as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

349. In addition to compensatory damages, the minor Plaintiff ██████████ seeks punitive circumstances damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

350. The minor Plaintiff ██████████, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ██████████ prays for judgment in her favor against Continental on Count XXXIII for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

## COUNT XXXIV
**(Personal Injuries of ▓▓▓▓▓▓: Continental: Strict Products Liability Failure to Warn)**

351. Plaintiff incorporates Paragraphs 1 through 350 as if fully set forth herein.

352. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

353. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

354. Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

355. The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

356. Minor Plaintiff ▓▓▓▓▓▓ was damaged as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada being sold without an adequate warning, and as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a significant femur fracture;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life, and will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(f) she has scarring and disfigurement;

(g) she has a permanent injury;

(h) she will need substantial future medical care, treatments, and surgeries;

(i) her ability to obtain employment later in life will be adversely affected.

357.  In addition to compensatory damages, the Minor Plaintiff ███████ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

358.  The minor Plaintiff ███████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████ prays for judgment in her favor against Continental on Count XXXIV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XXXV
### (Personal Injuries of ███████ Continental: Strict Products Liability Failure to Warn)

359.  Plaintiff incorporates Paragraphs 1 through 358 as if fully set forth herein.

360.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

361.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

362.  Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

363.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

364.  Minor Plaintiff ███████████ was injured as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada being sold without an adequate warning, and as a direct result, suffered the following damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

365.  In addition to compensatory damages, the Minor Plaintiff ████████████ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

366.  The minor Plaintiff ████████████ through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ████████████, prays for judgment in his favor against Continental on Count XXXV, for compensatory damages in

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XXXVI
**(Personal Injuries of ▮▮▮▮▮ Continental: Strict Products Liability Failure to Warn)**

367.  Plaintiff incorporates Paragraphs 1 through 366 as if fully set forth herein.

368.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada driven by Anthony Milton Sr. were sold in the course of Continental's business.

369.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada sold to Anthony Milton Sr. were, for the reasons set forth in Paragraphs 93 to 137, then, at the time of sale, in a defective condition and were unreasonably dangerous when put to their reasonably anticipated use without knowledge of their characteristics.

370.  Continental did not give an adequate warning of the dangers of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada.

371.  The braking systems and Delta Stroke Sensor which were installed in and became part of the Armada were used in a manner reasonably anticipated.

372.  The Minor Plaintiff ▮▮▮▮▮ was injured as a direct result of the braking systems and Delta Stroke Sensor which were installed in and became part of the Armada being sold without an adequate warning and as a direct result, suffered the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

373.  In addition to compensatory damages, the minor Plaintiff █████████ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

374.  The minor Plaintiff █████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the minor █████████ prays for judgment in her favor against Continental on Count XXXVI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

### COUNT XXXVII
**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*);**
**Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

375.   Plaintiff incorporates by reference Paragraphs 1 through 374 as if more fully set forth herein.

376.  Continental manufactured and designed the braking system and Delta Strok Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers. If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and users.

377.  For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system

Electronically Filed - City of St. Louis - September 30, 2018 - 05:57 PM

and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

378. As a direct and proximate result of the aforesaid negligence of Continental, the Plaintiff's decedent Whitney Thomas was killed.

379. The negligence of Continental directly caused and directly contributed to cause the Decedent's death.

380. As a direct result of Continental's negligence, the Minor Plaintiffs, along with the other wrongful death beneficiary ███████ were damaged in the following respects:

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d)  they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

381. In addition to compensatory damages, the minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

382. The minor Plaintiffs, through their Next Friend, seek aggravating circumstances damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Continental on Count XXXVII for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for aggravating circumstances damages, for court costs, and for such other relief as is just and proper.

## COUNT XXXVIII
**(Personal Injuries of Minor Plaintiff ▮▮▮▮▮▮▮▮▮▮ Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn and Negligent Failure to Recall)**

383. Plaintiff incorporates by reference Paragraphs 1 through 383 as if more fully set forth herein.

384. Continental manufactured and designed the braking system and Delta Stroke Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers. If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and users.

385. For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

386. As a direct and proximate result of the aforesaid negligence of Continental, Minor Plaintiff ████████████ sustained catastrophic injuries and damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

387. In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

388. The minor Plaintiff ▮▮▮▮▮▮ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

conduct and to deter Continental and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮▮, prays for judgment in her favor against Continental on Count XXXVIII for compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for punitive damages, court costs, and for such other relief as the Court deems just and proper.

### COUNT XXIX
**(Personal Injuries of ▮▮▮▮▮▮▮: Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

389.    Plaintiff incorporates by reference Paragraphs 1 through 388 as if more fully set forth herein.

390.  Continental manufactured and designed the braking system and Delta Stroke Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers.  If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and users.

391.  For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

392.  As a direct and proximate result of the aforesaid negligence of Continental, Minor Plaintiff ████████████ sustained the following damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

393.  In addition to compensatory damages, the minor Plaintiff ████████████ seeks punitive circumstances damages against Continental, in that the actions of Continental

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

were outrageous and showed complete indifference and conscious disregard for the safety of others.

394. The minor Plaintiff ████████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ████████ prays for judgment in her favor against Continental on Count XXXIX, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XL
**(Personal Injuries of** ████████ **: Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

395. Plaintiff incorporates by reference Paragraphs 1 through 394 as if more fully set forth herein.

396. Continental manufactured and designed the braking system and Delta Stroke Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers. If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and users.

397. For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

398. As a direct and proximate result of the aforesaid negligence of Continental, Minor Plaintiff ▄▄▄▄▄▄▄ sustained the following injuries and damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a severely fractured femur;

(c) she suffered pain and suffering;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life;

(f) she will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(g) she has scarring and disfigurement;

(h) she has a permanent injury;

(i) she will need substantial future medical care, treatments, and surgeries.

399. In addition to compensatory damages, the minor Plaintiff ▓▓▓▓ seeks punitive circumstances damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

400. The minor Plaintiff ▓▓▓▓, through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated car manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▓▓▓▓ prays for judgment in her favor against Continental on Count XL, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XLI
**(Personal Injuries of ▓▓▓▓: Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

401. Plaintiff incorporates by reference Paragraphs 1 through 400 as if more fully set forth herein.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

402. Continental manufactured and designed the braking system and Delta Stroke Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers. If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and users.

403. For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

404.  As a direct and proximate result of the aforesaid negligence of Continental, Minor Plaintiff ▮▮▮▮▮▮▮▮▮ sustained the following injuries and damages:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

405.  In addition to compensatory damages, the minor Plaintiff ▮▮▮▮▮▮▮▮ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

406.  The minor Plaintiff ▮▮▮▮▮▮▮▮▮, through his Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮▮▮ prays for judgment in his favor against Nissan on Count XLI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XLII
**(Personal Injuries of ███████████ Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

407. Plaintiff incorporates by reference Paragraphs 1 through 406 as if more fully set forth herein.

408. Continental manufactured the braking system and Delta Stroke Sensor. Continental owed a duty of ordinary care to the public to ensure that its automotive products were manufactured and designed in a safe manner so that vehicles equipped with their automotive parts would be safe for motorists to operate on the roadways, and had a duty to warn car manufacturers, owners and users of any dangers. If Continental realized after the sale that their products were unsafe, Continental had a duty to advise Nissan and urge that the vehicle be recalled.

409. For the reasons set forth in Paragraphs 93 through 137, Continental breached that duty of ordinary care, failed to use ordinary care in the manufacture and design of the braking system and sensor, failed to adequately warn of the risks of harm, and was negligent and careless in the following respects:

(a) Continental negligently manufactured and designed a defective and unsafe braking and sensor system, and failed to warn Nissan that its braking system and sensor were unsafe;

(b) Continental supplied to Nissan for installation in its Armadas a braking system with a sensor that would erroneously trigger a backup braking system to engage which provided a different and unexpected experience to users, resulting in driver error, including over-corrections;

(c) Continental was well aware of the problems for many years, and yet failed to warn users of the defects in its braking system;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(d) Continental knew or should have known that serious bodily injury or death could occur if the defective vehicles with defective sensing and braking systems remained on the roadways, yet Continental did nothing;

(e) despite testing performed by Nissan which showed the defects, Continental and Nissan negligently hid the testing data and failed to satisfactorily advise owners, dealers and users of the defects;

(f) Continental, even after multiple deaths and a lawsuit in which it paid, upon information and belief, millions of dollars in settlement, still refused to warn users of the vehicle that it was defective.

410. As a direct and proximate result of the aforesaid negligence of Continental, Minor Plaintiff ████████ sustained the following injuries and damages:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

411. In addition to compensatory damages, the minor Plaintiff ████████ seeks punitive damages against Continental, in that the actions of Continental were outrageous and showed complete indifference and conscious disregard for the safety of others.

412. The minor Plaintiff ████████ through her Next Friend, seeks punitive damages in an amount which is sufficient to punish Continental for its egregious conduct and to deter Continental and other similarly situated automotive part manufacturers from committing similar conduct.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████ prays for judgment in her favor against Nissan on Count XLII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for punitive damages, for court costs, and for such other relief as the Court deems just and proper.

## COUNT XLIII
### (Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*); Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)

413. Plaintiff incorporates by reference Paragraphs 1 through 412 as if more fully set forth herein.

414. Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law, owed a common law and statutory duty to exercise the highest degree of care to passengers and other motorists in the operation of his motor vehicle.

415. Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

(a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

(b) he failed to keep a careful lookout; and

(c) he operated his vehicle at a speed which was too high for the then-prevailing conditions, namely rain and a wet roadway.

416. The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT, the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth above in previous counts), directly contributed to cause the Decedent's death.

417. As a direct result of Defendant Anthony Milton, Sr.'s negligence, in combination with the negligence and product defects of the other Defendants, the Minor Plaintiffs, along with the other wrongful death beneficiary ███████ were damaged in the following respects:

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(a) they suffered pecuniary losses, including funeral expenses and the decedent's last medical expenses and bills;

(b) they lost the reasonable value of their mother's services;

(c) they lost their mother, and endured pain and suffering and mental anguish, and suffered a grievous and catastrophic loss of consortium, companionship, comfort, instruction, guidance, counsel, training, and support;

(d) they are entitled to damages for the pain and suffering their mother endured between the point just prior to impact (pre-impact terror) and her death;

(e) because Whitney Thomas was not employed full time at the time of her death, and because she was more than fifty percent responsible for the care of six minor children, the Plaintiff Minors are entitled to the rebuttable presumption that the value of the care provided by Whitney Thomas, is equal to one hundred and ten percent of the state average weekly wage, as computed under *Rev. Stat. Mo. Section 287.250;*

(f) court costs and such other relief as is just and proper and allowed under the Missouri Wrongful Death Act.

WHEREFORE, Plaintiff Christina Hill, on behalf of the five Minor Plaintiffs, seeks judgment in her favor against Anthony Milton, Sr. on Count LXIII for wrongful death, for such compensatory damages in an amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as is just and proper.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

**COUNT LXIV**
**(Personal Injuries of Minor Plaintiff ▮▮▮▮▮: Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

418.   Plaintiff incorporates by reference Paragraphs 1 through 417 as if more fully set forth herein.

419.   Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law, owed a common law and statutory duty to exercise the highest degree of care to passengers and other motorists in the operation of his motor vehicle.

420.   Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

    (a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

    (b) he failed to keep a careful lookout; and

    (c) he operated his vehicle at a speed which was too high for the then-prevailing conditions, namely rain and a wet roadway.

421.   The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT, the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth above in previous counts), directly contributed to cause injuries and damages to the Minor Plaintiff ▮▮▮▮▮ to-wit:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she will need attendant care and long-term assistance with daily living;

(c) she will have millions of dollars of future medical care needs;

(d) she will need modified equipment for her home, bathing facilities, vehicles (when she is able to drive), and will need wheelchairs and other equipment;

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

(e) she has incurred the need for pharmaceuticals and will need pharmaceuticals in the future;

(f) she will need long-term nursing care;

(e) she will need long-term recreational, occupational, and medical rehabilitation therapy;

(f) she has suffered and will continue to suffer grievous emotional losses, and will need long term therapy and counseling to deal with her condition;

(g) she will need the use of robotics;

(h) she has suffered and will suffer grievous pain and suffering;

(i) she will be unable to perform the regular functions of daily living like she had before, such as running, walking, engaging in sports and games and recreational activities, bathing herself, grooming herself, playing, dancing, defecating and urinating, and walking up and down stairs;

(j) she will suffer full paralysis and loss of sensation to the lower portion of her body;

(k) she will suffer loneliness and possible depression;

(l) she will find it difficult to have a love life;

(m) she will not be able to have sex in the traditional manner;

(n) she will not be able to have children in the traditional manner;

(o) she will suffer a loss of wages over a lifetime;

(o) Plaintiff reserves the right to prepare a life care plan which will itemize the remainder of the Plaintiff's losses.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▆▆▆▆▆▆▆ prays for judgment in her favor against Anthony Milton, Sr. on Count LXIV for compensatory damages in an amount in excess of $25,000 which is fair and reasonable, court costs, and for such other relief as the Court deems just and proper.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

**COUNT LXV**
**(Personal Injuries of ▮▮▮▮▮▮▮▮▮: Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

422.    Plaintiff incorporates by reference Paragraphs 1 through 421 as if more fully set forth herein.

423. Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law, owed a common law and statutory duty to exercise the highest degree of care to passengers and other motorists in the operation of his motor vehicle.

424.  Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

    (a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

    (b) he failed to keep a careful lookout; and

    (c) he operated his vehicle at a speed which was too high for the then-prevailing conditions, namely rain and a wet roadway.

425.   The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT, the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth above in previous counts), directly contributed to cause injuries and damages to the Minor Plaintiff ▮▮▮▮▮▮▮▮▮ to-wit:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for judgment in her favor against Anthony Milton, Sr. on Count LXV, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

<div align="center">

**COUNT LXVI**
**(Personal Injuries of** ███████ **Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

</div>

426.  Plaintiff incorporates by reference Paragraphs 1 through 425 as if more fully set forth herein.

427.  Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law, owed a common law and statutory duty to exercise the highest degree of care to passengers and other motorists in the operation of his motor vehicle.

428.  Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

   (a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

   (b) he failed to keep a careful lookout; and

   (c) he operated his vehicle at a speed which was too high for the then-prevailing conditions, namely rain and a wet roadway.

429.  The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT, the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth above in previous counts), directly contributed to cause injuries and damages to the Minor Plaintiff ███████████ to-wit:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries, including a severely fractured femur;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life;

(f) she will have difficulty with her gait as well as an increased susceptibility to future orthopedic injuries to her leg;

(g) she has scarring and disfigurement;

(h) she has a permanent injury;

(i) she will need substantial future medical care, treatments, and surgeries.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▮▮▮▮▮ prays for judgment in her favor against Continental on Count LXVI, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

### COUNT LXVII
**(Personal Injuries of ▮▮▮▮▮▮▮: Anthony Milton, Sr: Negligent Operation of a Motor Vehicle)**

430. Plaintiff incorporates by reference Paragraphs 1 through 429 as if more fully set forth herein.

431. Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law, owed a common law and statutory duty to exercise the highest degree of care to passengers and other motorists in the operation of his motor vehicle.

432. Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

(a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

(b) he failed to keep a careful lookout; and

(c) he operated his vehicle at a speed which was too high for the then-prevailing

conditions, namely rain and a wet roadway.

433.   The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT,

the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth

above in previous counts), directly contributed to cause injuries and damages to the Minor

Plaintiff ███████████ to-wit:

(a) he suffered pecuniary losses, including past and future medical bills;

(b) he had hospitalizations for her medical injuries;

(c) he suffered pain and suffering;

(d) he suffered, and continues to suffer, emotional injuries due to the crash;

(e) he suffered, and continues to suffer, a loss of enjoyment of life.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ███████████ prays for

judgment in his favor against Defendant Anthony Milton, Sr. on Count XLVII, for compensatory

damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for

such other relief as the Court deems just and proper.

**COUNT XLVIII**
**(Personal Injuries of ███████████ Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

434.   Plaintiff incorporates by reference Paragraphs 1 through 433 as if more fully set forth

herein.

435.   Defendant Anthony Milton, Sr., as the operator of a motor vehicle, under Missouri law,

owed a common law and statutory duty to exercise the highest degree of care to passengers and

other motorists in the operation of his motor vehicle.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

436. Defendant Anthony Milton, Sr. breached that duty and was negligent in the following respects:

   (a) he failed to keep his vehicle under control and to negotiate changes in the roadway;

   (b) he failed to keep a careful lookout; and

   (c) he operated his vehicle at a speed which was too high for the then-prevailing conditions, namely rain and a wet roadway.

437.   The negligence of Anthony Milton, Sr., along with the negligence of Defendant MODOT, the negligence of Nissan and Continental, and along with the defects in the Armada (as set forth above in previous counts), directly contributed to cause injuries and damages to the Minor Plaintiff, ▉▉▉▉▉▉▉, to-wit:

(a) she suffered pecuniary losses, including past and future medical bills;

(b) she had hospitalizations for her medical injuries;

(c) she suffered pain and suffering;

(d) she suffered, and continues to suffer, emotional injuries due to the crash;

(e) she suffered, and continues to suffer, a loss of enjoyment of life.

WHEREFORE, Plaintiff Christina Hill, on behalf of the Minor ▉▉▉▉▉▉ prays for judgment in her favor against Anthony Milton, Sr. on Count XLVIII, for compensatory damages in amount in excess of $25,000 which is fair and reasonable, for court costs, and for such other relief as the Court deems just and proper.

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

Respectfully Submitted,


**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM, A.P.C.
2030 Main Street Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Counsel for Plaintiffs*

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

# MODOT-CITY OF ST. LOUIS MAINTENANCE AGREEMENT FOR RIVERVIEW BLVD.

## JAN. 9, 2004



EXHIBIT

_A_

## MISSOURI HIGHWAYS AND TRANSPORTATION COMMISSION
## MAINTENANCE AGREEMENT FOR CITY STREETS

THIS AGREEMENT is entered into by the Missouri Highways and Transportation Commission (hereinafter, "Commission") and the City of St. Louis, Missouri (hereinafter, "City").

WITNESSETH:

WHEREAS, Article IV, Section 30(b)(3)(e) of the Missouri Constitution allows the Commission to assume maintenance for and expend funds on city streets that constitute a necessary continuation of a state highway; and

WHERAS, the City has requested that the Commission assume maintenance and reconstruction obligations for certain city streets, bridges, and roadways that are a continuation of state highways; and

WHEREAS, the Commission has determined that the proposed streets, bridges, and roadways qualify as necessary continuation of various state highways; and

WHEREAS, the Commission is willing to assume responsibility for the maintenance and reconstruction of the roads identified in this Agreement subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of these mutual covenants, promises and representations, the parties agree as follows:

(1)   PURPOSE:  The purpose of this Agreement is to designate maintenance and reconstruction responsibilities between the City and the Commission for certain identified highways as authorized by Article IV, Section 30(b)(3)(e) of the Missouri Constitution.

(2)   LOCATION:  Subject to the terms and conditions of this Agreement, the Commission agrees to maintain and reconstruct the surface of the traveled way, from curb to curb, of the following roads, including bridges, as appropriate, in the City:

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

|  |  | Limits | Miles |  |
|---|---|---|---|---|
| MO 30 |  |  |  |  |
|  | Gravois | St. Louis City Limits to IS55 | 5.68 |  |
|  |  |  |  | 5.68 |
| RT D |  |  |  |  |
|  | Page | St. Louis City Limits to Dr. M.L. King | 3.90 |  |
|  | Dr M.L. King | Page Ave to Tucker | 1.81 |  |
|  |  |  |  | 5.71 |
| MO 367 |  |  |  |  |
|  | Halls Ferry Circle | MO 367 to Riverview Blvd | 0.09 |  |
|  | Riverview Blvd | Halls Ferry Circle to IS 70 | 2.10 |  |
|  |  |  |  | 2.19 |
| RT H |  |  |  |  |
|  | Riverview Dr | IS270 to Hall St | 3.63 |  |
|  | Hall St | Riverview Dr. to Adelaide | 3.47 |  |
|  | Adelaide Ave | Hall St. to IS70 | 0.48 |  |
|  |  |  |  | 7.56 |
| MO 100 |  |  |  |  |
|  | Manchester | St. Louis City Limits to Vandeventor | 2.58 |  |
|  | Chouteau | Vandeventor to I-70 | 3.57 |  |
|  |  |  |  | 6.15 |
| MO 115 |  |  |  |  |
|  | Natural Bridge | St. Louis City Limits to Salisbury | 4.16 |  |
|  | Salisbury | Natural Brige to IS70 | 0.72 |  |
|  |  |  |  | 4.86 |
|  |  |  | Total | 32.17 |

(3)  **MAINTENANCE BY COMMISSION:**

(A)  The Commission will maintain the surface of the traveled way, from curb to curb, of the routes identified in (2), above, in the same manner and to the same extent that it maintains other state highways of a similar type in other areas of the state.

(B)  Maintenance and reconstruction, as contemplated by this Agreement, shall include resurfacing, rebuilding, pothole repair, sweeping debris, striping, signalization, and signing. Should a maintenance or reconstruction activity so require, the City, at no cost to the Commission, shall secure the removal or relocation of the affected utility.

(C)    Maintenance and reconstruction, as contemplated by this Agreement, shall not include the maintenance, installation, removal or repair of water supply lines, sanitary or storm sewers (except storm sewers constructed by the Commission to drain the highway), snow removal, sidewalks, curbs and associated appurtenances, parking areas (except for the parking lane), trees or other ornamental vegetation, street lighting systems, pole lines, conduits, or other utilities. All work and/or costs for work for all excluded functions shall be the responsibility of the City or owner of the facility involved. Snow removal shall continue to be the responsibility of the City and shall consist of plowing and/or the application of chemicals acceptable to the Commission to the driving and turning lanes of the identified routes only and the parking lane if clear of obstructions. The Commission shall not be responsible for snow and/or ice removal from the curbs and sidewalks.

(D)    In the event the Commission includes any items for which the City has responsibility to maintain as part of a Commission project, the City shall reimburse the Commission for the full cost of the activity. The Commission will not include any such item in a Commission project without prior written approval of the City's Mayor and President of the Board of Public Service. The parties may negotiate a separate agreement to cover the reimbursement for said work.

(E)    In the event the Commission undertakes a project that includes construction or other work in the parking lane, the City shall ensure that the parking lanes are clear of all vehicles or other objects.

(4)    RESPONSIBILITIES OF THE CITY:

(A)    Except as specifically identified in this Agreement, the City shall retain all responsibilities and obligations of owning the specified streets and their associated appurtenances. The City, at its sole cost and expense, shall be responsible for the installation and maintenance of all parking regulation of the roads. The City shall remain responsible for the permitting utility activities and driveway access. The City shall coordinate any street closing for said maintenance or reconstruction with the Commission. In addition, except for emergency situations involving public safety or the physical stability of the roadway or any improvements on the roadway, the City shall advise the Commission of any signal, sign, and pavement projects activities at least 48 hours prior to those activities being undertaken by the City. The City shall retain responsibility for the construction and maintenance of all lighting structures on the designated streets.

(B)    Claims Against the City: In the event any claims or lawsuits are filed against the City relating to any issue regarding the roads identified in paragraph (2), above, including claims filed pursuant to Chapter 537 RSMo for dangerous condition on City property and any claim relating to the maintenance of those roads, the City shall advise the Commission's Assistant Chief Counsel-Risk Management of the case and shall consult with the Commission regarding the claim, including any proposed settlement of the claim. The City will not settle any such claim without prior consultation

3

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM



with the Commission.

(C)     Duty to Notify Commission of Concerns:  The City shall notify the Commission's Assistant Chief Counsel-Risk Management of any action or omission that the City believes constitutes a breach of this contract by the Commission or other cause of action arising out of or relating to the responsibilities assumed by the Commission pursuant to this Agreement prior to the City filing any claim against the Commission, including, but not limited to, damages for breach of contract.  The City shall file no such claim without giving the Commission 60 days advance notice thereof.

(5)     USE OF EXISTING RIGHT OF WAY:  The Commission shall have full use of the existing City right-of-way to such roads or streets for maintenance purposes, and the City agrees to retain such right-of-way for Commission use, except the City, in its sole discretion and upon thirty days written notice to the Commission, reserves the right to vacate any such road or street.

(6)     TRAFFIC SIGNS, LIGHTS OR SIGNALS:  The Commission may install, remove and maintain such regulatory, warning and informational traffic signs, pavement markings, lights or signals as are prescribed by the policy of the Commission and in accordance with the *Manual on Uniform Traffic Control Devices* to the extent that the latter is approved by the Commission and the Federal Highway Administration.

(7)     ORDINANCES AND REGULATIONS:

(A)     The City agrees to enforce and keep in force such ordinances or regulations as have been or may be approved by the Commission and thereafter duly enacted relating to the use of said roads and streets by motor vehicles.  All such ordinances in effect at the time this Agreement is executed shall be deemed approved.

(B)     The City will submit to the Commission for approval any ordinances, rules, regulations, or resolutions appertaining to the regulation of traffic, the parking of motor vehicles, location and character of loading zones, sale or distribution of merchandise on the right-of-way, or the location, form, or character of any traffic signs and will not enact or keep in force any ordinance not approved by the Commission. The Commission has 60 days to approve or deny such ordinances.  If no response within 60 days, the ordinance will be deemed approved by the Commission.

(C)     The City agrees to keep existing snow route ordinances in effect and shall only make alterations to those policies on the affected routes after review and concurrence of the proposed changes by the Commission.

(8)     ENTRANCES, DRAINAGE AND UTILITIES:

(A)     All requests for the installation, relocation or removal of any entrance or roadway drainage facility within the limits of the roadway right-of-way and all requests for the installation, relocation or removal of any public utility and public or

private lines, poles, wires or conduit involving location on or excavation in, under or through the thruway surface, shoulders or highway drainage facility, shall be referred to the City for the issuance of a permit. Any such permit issued shall require the applicant to comply with all traffic control, signing, and construction requirements of the Commission. The responsibility for the relocation of any utilities that are maintained by permit on the identified streets shall be with the City or with the affected utility. All such work shall be in accordance with the standard policy and regulations of the Commission.

(B)    The City shall be responsible for receiving and disposing of storm and surface water discharged from any drainage facilities which the Commission constructs within the limits of highway right-of-way to the extent of the City's authority and control of the storm sewer facilities or natural drainage involved.

(9)    PARTY RESPONSIBILITY:  The parties enter into this Agreement as sovereign entities and not as principal and agent. Nothing in this Agreement shall be construed to hold the Commission responsible for any actions, omissions, or any matter that is the responsibility of the City, including all responsibilities as the owner of the right of way and street. Likewise, nothing in this Agreement shall be construed to hold the City responsible for any actions of the Commission while performing its duties pursuant to this Agreement.

(10)   OUTDOOR ADVERTISING:  No billboards or other advertising signs or devices or vending or sale of merchandise will be permitted within the traveled way from curb to curb and the City will enact such ordinances as are necessary to enforce this paragraph, except for existing rights granted by Ordinance.

(11)   AMENDMENTS:  Any change in this Agreement, whether by modification or supplementation, must be accomplished by a formal contract amendment signed and approved by the duly authorized representative of the City and the Commission.

(12)   COMMISSION REPRESENTATIVE:  The Commission's district engineer is designated as the Commission's representative for the purpose of administering the provisions of this Agreement.   The Commission's representative may designate by written notice other persons having the authority to act on behalf of the Commission in furtherance of the performance of this Agreement.

(13)   CITY REPRESENTATIVE:  The City's President of the Board of Public Service is designated as the City's representative for the purpose of administering the provisions of this Agreement. The City's representative may designate by written notice other persons having the authority to act on behalf of the City in furtherance of the performance of this Agreement.

(14)   LAW OF MISSOURI TO GOVERN:  This Agreement shall be construed according to the laws of the State of Missouri. The City shall comply with all state and federal laws and regulations relating to the performance of this Agreement.

5

(15)   ASSIGNMENT:   The City shall not assign, transfer or delegate any interest in this Agreement without the prior written consent of the Commission.

(16)   CANCELLATION:   Either party may cancel this Agreement at any time for a material breach of contractual obligations or for a party's convenience for any reason whatsoever by providing the other party with written notice of cancellation. Should the a party exercise its right to cancel the contract for such reasons, cancellation will become effective upon the date specified in the notice of cancellation sent to the other party.

(17)   VENUE:   It is agreed by the parties that any action at law, suit in equity, or other judicial proceeding to enforce or construe this Agreement, or regarding its alleged breach, shall be instituted only in the Circuit Court of Cole County, Missouri.

(18)   SECTION HEADINGS:   All section headings contained in this Agreement are for the convenience of reference only and are not intended to define or limit the scope of any provision of this Agreement.

(19)   SOLE BENEFICIARY:   This Agreement is made for the sole benefit of the parties hereto and nothing in this Agreement shall be construed to give any rights or benefits to anyone other than the Commission and City.

(20)   AUTHORITY TO EXECUTE:   The signers of this Agreement warrant that they are acting officially and properly on behalf of their respective institutions and have been duly authorized, directed and empowered to execute this Agreement.

(21)   EXISTING TIP:   The Commission and City agree that by entering into this Agreement, neither the Commission nor the City will rescind, reduce, or withdraw funding for any budgeted item on the local Transportation Improvement Program (TIP) as of the date this Agreement is executed.

(22)   SUPERSESSION:   This   Agreement   supersedes   the   following maintenance agreements: an agreement between the Commission and the City dated May 13, 1988 relating to Page Avenue and Gravois Avenue (totaling 10.7 miles), an agreement between the Commission and the City dated December 7, 1992 relating to Natural Bridge/Salisbury, Manchester/Chouteau, and Chippewa Street (totaling 25.21 miles), and an agreement between the Commission and the City dated July 24, 1997 relating to Riverview Drive, Hall Street, and Route 180/Martin Luther King Drive (totaling 11.2 miles). However, the maintenance responsibilities for Route 366 as identified in a maintenance agreement between the parties dated 7th day of December 1992 and Route 180/ Martin Luther King Drive from the west city limits to Page Avenue, a distance of 3.8 miles, identified in a maintenance agreement between the parties dated 24th day of July 1997 shall remain in effect only to the extent provided in this paragraph. On Route 366, the Commission shall continue to only maintain the surface of the road as outlined in said agreement.   On Route 180 / Martin Luther King Drive, the Commission shall continue to maintain the surface of the road as outlined in the said

Electronically Filed - City of St. Louis - September 30, 2019 - 05:57 PM

agreement until such time that this roadway section is resurfaced. At such time, the Commission shall turn said section to the City for any and all maintenance responsibilities.

IN WITNESS WHEREOF, the parties have entered into this Agreement on the date last written below.

Executed by the City this ___ day of _____, 20____

Executed by the Commission this ___ day of _____, 20____.

MISSOURI HIGHWAYS AND
TRANSPORTATION COMMISSION

CITY OF ST. LOUIS, MISSOURI

By _____

Title _____ Chief Engineer _____

Title:  Mayor

ATTEST:

_____
Secretary to the Commission

By _____

Title:  Comptroller

Approved as to Form:

_____
Commission Counsel

By _____

Title:  Register

Approved as to Form:

By: _____

Title:  City Counsel

Ordinance No. ___ 66028 ___

7

Electronically Filed - City of St. Louis - September 30, 2019 - 05:58 PM

**In the**

# CIRCUIT COURT

## City of St. Louis, Missouri



CHRISTINA HILL, NF for Zakaiyah Manley et al.

Plaintiff/Petitioner

vs.

MO HIGHWAYS AND TRANSP. COMM'N ET AL.

Defendant/Respondent

┌                              ┐

For File Stamp Only

09/30/2019
Date

1822-cc-11782
Case number

1
Division

└                              ┘

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now  PLAINTIFF _____ , pursuant

Requesting Party

to Local Rule 14, requests the appointment by the Circuit Clerk of

| Richard Langdon | 130 S. Bemiston, Suite 300 | 314-775-4948 |
|---|---|---|
| Name of Process Server | Address | Telephone |
| Kathleen Langdon | 130 S. Bemiston, Suite 300 | 314-775-4948 |
| Name of Process Server | Address | Telephone |
| Robert Lutren | 130 S. Bemiston, Suite 300 | 314-775-4948 |
| Name of Process Server | Address | Telephone |

to serve the summons and petition in this cause on the below named parties.

SERVE:
THE MO HIGHWAYS AND TRANSP. COMM'N
Name
Pamela Harlan, Secretary to the Commission
Address
105 W Capitol Ave Jefferson City MO 65102
City/State/Zip

SERVE:
NISSAN NORTH AMERICA, INC.
Name
CSC-Lawyers Incorporating Service
Address
221 Bolivar St. Jefferson City MO 65101
City/State/Zip

SERVE:
CONTINENTAL AUTMOTIVE SYSTEMS, INC.
Name
The Corporation Company
Address
40600 AnnArborRd E Ste201 PlymouthMI 48170
City/State/Zip

SERVE:
ANTHONY MILTON, SR.
Name
Jamie Boock     Rossiter & Boock LLC
Address
124 Gay Ave Clayton MO 63105
City/State/Zip

Appointed as requested:
**TOM KLOEPPINGER,** Circuit Clerk


By_____
Deputy Clerk


_____
Date

John F Medler Jr.  THE MEDLER LAW FIRM
Attorney/Plaintiff/Petitioner
38533
Bar No.
2030 Main St Suite 1300 Irvine CA 92614
Address
(949)-260-4940 (office) (314)-210-4745 (cell)
Phone No.

**SPECIAL PROCESS SERVER**

**IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI**

| | | |
|---|---|---|
| Judge or Division:<br>REX M BURLISON | Case Number:  1822-CC11782 | Special Process Server 1<br>R LANGDON |
| Plaintiff/Petitioner:<br>▇▇▇▇▇▇ | Plaintiff's/Petitioner's Attorney/Address<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA  92614 | Special Process Server 2 |
| | vs. | Special Process Server 3 |
| Defendant/Respondent:<br> MISSOURI HIGHWAY AND TRANSPORTATION<br>COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Wrongful Death | | (Date File Stamp) |

**Summons in Civil Case**

| | |
|---|---|
| The State of Missouri to: | **MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION**<br>**Alias:  AKA THE MISSOURI DEPT OF TRANSPORTATION** |

**C/O PAMELA HARLAN**
**SECRETARY  TO THE COMMISSION**
**105 WEST CAPITOL**
**JEFFERSON CITY, MO  65102**
*COURT SEAL OF*

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**October 1, 2019**

_____
Date

_____
*Thomas Kloeppinger*

Further Information:

**Sheriff's or Server's Return**

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with
_____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address) in

_____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

_____
Date

_____
Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.



**SPECIAL PROCESS SERVER**

## IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number:  1822-CC11782 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br>▄▄▄▄▄▄▄▄ | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA  92614 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br>MISSOURI HIGHWAY AND<br>TRANSPORTATION COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | (Date File Stamp) |
| Nature of Suit:<br>CC Wrongful Death | | |

### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

The State of Missouri to:   **CONTINENTAL AUTOMOTIVE SYSTEMS INC**
                    **Alias:  FKA CONTINENTAL TEVES INC**

THE CORPORATION COMPANY
40600 ANN ARBOR RD E SUITE 201
PLYMOUTH, MI  48170

SERVE MANAGING OFFICER OR
GENERAL AGENT
ONE CONTINENTAL DR
AUBURN HILLS, MI  48326

**COURT SEAL OF**

*CIRCUIT COURT OF MISSOURI*

**CITY OF ST LOUIS**

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

**October 1, 2019**

_____
Date

*Thomas Kloeppinger* _____
Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by:  (check one)
   - ☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - ☐ other: _____.

Served at _____ (address)

in _____ County, _____ (state), on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one) ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths.  (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees | | | | | |
|---|---|---|---|---|---|
| Summons | $_____ | | | | |
| Non Est | $_____ | | | | |
| Mileage | $_____ | (_____ miles @ $ _____ per mile) | | | |
| **Total** | $_____ | | | | |

See the following page for directions to officer making return on service of summons.

## Directions to Officer Making Return on Service of Summons

A copy of the summons and a copy of the motion must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age who permanently resides with the defendant/respondent, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

**SPECIAL PROCESS SERVER**

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number:  1822-CC11782 | Special Process Server 1<br>R LANGDON |
|---|---|---|
| Plaintiff/Petitioner:<br><br> | Plaintiff's/Petitioner's Attorney/Address<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA  92614 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br> MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | |
| Nature of Suit:<br>CC Wrongful Death | | (Date File Stamp) |

**Summons in Civil Case**

The State of Missouri to:    NISSAN NORTH AMERICA INC
                                            Alias:

**CSC LAWYERS INC SERVICE CO**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO  65101**

*COURT SEAL OF*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**October 1, 2019**

_____
                Date

_____
(signature)

*CITY OF ST LOUIS*

Further Information:

**Sheriff's or Server's Return**

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
   _____ (name) _____ (title).
☐ other: _____.

Served at _____ (address) in

_____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
     Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____          _____
                                              Date                                        Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**SPECIAL PROCESS SERVER**

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number:  1822-CC11782 | Special Process Server 1<br>R LANGDON |
|---|---|---|
| Plaintiff/Petitioner:<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA  92614 | Special Process Server 2<br><br>Special Process Server 3 |
| Defendant/Respondent:<br> MISSOURI HIGHWAY AND TRANSPORTATION<br>COMMISSION<br>Nature of Suit:<br>CC Wrongful Death | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO  63101 | <br><br>(Date File Stamp) |

**Summons in Civil Case**

| The State of Missouri to:   ANTHONY MILTON SR | |
|---|---|
| **Alias:**<br>**C/O ATTORNEY JAMIE BOOCK ESQ**<br>**ROSSITER & BOOCK LLC**<br>**124 GAY AVE**<br>**CLAYTON, MO  63105**<br>*COURT SEAL OF*<br><br>*CITY OF ST LOUIS* | You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.<br><br>**October 1, 2019**<br>_____     _____<br>          Date<br>Further Information: |

**Sheriff's or Server's Return**

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with
_____, a person of the defendant's/respondent's family over the age of 15 years who
permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____ .

Served at _____ (address) in

_____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
        Printed Name of Sheriff or Server                                  Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*          Subscribed and sworn to before me on _____ (date).

My commission expires: _____     _____
                                              Date                                    Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - City of St. Louis - October 03, 2019 - 12:45 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

**CHRISTINA HILL**, *in her capacity as* )
*Next Friend for the following Minor* )
*Plaintiffs:* )
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )
▮▮▮▮▮▮▮▮▮▮▮▮ )            Cause No. 1822-CC11782
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ )
a ▮▮▮▮▮▮▮▮▮▮ )
)
        Plaintiffs, )
)
vs. )
**THE MISSOURI HIGHWAYS AND** )
**TRANSPORTATION COMMISSION** )
**a/k/a THE MISSOURI DEPARTMENT** )
**OF TRANSPORTATION a/k/a** )
**"MODOT,"** )
)
        Defendant. )

<u>**MOTION TO WITHDRAW**</u>

    COMES NOW Kelsy Simon Vollmer, and hereby withdraws as counsel for Plaintiffs.

                DEVEREAUX, STOKES,
                FERNANDEZ & LEONARD, P.C.

                /s/ Kelsy Simon Vollmer

                _____
                KELSY SIMON VOLLMER #68455
                Attorney for Plaintiffs
                133 South 11th Street
                Suite 350
                St. Louis, MO  63102
                (314) 621-1252
                Fax:  (314) 621-5705
                kelsy@stltriallawyers.com

Electronically Filed - City of St. Louis - October 03, 2019 - 12:45 PM

<u>Certificate of Service</u>

The foregoing document was filed with the Clerk of the Court via Missouri Courts e-Filing System this 3rd day of October, 2019.

/s/ Kelsy Simon Vollmer

_____
KELSY SIMON VOLLMER

Electronically Filed - City of St. Louis - October 04, 2019 - 06:12 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

CHRISTINA HILL, *in her capacity as* )
*Next Friend for the following Minor* )
*Plaintiffs:* )
▮▮▮▮▮▮▮▮ )
▮▮▮▮▮▮▮▮▮▮▮ )  Cause No. 1822-CC11782
▮▮▮▮▮▮▮▮ )
▮▮▮▮▮▮▮▮▮▮ )
and ▮▮▮▮▮▮ )
　　　　　Plaintiff, )
 )  Div. 1
vs. )
THE MISSOURI HIGHWAYS AND )
TRANSPORTATION COMMISSION )
a/k/a THE MISSOURI DEPARTMENT )
OF TRANSPORTATION a/k/a )
"MODOT,"    NISSAN NORTH )
AMERICA, INC., CONTINENTAL )
AUTOMOTIVE SYSTEMS, INC., )
and ANTHONY MILTON, SR. )
　　　　　Defendants. )

## ENTRY OF APPEARANCE

Comes now Mark H. Zoole and enters his appearance as co-counsel on behalf of Plaintiff,

Christina Hill, in her capacity as Next Friend for the Minor Plaintiffs.

　　　　　　　　　　/s/Mark H. Zoole　　　　　　
　　　　　　　　　　Mark H. Zoole #38635
　　　　　　　　　　P.O. Box 190549
　　　　　　　　　　St. Louis, MO  63119
　　　　　　　　　　(314) 223-0436
　　　　　　　　　　zoole@sbcglobal.net

## Certificate of Service

The undersigned certifies that a true and correct copy of the foregoing was sent via email
and the Court Clerk's electronic filing notification system to all counsel of record, including
John F. Medler, 2030 Main Street, Ste, 1300, Irvine, CA, 92614, john@johnmedlerlawfirm.com,
on this 4th day of October, 2019.

　　　　　　　　　　/s/Mark H. Zoole

Electronically Filed - City of St. Louis - October 04, 2019 - 06:15 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | |
|---|---|
| **CHRISTINA HILL**, *in her capacity as* ) | |
| *Next Friend for the following Minor* ) | |
| *Plaintiffs:* ) | |
| ) | |
| ) | |
| ) | Cause No. 1822-CC11782 |
| ) | |
| and ) | |
| Plaintiff, ) | |
| ) | Div. 1 |
| vs. ) | |
| **THE MISSOURI HIGHWAYS AND** ) | |
| **TRANSPORTATION COMMISSION** ) | |
| **a/k/a THE MISSOURI DEPARTMENT** ) | |
| **OF TRANSPORTATION a/k/a** ) | |
| **"MODOT," NISSAN NORTH** ) | |
| **AMERICA, INC., CONTINENTAL** ) | |
| **AUTOMOTIVE SYSTEMS, INC.,** ) | |
| and **ANTHONY MILTON, SR.** ) | |
| Defendants. ) | |

## PLAINTIFF'S PROOF OF SERVICE

COMES NOW Plaintiff and advises that three of the Defendants have been served:

1. Defendant The Missouri Highways and Transportation Commission was successfully served on October 3, 2019. Its Answer is due on **November 4, 2019**. (EX A)

2. Defendant Nissan North America, Inc. was successfully served on October 3, 2019. Its Answer is due on **November 4, 2019**. (EX B)

3. Defendant Continental Automotive Systems, Inc. was successfully served on October 4, 2019. Its Answer is due on **November 4, 2019**. (EX C)

Respectfully Submitted,

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM APC
2030 Main Street Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)

Electronically Filed - City of St. Louis - October 04, 2019 - 06:15 PM



SPECIAL PROCESS SERVER

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number: 1822-CC11782 | Special Process Server 1<br>R LANGDON |
|---|---|---|
| Plaintiff/Petitioner:<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA 92614 | Special Process Server 2<br><br>Special Process Server 3 |
| Defendant/Respondent:<br>MISSOURI HIGHWAY AND TRANSPORTATION<br>COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Wrongful Death | | (Date File Stamp) |

**Summons in Civil Case**

| | MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION |
|---|---|
| The State of Missouri to:<br><br>C/O PAMELA HARLAN<br>SECRETARY TO THE COMMISSION<br>105 WEST CAPITOL<br>JEFFERSON CITY, MO 65102 | Alias: AKA THE MISSOURI DEPT OF TRANSPORTATION |

COURT SEAL OF

CITY OF ST LOUIS

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

October 1, 2019
_____
Date

_Thomas J Kloeppinger_

Further Information:

**Sheriff's or Server's Return**

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _Shiron Monroe,_ (name) _Assistant To Mo. Hwy Com M._ (title).
☐ other:

Served at _105 West Capitol, Jefferson City_ (address) in
_Cole_ (County/City of St. Louis), MO, on _Oct. 3 2019_ (date) at _11.10 AM_ (time).

_Stephen R Waters_
Printed Name of Sheriff or Server

_Stephen R Waters_ (signature)
Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:
Subscribed and sworn to before me on _Oct. 3 2019_ (date).

(Seal)

My commission expires: _2-21-2020_
Date

_Cecile R Landrum_
Notary Public

CECILE R. LANDRUM
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 16676146
My Commission Expires February 21, 2020

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**EXHIBIT**

_A_

Electronically Filed - City of St. Louis - October 04, 2019 - 06:15 PM



**SPECIAL PROCESS SERVER**

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number: 1822-CC11762 | Special Process Server 1<br>R LANGDON |
|---|---|---|
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA 92614 | Special Process Server 2 |
| vs. | | Special Process Server 3 |
| Defendant/Respondent:<br>MISSOURI HIGHWAY AND TRANSPORTATION<br>COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | |
| Nature of Suit:<br>CC Wrongful Death | | (Date File Stamp) |

**Summons in Civil Case**

The State of Missouri to: **NISSAN NORTH AMERICA INC**
Alias:

**CSC LAWYERS INC SERVICE CO
221 BOLIVAR STREET
JEFFERSON CITY, MO 65101**

COURT SEAL OF

*CITY OF ST LOUIS*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

October 1, 2019

_____          _____
Date                             Thomas Kloeppinger

Further Information:

**Sheriff's or Server's Return**

Note to serving officer: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____ , a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.
☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: **Lauren Shipley** (name) **Designee for CSC-Lawyers** (title).
☐ other: _____ .

Served at **221 Bolivar St. 106, Jefferson City** (address) in
**Cole** (County/City of St. Louis), MO, on **Oct. 3 2019** (date) at **11:20 AM** (time).

**Stephen R. Waters**                          _____
Printed Name of Sheriff or Server              Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on **Oct. 3 2019** (date).

(Seal)

My commission expires: **2-21-2020** _____
                       Date              Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

CECILE R. LANDRUM
Notary Public, Notary Seal
State of Missouri
Cole County
Commission # 16676146
My Commission Expires February 21, 2020

A copy of the summons and a copy of the petition must be served on each defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**EXHIBIT**
B

Electronically Filed - City of St. Louis - October 04, 2019 - 06:15 PM



SPECIAL PROCESS SERVER

# IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| Judge or Division:<br>REX M BURLISON | Case Number: 1822-CC11782 | Special Process Server 1 |
|---|---|---|
| Plaintiff/Petitioner:<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>JOHN F MEDLER JR<br>THE MEDLER LAW FIRM APC<br>2030 MAIN STREET SUITE 1300<br>IRVINE, CA 92614 | Special Process Server 2<br><br>Special Process Server 3 |
| Defendant/Respondent:<br>MISSOURI HIGHWAY AND<br>TRANSPORTATION COMMISSION | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp) |
| Nature of Suit:<br>CC Wrongful Death | | |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   CONTINENTAL AUTOMOTIVE SYSTEMS INC
    Alias: FKA CONTINENTAL TEVES INC

THE CORPORATION COMPANY                                      SERVE MANAGING OFFICER OR
40600 ANN ARBOR RD E SUITE 201                               GENERAL AGENT
PLYMOUTH, MI 48170                                           ONE CONTINENTAL DR
                                                             AUBURN HILLS, MI 48326

COURT SEAL OF    You are summoned to appear before this court and to file your pleading to the petition, copy of
                 which is attached, and to serve a copy of your pleading upon the attorney for the
                 plaintiff/petitioner at the above address all within 30 days after service of this summons upon
                 you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be
                 taken against you for the relief demanded in this action.

CITY OF ST LOUIS          October 1, 2019

                          _____          _____
                          Date                              Clerk
                          Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1.  I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2.  My official title is _____ COURT OFFICER _____ of _____ MACOMB _____ County, _____ MICHIGAN _____ (state).
3.  I have served the above summons by: (check one)
    - [X] delivering a copy of the summons and a copy of the petition to the defendant/respondent.
    - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the
      defendant/respondent with _____, a person of the defendant's/respondent's family
      over the age of 15 years who permanently resides with the defendant/respondent.
    - [X] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _MANAGER_
      _K. HUNTER - CT- R/A_ (name) _____ MANAGER _____ (title).
    - [ ] other: _CONTINENTAL AUTO SYSTEMS, INC_

Served at _40600 ANN ARBOR PLYMOUTH, MICHIGAN 48170_ (address)
in _WAYNE_ County, _MICHIGAN_ (state), on _10-4-19_ (date) at _11 AM_ (time).

ROBERT LUTREN
Printed Name of Sheriff or Server                           Signature of Sheriff or Server

Court Officer 42-2 (check one)
    - [ ] the clerk of the court of which affiant is an officer.
    - [ ] the judge of the court of which affiant is an officer.
    - [ ] authorized to administer oaths in the state in which the affiant served the above
      summons. (use for out-of-state officer.)
    - [ ] authorized to administer oaths. (use for court-appointed server)

(Seal)

Subscribed and sworn to before me this _____ (day) _____ (month) _____ (year).

ROBERT LUTREN

Signature and Title
Court Officer 42-2

EXHIBIT
C

Electronically Filed - City of St. Louis - October 07, 2019 - 12:15 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

**CHRISTINA HILL**, *in her capacity as*                )
*Next Friend for the following Minor*              )
*Plaintiffs:*                                                          )
                                                                          )
                                                                          )
█████████████████                       )          Cause No. 1822-CC11782
                                                                          )
and █████████████                            )
                    Plaintiff,                                     )
                                                                          )          Div. 1
vs.                                                                  )
**THE MISSOURI HIGHWAYS AND**            )
**TRANSPORTATION COMMISSION**            )
**a/k/a THE MISSOURI DEPARTMENT**      )
**OF TRANSPORTATION a/k/a**                   )
**"MODOT," NISSAN NORTH**                     )
**AMERICA, INC., CONTINENTAL**             )
**AUTOMOTIVE SYSTEMS, INC. and**         )
**ANTHONY MILTON, SR.**                          )
                    Defendants.                                )

### PLAINTIFF'S MOTION FOR ADMISSION *PRO HAC VICE* OF ATTORNEYS BRETT TURNBULL AND JOE LEAK

COMES NOW Plaintiff, pursuant to *Mo. S. Ct. Rules 9.03 and 6.01*, and moves for admission

*Pro Hac Vice* of the following attorneys:

1. Attorneys Brett Turnbull and Joe Leak are visiting attorneys who are members of the Bar of

states other than Missouri.

     a. Attorney Brett Turnbull is an attorney licensed in Alabama and Mississippi.

     b. Attorney Joe Leak is an attorney licensed in Alabama and Georgia.

Their contact information for these attorneys is as follows:

     **Brett Turnbull**
     Turnbull Law Firm, P.C.
     2 North 20th St. Suite 1600
     Birmingham, AL 35203
     Phone: 205-831-5040
     Toll Free: (888) 488-9616
     Fax: (205) 848-6300

Electronically Filed - City of St. Louis - October 07, 2019 - 12:15 PM

**Joe J. Leak**
Joe J. Leak & Associates, P.C.
3800 Colonnade Parkway
Suite 3309
Birmingham, AL 35243
(205)-769-4523

2. The visiting attorneys are not under suspension or disbarment by the highest courts of any

state or territory in the United States or the District of Columbia, and are in good standing in the

states in which they practice.

3. Upon this filing, each of the attorneys shall file and pay with the Court the fee required by

*Rule 6.01*.

4. Attached as Exhibits A and B are the statements of each attorney as required by *Rule 9.03(c)*.

5. Upon approval by the Court, each of the aforesaid attorneys will file an Entry of Appearance

with the Court.

6. Each of the attorneys set forth above, upon approval by the Judge, shall sign all pleadings

and, unless excused by the Judge, be present at all hearings.

7. Each attorney agrees to be bound by and comply with the Rules of Professional Conduct as

required in *Rule 4* and agrees to be subject to discipline by the Courts of this state.

WHEREFORE, Plaintiff respectfully requests that the Court grant the *Pro Hac Vice* applications

of each of the attorneys set forth above.

Respectfully Submitted,

**/s/ John F. Medler, Jr.**
John F. Medler, Jr. MO Bar #38533
THE MEDLER LAW FIRM APC
2030 Main Street
Suite 1300
Irvine CA 92614
(949)-260-4940 (office)
(949)-260-4944 (fax)
(314)-210-4745 (cell)
john@medlerlawfirm.com (e-mail)
*Counsel for Plaintiffs*

Electronically Filed - City of St. Louis - October 07, 2019 - 12:15 PM

/s/ **Mark H. Zoole**

Mark H. Zoole #38635
P.O. Box 190549
St. Louis, MO  63119
(314) 223-0436
zoole@sbcglobal.net

Electronically Filed - City of St. Louis - October 07, 2019 - 12:15 PM

**EXHIBIT A**

### DECLARATION OF ATTORNEY BRETT TURNBULL

1. I am an attorney, but I am not licensed in Missouri.

2. I am licensed to practiced law in Alabama and Mississippi.

3. I would like to act as a visiting attorney under *Mo. S. Ct. Rule 9.03* in the case *Christina Hill v. MHTC et al.*, Cause No. 1822-CC11782, currently pending in the Circuit Court of the City of St. Louis.

4. John F. Medler, Jr., who is licensed in Missouri, has agreed to associate with me on this case. In addition, Kelsy Simon Vollmer, with the law firm of Devereaux, Stokes, Fernandez & Leonard, PC is also associate co-counsel for the Plaintiff in this case, and has an office in the City of St. Louis located at 133 S 11th St suite 350, St. Louis, MO 63102

5. The client has agreed to allow me to associate on this case.

6. I am not under suspension or disbarment in any state or territory of the United States.

7. I agree to enter an appearance of record.

8. I agree to sign all pleadings.

9. I agree, unless otherwise excused by the Court, to be present at all hearings.

10. I agree to comply with and be bound by the Rules of Professional Conduct as stated in Mo. S. Ct. Rule 4 and agree that in this case I shall become subject to discipline by the courts of Missouri.

**BRETT TURNBULL, ESQ.**

Electronically Filed - City of St. Louis - October 07, 2019 - 12:15 PM

**EXHIBIT B**

## DECLARATION OF ATTORNEY JOE LEAK

1. I am an attorney, but I am not licensed in Missouri.

2. I am licensed to practiced law in Alabama and Georgia.

3. I would like to act as a visiting attorney under *Mo. S. Ct. Rule 9.03* in the case *Christina Hill v. MHTC et al.,* Cause No. 1822-CC11782, currently pending in the Circuit Court of the City of St. Louis.

4. John F. Medler, Jr., who is licensed in Missouri, has agreed to associate with me on this case. In addition, Kelsy Simon Vollmer, with the law firm of Devereaux, Stokes, Fernandez & Leonard, PC is also associate co-counsel for the Plaintiff in this case, and has an office in the City of St. Louis located at 133 S 11th St suite 350, St. Louis, MO 63102

5. The client has agreed to allow me to associate on this case.

6. I am not under suspension or disbarment in any state or territory of the United States.

7. I agree to enter an appearance of record.

8. I agree to sign all pleadings.

9. I agree, unless otherwise excused by the Court, to be present at all hearings.

10. I agree to comply with and be bound by the Rules of Professional Conduct as stated in Mo. S. Ct. Rule 4 and agree that in this case I shall become subject to discipline by the courts of Missouri.

JOE LEAK, ESQ.

FILED

OCT 08 2019

22ND JUDICIAL CIRCUIT
CIRCUIT CLERK'S OFFICE
BY _____ M.J _____ DEPUTY

# MISSOURI CIRCUIT COURT
# TWENTY-SECOND JUDICIAL CIRCUIT
### (CITY OF ST. LOUIS)

CHRISTINA HILL, Next Friend for [redacted] et al
VS                                               Plaintiff

The MISSOURI HIGHWAYS & TRANSPORTATION COMMISSION, et al
                                                        Defendants
CASE NO. 1822-CC11782 DIVISION    6          October 8,    2019

## ORDER/~~JUDGMENT~~/MEMORANDUM

Plaintiff's Motion for Admission Pro

Hac Vice of Attorneys Brett Turnbull and Joe

Leak is hereby GRANTED upon acceptance of

fee(s) therefor by the Clerk of the Missouri Supreme Court.

SO ORDERED!

**ENTERED**

Hon. Michael F. Stelzer 10/8/19

OCT 08 2019

**M S**

cc: all counsel of record

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI**

| | | |
|---|---|---|
| **CHRISTINA HILL,** *in her capacity as* *Next Friend for the following Minor* *Plaintiffs*: | ) ) ) | |
| ▮▮▮▮▮▮▮▮▮▮ | ) | **Cause No. 1822-CC11782** |
| ▮▮▮▮▮▮▮▮▮▮ | ) | |
| ▮▮▮▮▮▮▮▮ | ) | |
| ▮▮▮▮▮▮▮▮▮▮ | ) | |
| a ▮▮▮▮▮▮▮▮ | ) | |
| | ) | |
| **Plaintiff,** | ) | **Div. 1** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **THE MISSOURI HIGHWAYS AND** | ) | **JURY TRIAL DEMANDED** |
| **TRANSPORTATION COMMISSION** | ) | |
| **a/k/a THE MISSOURI DEPARTMENT** | ) | |
| **OF TRANSPORTATION a/k/a** | ) | |
| **"MODOT," et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

**ANSWER OF DEFENDANT NISSAN NORTH AMERICA, INC. TO PLAINTIFFS'
FIRST AMENDED PETITION FOR WRONGFUL DEATH AND PERSONAL INJURY**

Nissan North America, Inc. ("NNA"), for its Answer to Plaintiffs' First Amended Petition, states as follows:

1.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 1 of Plaintiffs' First Amended Petition, and therefore denies the same.

**PARTIES, JURISDICTION, AND VENUE**

2.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and,

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

therefore, is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 2 of Plaintiffs' First Amended Petition, and therefore denies the same.

3.      Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 3 of Plaintiffs' First Amended Petition, and therefore denies the same.

4.      Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of Plaintiffs' First Amended Petition, and therefore denies the same.

5.      Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of Plaintiffs' First Amended Petition, and therefore denies the same.

6.      Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of Plaintiffs' First Amended Petition, and therefore denies the same.

7.      Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of Plaintiffs' First Amended Petition, and therefore denies the same.

8.      Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of Plaintiffs' First Amended Petition, and therefore denies the same.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

9.      The allegations contained in paragraph 9 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 9, and therefore denies the same.

10.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of Plaintiffs' First Amended Petition, and therefore denies the same.

11.     The allegations contained in paragraph 11 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 11, and therefore denies the same.

12.     The allegations contained in paragraph 12 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 12, and therefore denies the same.

13.     The allegations contained in paragraph 13 of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 13, and therefore denies the same.

14.     With respect to the allegations contained in paragraph 14 of Plaintiffs' First Amended Petition, Defendant NNA admits that it is a corporation organized under the laws of

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

the State of California.  NNA denies that its principal place of business is in Gardena, California but avers instead that it is in Franklin, Tennessee.

15.    Defendant NNA admits the allegations contained in paragraph 15 of Plaintiffs' First Amended Petition.

16.    The allegations contained in paragraph 16 of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 16, and therefore denies the same.

17.    The allegations contained in paragraph 17 of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 17, and therefore denies the same.

18.    Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of Plaintiffs' First Amended Petition, and therefore denies the same.

19.    The allegations contained in paragraph 19 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 19, and therefore denies the same.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

20.     The allegations contained in paragraph 20 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 20, and therefore denies the same.

21.     The allegations contained in paragraph 21 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 21, and therefore denies the same.

22.     The allegations contained in paragraph 22 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 22, and therefore denies the same.

## FACTUAL ALLEGATIONS

23.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of Plaintiffs' First Amended Petition, and therefore denies the same.  Further, NNA specifically denies that the Armada is a minivan.

24.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of Plaintiffs' First Amended Petition, and therefore denies the same.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

25.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of Plaintiffs' First Amended Petition, and therefore denies the same.

26.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of Plaintiffs' First Amended Petition, and therefore denies the same.

27.     Defendant NNA denies the allegations contained in paragraph 27 of Plaintiffs' First Amended Petition.

28.     Defendant NNA denies the allegations contained in paragraph 28 of Plaintiffs' First Amended Petition.

29.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 29 of Plaintiffs' First Amended Petition, and therefore denies the same.

30.     Defendant NNA denies the allegations contained in paragraph 30 of Plaintiffs' First Amended Petition.

31.     Defendant NNA denies the allegations contained in paragraph 31 of Plaintiffs' First Amended Petition.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

32.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 32 of Plaintiffs' First Amended Petition, and therefore denies the same.

33.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 33 of Plaintiffs' First Amended Petition, and therefore denies the same.

34.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 34 of Plaintiffs' First Amended Petition, and therefore denies the same.

35.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 35 of Plaintiffs' First Amended Petition, and therefore denies the same.

36.     The allegations contained in paragraph 36 of Plaintiffs' First Amended Petition are statements of law and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 36 and therefore denies the same.

37.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of Plaintiffs' First Amended Petition, and therefore denies the same.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

38.     Defendant NNA admits that an automobile crash occurred on or about October 26, 2018 but NNA currently has limited first-hand knowledge about the same and, therefore, is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of Plaintiffs' First Amended Petition, and therefore denies the same.

39.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of Plaintiffs' First Amended Petition, and therefore denies the same.

40.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 40 of Plaintiffs' First Amended Petition, and therefore denies the same.

41.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 41 of Plaintiffs' First Amended Petition, and therefore denies the same.

42.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 42 of Plaintiffs' First Amended Petition, and therefore denies the same.

43.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of Plaintiffs' First Amended Petition, and therefore denies the same.

44.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 44 of Plaintiffs' First Amended Petition, and therefore denies the same.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

45.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 45 of Plaintiffs' First Amended Petition, and therefore denies the same.

46.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 46 of Plaintiffs' First Amended Petition, and therefore denies the same.

47.     Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 47 of Plaintiffs' First Amended Petition, and therefore denies the same.

48.     The allegations contained in paragraph 48 of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 48 and therefore denies the same.

49 – 92.   The allegations contained in paragraphs 49-92 of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraphs 49-92, and therefore denies the same.

93.     The allegations contained in paragraph 93 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

94.     The allegations contained in paragraph 94 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

95.     The allegations contained in paragraph 95 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

96.     The allegations contained in paragraph 96 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

97.     The allegations contained in paragraph 97 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

98.     The allegations contained in paragraph 98 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

99.     Defendant NNA denies the allegations contained in paragraph 99 of Plaintiffs' First Amended Petition.

100.    Defendant NNA denies the allegations contained in paragraph 100 of Plaintiffs' First Amended Petition.

101.    Defendant NNA denies the allegations contained in paragraph 101 of Plaintiffs' First Amended Petition.

102.    Defendant NNA denies the allegations contained in paragraph 102 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

103.    Defendant NNA denies the allegations contained in paragraph 103 of Plaintiffs' First Amended Petition.

104.    Defendant NNA denies the allegations contained in paragraph 104 of Plaintiffs' First Amended Petition.

105.    Defendant NNA denies the allegations contained in paragraph 105 of Plaintiffs' First Amended Petition.

106.    Defendant NNA denies the allegations contained in paragraph 106 of Plaintiffs' First Amended Petition.

107.    Defendant NNA denies the allegations contained in paragraph 107 of Plaintiffs' First Amended Petition.

108.    Defendant NNA denies the allegations contained in paragraph 108 of Plaintiffs' First Amended Petition.

109.    Defendant NNA denies the allegations contained in paragraph 109 of Plaintiffs' First Amended Petition.

110.    The allegations contained in paragraph 110 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

111.    The allegations contained in paragraph 111 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

112.    The allegations contained in paragraph 112 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

113.    The allegations contained in paragraph 113 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

114.    The allegations contained in paragraph 114 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

115.    The allegations contained in paragraph 115 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

116.    The allegations contained in paragraph 116 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

117.    The allegations contained in paragraph 117 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

118.    The allegations contained in paragraph 118 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

119.    The allegations contained in paragraph 119 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

120.    The allegations contained in paragraph 120 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

121.    Defendant NNA denies the allegations contained in paragraph 121 of Plaintiffs' First Amended Petition.

122.    Defendant NNA denies the allegations contained in paragraph 122 of Plaintiffs' First Amended Petition.

123.    Defendant NNA denies the allegations contained in paragraph 123 of Plaintiffs' First Amended Petition.

124.    The allegations contained in paragraph 124 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

125.    The allegations contained in paragraph 125 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

126.    The allegations contained in paragraph 126 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

127.    The allegations contained in paragraph 127 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

128.    The allegations contained in paragraph 128 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

129.    The allegations contained in paragraph 129 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

130.    The allegations contained in paragraph 130 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

131.    The allegations contained in paragraph 131 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

132.    The allegations contained in paragraph 132 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

133.    Defendant NNA denies the allegations contained in paragraph 133 of Plaintiffs' First Amended Petition.

134.    The allegations contained in paragraph 134 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

135.    Defendant NNA denies the allegations contained in paragraph 135 of Plaintiffs' First Amended Petition.

14

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

136.    The allegations contained in paragraph 136 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

137.    The allegations contained in paragraph 137 of Plaintiffs' First Amended Petition refer to one or more documents which speak for themselves and, as such, no response is required.

### COUNT I
**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq.*);**
**MODOT: Negligent Signage; Negligent Roadway Design; Negligent Failure to Warn;**
**Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec.***
***537.600.1(2)*))**

138.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

139. – 144.    The allegations contained in paragraphs 139-144, including any subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraphs 139-144, and therefore denies the same.

### COUNT II
**(Personal Injuries ▮▮▮▮▮▮▮▮▮▮▮▮; MODOT; Negligent Signage, Negligent Roadway**
**Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign**
**Immunity under *Rev. Stat Mo. Sec. 537.600.1(2)*))**

145.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

146.    The allegations contained in paragraph 146, including subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.  To the extent a response is necessary, Defendant NNA is without

15

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 146, including subparagraphs, and therefore denies the same.

### COUNT III
**(Personal Injuries ███████████; MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)**

147.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

148.    The allegations contained in paragraph 148, including subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.   To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 148, including subparagraphs, and therefore denies the same.

### COUNT IV
**(Personal Injuries ███████████: MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2)*)**

149.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

150.    The allegations contained in paragraph 150, including subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.   To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 150, including subparagraphs, and therefore denies the same.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

## COUNT V

**(Personal Injuries o███████ ███████; MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat Mo. Sec. 537.600.1(2)*)**

151.     Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

152.     The allegations contained in paragraph 152, including subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.   To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 152, including subparagraphs, and therefore denies the same.

## COUNT VI

**(Personal Injuries o███████ ███; MODOT; Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat Mo. Sec. 53Z600.1(2)*)**

153.     Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

154.     The allegations contained in paragraph 154, including subparagraphs, of Plaintiffs' First Amended Petition are not directed towards Defendant NNA and, thus, no response is necessary.   To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 154, including subparagraphs, and therefore denies the same.

## COUNT VII

**(Wrongful Death of Whitney Thomas *(Rev. Stat. Mo. Secs. 53Z080 et seq.)*; Nissan: Strict Products Liability for Design Defects)**

155.     Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

156.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 156 of Plaintiffs' First Amended Petition, and therefore denies the same.

157.    Defendant NNA denies the allegations contained in paragraph 157 of Plaintiffs' First Amended Petition.

158.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the allegations contained in paragraph 158 of Plaintiffs' First Amended Petition, and therefore denies the same.

159.    Defendant NNA denies the allegations contained in paragraph 159, and subparagraphs, of Plaintiffs' First Amended Petition.

160.    Defendant NNA denies the allegations contained in paragraph 160 of Plaintiffs' First Amended Petition.

161.    Defendant NNA denies the allegations contained in paragraph 161 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count VII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT VIII
**(Personal Injuries o ▓▓▓▓▓▓▓▓▓; Nissan: Strict Products Liability for Design Defects)**

162.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

163.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 163 of Plaintiffs' First Amended Petition, and therefore denies the same.

18

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

164.    Defendant NNA denies the allegations contained in paragraph 164 of Plaintiffs' First Amended Petition.

165.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 165 of Plaintiffs' First Amended Petition, and therefore denies the same.

166.    Defendant NNA denies the allegations contained in paragraph 166, and subparagraphs, of Plaintiffs' First Amended Petition.

167.    Defendant NNA denies the allegations contained in paragraph 167 of Plaintiffs' First Amended Petition.

168.    Defendant NNA denies the allegations contained in paragraph 168 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count VIII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT IX
**(Personal Injuries of ▮▮▮▮▮▮▮▮: Nissan: Strict Products Liability
for Design Defects)**

169.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

170.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 170 of Plaintiffs' First Amended Petition, and therefore denies the same.

171.    Defendant NNA denies the allegations contained in paragraph 171 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

172.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 172 of Plaintiffs' First Amended Petition, and therefore denies the same.

173.    Defendant NNA denies the allegations contained in paragraph 173, and subparagraphs, of Plaintiffs' First Amended Petition.

174.    Defendant NNA denies the allegations contained in paragraph 174 of Plaintiffs' First Amended Petition.

175.    Defendant NNA denies the allegations contained in paragraph 175 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count IX of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT X
**(Personal Injuries o ▮▮▮▮▮▮▮: Nissan: Strict Products Liability for Design Defects)**

176.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

177.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 177 of Plaintiffs' First Amended Petition, and therefore denies the same.

178.    Defendant NNA denies the allegations contained in paragraph 178 of Plaintiffs' First Amended Petition.

179.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 179 of Plaintiffs' First Amended Petition, and therefore denies the same.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

180.    Defendant NNA denies the allegations contained in paragraph 180, and subparagraphs, of Plaintiffs' First Amended Petition.

181.    Defendant NNA denies the allegations contained in paragraph 181 of Plaintiffs' First Amended Petition.

182.    Defendant NNA denies the allegations contained in paragraph 182 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count X of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XI
**(Personal Injuries o ████████ Nissan: Strict Products Liability for Design Defects)**

183.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

184.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 184 of Plaintiffs' First Amended Petition, and therefore denies the same.

185.    Defendant NNA denies the allegations contained in paragraph 185 of Plaintiffs' First Amended Petition.

186.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 186 of Plaintiffs' First Amended Petition, and therefore denies the same.

187.    Defendant NNA denies the allegations contained in paragraph 187, and subparagraphs, of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

188.    Defendant NNA denies the allegations contained in paragraph 188 of Plaintiffs' First Amended Petition.

189.    Defendant NNA denies the allegations contained in paragraph 189 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XI of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XII
### (Personal Injuries o █████████████: Nissan: Strict Products Liability for Design Defects)

190.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

191.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 191 of Plaintiffs' First Amended Petition, and therefore denies the same.

192.    Defendant NNA denies the allegations contained in paragraph 192 of Plaintiffs' First Amended Petition.

193.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 193 of Plaintiffs' First Amended Petition, and therefore denies the same.

194.    Defendant NNA denies the allegations contained in paragraph 194, and subparagraphs, of Plaintiffs' First Amended Petition.

195.    Defendant NNA denies the allegations contained in paragraph 195 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

196.    Defendant NNA denies the allegations contained in paragraph 196 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XIII
### (Wrongful Death of Whitney Thomas *(Rev. Stat. Mo. Secs. 537.080 et seq.)*;
### Nissan: Strict Products Liability Failure to Warn)

197.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

198.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 198 of Plaintiffs' First Amended Petition, and therefore denies the same.

199.    Defendant NNA denies the allegations contained in paragraph 198 of Plaintiffs' First Amended Petition.

200.    Defendant NNA denies the allegations contained in paragraph 200 of Plaintiffs' First Amended Petition.

210 [sic – the paragraphing skips from 200 to 210]. Defendant    NNA    is    without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 210 of Plaintiffs' First Amended Petition, and therefore denies the same.

211.    Defendant NNA denies the allegations contained in paragraph 211, and subparagraphs, of Plaintiffs' First Amended Petition.

212.    Defendant NNA denies the allegations contained in paragraph 212 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

213.    Defendant NNA denies the allegations contained in paragraph 213 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XIII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

### COUNT XIV
**(Personal Injuries o ▮▮▮▮▮▮▮▮▮▮y; Nissan: Strict Products Liability Failure to Warn)**

214.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

215.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 215 of Plaintiffs' First Amended Petition, and therefore denies the same.

164 [sic].   Defendant NNA denies the allegations contained in paragraph 164 [sic] of Plaintiffs' First Amended Petition.

216.    Defendant NNA denies the allegations contained in paragraph 216 of Plaintiffs' First Amended Petition.

217.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 217 of Plaintiffs' First Amended Petition, and therefore denies the same.

218.    Defendant NNA denies the allegations contained in paragraph 218, and subparagraphs, of Plaintiffs' First Amended Petition.

219.    Defendant NNA denies the allegations contained in paragraph 219 of Plaintiffs' First Amended Petition.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

220.    Defendant NNA denies the allegations contained in paragraph 220 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XIV of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

<u>**COUNT XV**</u>
**(Personal Injuries o ▓▓▓▓▓▓▓: Nissan: Strict Products Liability**
**Failure to Warn)**

221.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

222.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 222 of Plaintiffs' First Amended Petition, and therefore denies the same.

223.    Defendant NNA denies the allegations contained in paragraph 223 of Plaintiffs' First Amended Petition.

224.    Defendant NNA denies the allegations contained in paragraph 224 of Plaintiffs' First Amended Petition.

225.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 225 of Plaintiffs' First Amended Petition, and therefore denies the same.

226.    Defendant NNA denies the allegations contained in paragraph 226, and subparagraphs, of Plaintiffs' First Amended Petition.

227.    Defendant NNA denies the allegations contained in paragraph 227 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

228.    Defendant NNA denies the allegations contained in paragraph 228 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XV of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

<div align="center">

**<u>COUNT XVI</u>**
**(Personal Injuries o██████y: Nissan: Strict Products Liability**
**Failure to Warn)**

</div>

229.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

230.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 230 of Plaintiffs' First Amended Petition, and therefore denies the same.

231.    Defendant NNA denies the allegations contained in paragraph 231 of Plaintiffs' First Amended Petition.

232.    Defendant NNA denies the allegations contained in paragraph 232 of Plaintiffs' First Amended Petition.

233.    Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 233 of Plaintiffs' First Amended Petition, and therefore denies the same.

234.    Defendant NNA denies the allegations contained in paragraph 234, and subparagraphs, of Plaintiffs' First Amended Petition.

235.    Defendant NNA denies the allegations contained in paragraph 235 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

236. Defendant NNA denies the allegations contained in paragraph 236 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XVI of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XVII
### (Personal Injuries o           .: Nissan: Strict Products Liability Failure to Warn)

237. Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

238. Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 238 of Plaintiffs' First Amended Petition, and therefore denies the same.

238 [sic]. Defendant NNA denies the allegations contained in paragraph 238 [sic] of Plaintiffs' First Amended Petition.

239. Defendant NNA denies the allegations contained in paragraph 239 of Plaintiffs' First Amended Petition.

240. Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 240 of Plaintiffs' First Amended Petition, and therefore denies the same.

241. Defendant NNA denies the allegations contained in paragraph 241, and subparagraphs, of Plaintiffs' First Amended Petition.

242. Defendant NNA denies the allegations contained in paragraph 242 of Plaintiffs' First Amended Petition.

27

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

243.   Defendant NNA denies the allegations contained in paragraph 243 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XVII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XVIII
**(Personal Injuries o███████: Nissan: Strict Products Liability Failure to Warn)**

244.   Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

245.   Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 245 of Plaintiffs' First Amended Petition, and therefore denies the same.

246.   Defendant NNA denies the allegations contained in paragraph 246 of Plaintiffs' First Amended Petition.

247.   Defendant NNA denies the allegations contained in paragraph 247 of Plaintiffs' First Amended Petition.

248.   Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 248 of Plaintiffs' First Amended Petition, and therefore denies the same.

249.   Defendant NNA denies the allegations contained in paragraph 249, and subparagraphs, of Plaintiffs' First Amended Petition.

250.   Defendant NNA denies the allegations contained in paragraph 250 of Plaintiffs' First Amended Petition.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

251.    Defendant NNA denies the allegations contained in paragraph 251 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XVIII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

### COUNT XIX
**(Wrongful Death of Whitney Thomas *(Rev. Stat Mo. Secs. 537.080 et seq.);***
***Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)***

252.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

253.    Defendant NNA admits it assembled the Armada but denies it designed it. The remainder of the allegations contained in paragraph 253 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary. To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 253 of Plaintiffs' First Amended Petition, and therefore denies the same.

254.    Defendant NNA denies the allegations contained in paragraph 254, and subparagraphs, of Plaintiffs' First Amended Petition.

255.    Defendant NNA denies the allegations contained in paragraph 255 of Plaintiffs' First Amended Petition.

256.    Defendant NNA denies the allegations contained in paragraph 256 of Plaintiffs' First Amended Petition.

257.    Defendant NNA denies the allegations contained in paragraph 257, and subparagraphs, of Plaintiffs' First Amended Petition.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

258.    Defendant NNA denies the allegations contained in paragraph 258 of Plaintiffs' First Amended Petition.

259.    Defendant NNA denies the allegations contained in paragraph 259 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XIX of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## <u>COUNT XX</u>
**(Personal Injuries of Minor Plaintiff █████████ Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

260.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

261.    Defendant NNA admits it assembled and designed, in part, the Armada.  The remainder of the allegations contained in paragraph 261 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 261 of Plaintiffs' First Amended Petition, and therefore denies the same.

262.    Defendant NNA denies the allegations contained in paragraph 262, and subparagraphs, of Plaintiffs' First Amended Petition.

263.    Defendant NNA denies the allegations contained in paragraph 263 of Plaintiffs' First Amended Petition.

264.    Defendant NNA denies the allegations contained in paragraph 264, and subparagraphs, of Plaintiffs' First Amended Petition.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

265.    Defendant NNA denies the allegations contained in paragraph 265 of Plaintiffs' First Amended Petition.

266.    Defendant NNA denies the allegations contained in paragraph 266 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XX of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XXI
**(Personal Injuries o██████████████: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

267.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

268.    Defendant NNA admits it assembled and designed, in part, the Armada.  The remainder of the allegations contained in paragraph 268 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 268 of Plaintiffs' First Amended Petition, and therefore denies the same.

269.    Defendant NNA denies the allegations contained in paragraph 269, and subparagraphs, of Plaintiffs' First Amended Petition.

263 [sic – the paragraphing skips from 269 back to 263].    Defendant NNA denies the allegations contained in paragraph 263, and subparagraphs, of Plaintiffs' First Amended Petition.

264.    Defendant NNA denies the allegations contained in paragraph 264 of Plaintiffs' First Amended Petition.

70995099.1

265.    Defendant NNA denies the allegations contained in paragraph 265 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XXI of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

## COUNT XXII
**(Personal Injuries o ▉▉▉▉▉▉▉: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

267.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

268.    Defendant NNA admits it assembled and designed, in part, the Armada.  The remainder of the allegations contained in paragraph 268 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 268 of Plaintiffs' First Amended Petition, and therefore denies the same.

269.    Defendant NNA denies the allegations contained in paragraph 269, and subparagraphs, of Plaintiffs' First Amended Petition.

270.    Defendant NNA denies the allegations contained in paragraph 270, and subparagraphs, of Plaintiffs' First Amended Petition.

271.    Defendant NNA denies the allegations contained in paragraph 271 of Plaintiffs' First Amended Petition.

272.    Defendant NNA denies the allegations contained in paragraph 272 of Plaintiffs' First Amended Petition.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XXII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

### COUNT XXIII
**(Personal Injuries o ▨▨▨▨▨▨▨▨▨.: Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

273.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

274.    Defendant NNA admits it assembled and designed, in part, the Armada.  The remainder of the allegations contained in paragraph 274 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary.  To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 274 of Plaintiffs' First Amended Petition, and therefore denies the same.

275.    Defendant NNA denies the allegations contained in paragraph 275, and subparagraphs, of Plaintiffs' First Amended Petition.

276.    Defendant NNA denies the allegations contained in paragraph 276, and subparagraphs, of Plaintiffs' First Amended Petition.

277.    Defendant NNA denies the allegations contained in paragraph 277 of Plaintiffs' First Amended Petition.

278.    Defendant NNA denies the allegations contained in paragraph 278 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XXIII of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

**COUNT XXIV**
(Personal Injuries o▇▇▇▇▇▇▇▇▇▇▇ Nissan: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)

279.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

280.    Defendant NNA admits it assembled and designed, in part, the Armada. The remainder of the allegations contained in paragraph 280 of Plaintiffs' First Amended Petition contain conclusions of law and therefore no response is necessary. To the extent a response is necessary, Defendant NNA is without knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 280 of Plaintiffs' First Amended Petition, and therefore denies the same.

281.    Defendant NNA denies the allegations contained in paragraph 281, and subparagraphs, of Plaintiffs' First Amended Petition.

282.    Defendant NNA denies the allegations contained in paragraph 282, and subparagraphs, of Plaintiffs' First Amended Petition.

283.    Defendant NNA denies the allegations contained in paragraph 283 of Plaintiffs' First Amended Petition.

284.    Defendant NNA denies the allegations contained in paragraph 284 of Plaintiffs' First Amended Petition.

WHEREFORE, Defendant Nissan North America, Inc. prays for judgment in its favor and against Plaintiffs on Count XXIV of the First Amended Petition, for its attorneys' fees and costs incurred herein and for all further relief that the Court deems just and proper.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

### COUNT XXV
**(Wrongful Death of Whitney Thomas (*Rev. Stat Mo. Secs. 537.080 et seq.*);**
**Continental: Strict Products Liability for Design Defects)**

285.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

286. – 291.    The allegations contained in paragraphs 286-291, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXVI
**(Personal Injuries o███████████████; Continental: Strict Products Liability**
**for Design Defects)**

292.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

293. – 298.    The allegations contained in paragraphs 293-298, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXVII
**(Personal Injuries o███████████████: Continental: Strict Products Liability**
**for Design Defects)**

299.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

300. – 305.    The allegations contained in paragraphs 300-305, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXVIII
**(Personal Injuries o███████████████: Continental: Strict Products Liability**
**for Design Defects)**

306.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

307. – 312.    The allegations contained in paragraphs 307-312, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

### COUNT XXIX
**(Personal Injuries o▮▮▮▮▮▮▮▮▮▮▮.: Continental: Strict Products Liability for Design Defects)**

313.   Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

314. – 319.   The allegations contained in paragraphs 314-319, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXX
**(Personal Injuries o▮▮▮▮▮▮▮: Continental: Strict Products Liability for Design Defects)**

320.   Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

321. – 326.   The allegations contained in paragraphs 321-326, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXXI
**(Wrongful Death of Whitney Thomas *(Rev. Stat. Mo. Secs. 53 Z 080 et seq.)*; Continental: Strict Products Liability Failure to Warn)**

327.   Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

328. – 334.   The allegations contained in paragraphs 328-334, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXXII
**(Personal Injuries o▮▮▮▮▮▮▮▮; Continental: Strict Products Liability Failure to Warn)**

335.   Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

336. – 342.   The allegations contained in paragraphs 336-342, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

### COUNT XXXIII
**(Personal Injuries o ███████████y: Continental: Strict Products Liability Failure to Warn)**

343.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

344. – 350.    The allegations contained in paragraphs 344-350, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXXIV
**(Personal Injuries o ███████████y: Continental: Strict Products Liability Failure to Warn)**

351.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

352. – 358.    The allegations contained in paragraphs 352-358, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXXV
**(Personal Injuries o ███████████ Continental: Strict Products Liability Failure to Warn)**

359.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

360. – 366.    The allegations contained in paragraphs 360-366, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XXXVI
**(Personal Injuries of ███████████: Continental: Strict Products Liability Failure to Warn)**

367.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

368. – 374.    The allegations contained in paragraphs 368-374, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

## COUNT XXXVII
### (Wrongful Death of Whitney Thomas (*Rev. Stat Mo. Secs. 537.080 et seq.*);
### Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)

375.    Defendant NNA restates and incorporates herein by reference its answers to the

allegation contained in the preceding paragraphs.

376. – 382.    The allegations contained in paragraphs 376-382, and any subparagraphs,

are not directed against Defendant NNA and therefore no response is required.

## COUNT XXXVIII
### (Personal Injuries of Minor Plaintiff ▮▮▮▮▮▮▮▮: Continental: Negligent
### Manufacture, Negligent Design, Negligent Failure to Warn and Negligent Failure to Recall)

383.    Defendant NNA restates and incorporates herein by reference its answers to the

allegation contained in the preceding paragraphs.

384. – 388.    The allegations contained in paragraphs 384-388, and any subparagraphs,

are not directed against Defendant NNA and therefore no response is required.

## COUNT XXIX
### (Personal Injuries o ▮▮▮▮▮▮▮▮: Continental: Negligent Manufacture, Negligent
### Design, Negligent Failure to Warn)

389.    Defendant NNA restates and incorporates herein by reference its answers to the

allegation contained in the preceding paragraphs.

390. – 394.    The allegations contained in paragraphs 390-394, and any subparagraphs,

are not directed against Defendant NNA and therefore no response is required.

## COUNT XL
### (Personal Injuries of ▮▮▮▮▮▮▮: Continental: Negligent Manufacture, Negligent Design,
### Negligent Failure to Warn)

395.    Defendant NNA restates and incorporates herein by reference its answers to the

allegation contained in the preceding paragraphs.

396. – 400.    The allegations contained in paragraphs 396-400, and any subparagraphs,

are not directed against Defendant NNA and therefore no response is required.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

<center>

**COUNT XLI**

**(Personal Injuries o          .: Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

</center>

401.  Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

402. – 406.  The allegations contained in paragraphs 402-406, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

<center>

**COUNT XLII**

**(Personal Injuries o         : Continental: Negligent Manufacture, Negligent Design, Negligent Failure to Warn)**

</center>

407.  Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

408. – 412.  The allegations contained in paragraphs 408-412, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

<center>

**COUNT XLIII**

**(Wrongful Death of Whitney Thomas *(Rev. Stat. Mo. Secs. 537.080 et seq.)*; Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

</center>

413.  Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

414. – 417.  The allegations contained in paragraphs 414-417, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

<center>

**COUNT LXIV**

**(Personal Injuries of Minor Plaintiff        : Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

</center>

418.  Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

419. – 421.  The allegations contained in paragraphs 419-421, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

<center>39</center>

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

### COUNT LXV

**(Personal Injuries of ███████████: Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

422.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

423. – 425.    The allegations contained in paragraphs 423-425, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT LXVI

**(Personal Injuries o ███████████: Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

426.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

427. – 429.    The allegations contained in paragraphs 427-429, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT LXVII

**(Personal Injuries o ███████████.: Anthony Milton, Sr: Negligent Operation of a Motor Vehicle)**

430.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

431. – 433.    The allegations contained in paragraphs 431-433, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

### COUNT XLVIII

**(Personal Injuries o ███████████ Anthony Milton, Sr.: Negligent Operation of a Motor Vehicle)**

434.    Defendant NNA restates and incorporates herein by reference its answers to the allegation contained in the preceding paragraphs.

435. – 437.    The allegations contained in paragraphs 435-437, and any subparagraphs, are not directed against Defendant NNA and therefore no response is required.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

## WHEREFORE CLAUSES

NNA denies that Plaintiffs are entitled to the relief prayed for in the "WHEREFORE" clauses of Plaintiffs' First Amended Petition.

## GENERAL DENIAL

NNA denies each and every allegation contained in Plaintiffs' First Amended Petition not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Although NNA has not yet had the opportunity to investigate or conduct discovery regarding Plaintiffs' claims, it believes there may be facts establishing the availability of certain affirmative defenses.  In order to preserve those defenses, NNA alleges the following defenses.

## FIRST DEFENSE

The First Amended Petition and the causes of action contained therein fail to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiffs' claimed damages are the proximate result of the misuse, abuse, or alteration of the product(s) at issue including, but not limited to, the child restraint systems.

## THIRD DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the sole proximate, legal, efficient, and producing or superseding or intervening cause of any alleged injury to Plaintiffs and any alleged damages was the actions of Plaintiffs' and/or Plaintiffs' parents.

## FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because any injuries and damages allegedly sustained or incurred by Plaintiffs were caused, in whole or in part, by acts or omissions of others for whose conduct NNA is not responsible.  Therefore, NNA is entitled to an

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

allocation of fault and a corresponding reduction of any settlement amount received and for any award that might be made. The basis of this defense includes but is not limited to: (1) the Plaintiffs' failure to appropriately use their respective seat belts and/or restraint systems (2) the minor Plaintiffs failure to appropriately be secured in child restraint systems; (3) Defendant Milton being under the influence of intoxicants and/or other drugs as identified in the toxicology information detailed in the St. Louis Missouri Police Department's reports, including the accident reconstruction report(s); (4) Defendant Milton driving at a high rate of speed on wet pavement, his operating of the vehicle without a license and other failures and/or particulars detailed in the St. Louis Missouri Police Department's reports, including the accident reconstruction report(s); (5) the acts of The Missouri Department of Transportation; and (6) any other basis to compare fault.

## FIFTH DEFENSE

NNA alleges that, upon information and belief, Plaintiffs' claimed damages are the proximate result of the failure of Plaintiffs to exercise ordinary care.  Plaintiffs' claims are completely barred; or, in the alternative, Plaintiffs' damages, if any, should be reduced according to the comparative fault of Plaintiffs' including their parents and as further alleged in the Fourth Defense.

## SIXTH DEFENSE

NNA alleges that, at all times, its products were designed, manufactured and produced in compliance with all applicable industry and governmental standards and regulations and, therefore, Plaintiffs cannot recover against NNA.

## SEVENTH DEFENSE

NNA alleges that the Plaintiffs' claims are barred, in whole or in part, by the principles of law set forth in Section 5 of the Restatement (Third) of Torts on Products Liability.

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

**EIGHTH DEFENSE**

NNA alleges that the product(s) at issue were designed and manufactured in a manner consistent with the state of the art at the time in question and did not present an unreasonable risk to Plaintiffs.

**NINTH DEFENSE**

NNA alleges that none of Plaintiffs' causes of action states a claim sufficient to support an award of punitive damages.

**TENTH DEFENSE**

NNA alleges that any recovery by Plaintiffs on their claim for punitive damages is subject to any cap on punitive damages as may be enacted and become part of Missouri or United States law, including, but not limited to, R.S.Mo. §§ 510.265 and 510.263.

**ELEVENTH DEFENSE**

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages would violate NNA's rights under the Constitution of the United States of America and the Constitution of the State of Missouri, and, therefore, the prayer for such damages should be stricken from the complaint.

**TWELFTH DEFENSE**

Plaintiffs' claims for punitive damages cannot be sustained because an award of punitive damages under applicable state law by a jury that (1) is not provided constitutionally adequate standards of sufficient clarity for determining the appropriate imposition of, and the appropriate size of, a punitive damages award, (2) is not adequately instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including

43

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

without limitation the residence, wealth and corporate status of NNA (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible, (5) is not properly instructed regarding Plaintiffs' burden of proof with respect to each and every element of a claim for punitive damages and (6) is not subject to trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of constitutionally adequate and objective standards, would violate NNA's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and the equivalent provision(s) of the applicable state constitution, and would be improper under the common law and public policies of applicable state law.

### THIRTEENTH DEFENSE

Plaintiffs' claims for punitive damages against NNA cannot be sustained, because any award of punitive damages under applicable state law without the apportionment of the award separately and severally between or among the alleged joint tortfeasors, as determined by the alleged percentage of the wrong committed by each alleged tortfeasor, would violate NNA's due process and equal protection rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and the equivalent provision(s) of the applicable state constitution, and would be improper under the common law and policies of applicable state law.

### FOURTEENTH DEFENSE

Plaintiffs' claims for punitive damage cannot be sustained because Missouri law or the Missouri punitive damage scheme fails to provide adequate procedural safeguards consistent with the criteria set forth in State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408 (2003), BMW of North America, Inc. v. Gore, 517 U.S. 559 (1996), Pacific Mutual Life

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

Insurance Company v. Haslip, 499 U.S. 1 (1990), and Matthews v. Eldridge, 424 U.S. 319 (1976), for the imposition of a punitive award.

### FIFTEENTH DEFENSE

Plaintiffs' claims for punitive damages cannot be sustained because, in the admission of evidence, the standards provided the trier of fact (including jury instructions), and post-trial and appellate review, Missouri law and the Missouri punitive damage scheme place undue emphasis on a defendant's wealth as a basis for making and enhancing a punitive damage award, and do not require that the award must not be based on any desire to redistribute wealth.

### SIXTEENTH DEFENSE

Plaintiffs' claims for punitive damages cannot be sustained because under Missouri law and the Missouri punitive damage scheme, there is no limit on the number of times NNA could be held accountable for punitive damages based on the same alleged conduct as that alleged in this case.

### SEVENTEENTH DEFENSE

Insofar as the punitive damage award sought by Plaintiffs seeks to impose punitive damages under Missouri law for conduct in other states, the award violates: (a) NNA's rights to due process under the Fourteenth Amendment of the United States Constitution and under similar provisions of the Missouri Constitution; (b) the dormant or negative commerce clause derived from Article I, section 8, clause 3 of the United States Constitution; (c) the Full Faith and Credit Clause of Article IV, section 1 of the United States Constitution; (d) the requirement of the United States Constitution that a state respect the autonomy of other states within their spheres; and (e) punitive damages intrude upon Congress' constitutional power to grant letters of marque and reprisal and to make rules concerning captures on land and water.

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

**EIGHTEENTH DEFENSE**

Plaintiffs' claims against NNA are barred and/or limited by the Missouri Product Liability Act, including but not limited to R.S.Mo. §§ 537.760, 537.762, 537.764, and 537.765.

**NINETEENTH DEFENSE**

NNA avers that the venue of this action is incorrect.

**TWENTIETH DEFENSE**

NNA claims its right to set off, settlement or judgment credits, to the extent applicable and allowed pursuant to Missouri law.

**TWENTY FIRST DEFENSE**

A finding of liability under current Missouri law and procedure would violate NNA's constitutional rights, both facially and as applied, under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Constitution of Missouri and under the Article I, Section 22(a)(right to a trial by jury), in that:

  a. Missouri law, by virtue of Missouri Approved Instructions 25.04 and 25.05, fails to submit to the jury one or more specific alleged defects upon which the jury must base its finding that the product is unreasonably dangerous.

   (i) This gives the jury a roving commission with no constraints whatsoever to find the product unreasonably dangerous; and

   (ii) Fails to limit the jury's consideration to those defects specified and supported by substantial evidence;

   (iii) This also denies NNA any meaningful review by the trial court of the submissibility of Plaintiffs' claims as to certain defects, and

   (iv) This permits the jury to render a verdict against NNA based upon the vote of less than a majority of the jury, with each of the minimum of nine

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

jurors required to vote for a verdict against NNA basing that vote on a defect never alleged in the pleadings, a different allegation of defect, a defect for which Plaintiffs do not have substantial evidence, a defect never claimed by Plaintiffs' experts or a defect never mentioned in the evidence at the trial; and

b.      Missouri law by virtue of Missouri Approved Instructions 25.04 and 25.05 allows the jury a roving commission with no constraints whatsoever in that no factors or objective standards to consider in deciding whether a product is unreasonably dangerous are given the jury; and

c.      Missouri allows the jury a roving commission with no constraints whatsoever because no factors are given the trial court to meaningfully review the submissibility of a case or to review meaningfully a jury's verdict, both as to liability and as to the amount of damages awarded.

### TWENTY SECOND DEFENSE

If Plaintiffs suffered any injuries or damages as alleged, Plaintiffs are not entitled to recover any damages because of Plaintiffs' failure to mitigate.

### TWENTY THIRD DEFENSE

Plaintiffs are barred from maintaining an action for breach of warranty, if any, because Plaintiffs failed to give proper notice within reasonable time after Plaintiffs discovered, or should have discovered, such alleged breach of warranty.

### TWENTY FOURTH DEFENSE

Plaintiffs are barred from maintaining an action for breach of warranty, if any, because the vehicle referred to in the First Amended Petition meets or exceeded any and all applicable warranties.

47

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

**TWENTY FIFTH DEFENSE**

Plaintiffs are barred from maintaining an action for breach of warranty, if any, because they are not in privity of contract with NNA and there are no implied warranties running from NNA to Plaintiffs.

**TWENTY SIXTH DEFENSE**

NNA hereby gives notice that it intends to rely upon any other affirmative defenses pled by any other defendant and not pled by NNA in this case to the extent they do not conflict with NNA's affirmative defenses and hereby reserves its right to amend its Answer to assert any such affirmative defenses.

**TWENTY SEVENTH DEFENSE**

NNA hereby gives notice that it intends to rely upon any other defenses that may become available or appear during the discovery proceedings in this case and hereby reserves its right to amend its Answer to assert any such defenses.

**JURY DEMAND**

NNA requests trial by jury as to all issues.

Respectfully submitted,

/s/ Adam T. Suroff
ADAM T. SUROFF                    KS #19595
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri  64112
(816) 753-1000
(816) 753-1536 (Fax)
asuroff@polsinelli.com

ATTORNEYS FOR DEFENDANT
NISSAN NORTH AMERICA, INC.

48

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 02:13 PM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.


/s/ Adam T. Suroff
ATTORNEY FOR DEFENDANTS

70995099.1

Electronically Filed - City of St. Louis - November 04, 2019 - 04:52 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| CHRISTINA HILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1822-cc11782 |
| | ) | |
| THE MISSOURI HIGHWAYS & | ) | Division 1 |
| TRANSPORTATION COMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE AND**
**CONSENT FOR ADDITIONAL TIME TO FILE RESPONSIVE PLEADINGS**

COMES NOW John P. Kemppainen, Jr. and Rynearson Suess Schnurbusch & Champion LLC, and hereby enter their appearance on behalf of Defendant Missouri Highways & Transportation Commission (MHTC).  By consent of the parties, Defendant MHTC is hereby granted an additional twenty (20) days, up to and including, November 25, 2019, within which to file its responsive pleadings, preserving all affirmative defenses and objections, including but not limited to service, jurisdiction, and venue.

**RYNEARSON, SUESS, SCHNURBUSCH**
**& CHAMPION, L.L.C.**


By:     */s/ John P. Kemppainen, Jr.*
      John P. Kemppainen, Jr.     #42461
      Jennifer Woulfe         #64252
      *Attorneys for Defendant MHTC*
      500 N. Broadway, Ste 1550
      St. Louis, MO 63102
      (314) 421-4430
      (314) 421-4431 (FAX)
      jkemppainen@rssclaw.com
      jwoulfe@rssclaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with the Court this **4th day of November, 2019**, and served on all counsel of record via the Missouri Courts electronic filing system. Pursuant to Rule 55.03(a), the undersigned attorney certifies that they have signed an original of this document.

          /s/  John P. Kemppainen, Jr.

Electronically Filed - City of St. Louis - November 04, 2019 - 04:56 PM

**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| CHRISTINA HILL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Cause No. 1822-cc11782 |
| | ) | |
| THE MISSOURI HIGHWAYS & | ) | Division 1 |
| TRANSPORTATION COMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY OF APPEARANCE**

COMES NOW Jennifer L. Woulfe of Rynearson Suess Schnurbusch & Champion LLC, and hereby enters her appearance on behalf of Defendant Missouri Highways & Transportation Commission (MHTC).

**RYNEARSON, SUESS, SCHNURBUSCH**
**& CHAMPION, L.L.C.**


By:    */s/ Jennifer L. Woulfe*
     John P. Kemppainen, Jr.    #42461
     Jennifer Woulfe    #64252
     *Attorneys for Defendant MHTC*
     500 N. Broadway, Ste 1550
     St. Louis, MO 63102
     (314) 421-4430
     (314) 421-4431 (FAX)
     jkemppainen@rssclaw.com
     jwoulfe@rssclaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was electronically filed with the Court this **4th day of November, 2019**, and served on all counsel of record via the Missouri Courts electronic filing system. Pursuant to Rule 55.03(a), the undersigned attorney certifies that they have signed an original of this document.

                */s/ Jennifer L. Woulfe*

Electronically Filed - City of St. Louis - November 04, 2019 - 03:16 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

| | | |
|---|---|---|
| CHRISTINA HILL, *in her capacity as* | ) | |
| *Next Friend for the following Minor* | ) | |
| *Plaintiffs:* | ) | |
| ▮▮▮▮▮▮▮▮▮▮▮ et al., | ) | |
| Plaintiff, | ) | Cause No. 1822-CC11782 |
| | ) | Div. 1 |
| vs. | ) | |
| | ) | |
| THE MISSOURI HIGHWAYS AND | ) | |
| TRANSPORTATION COMMISSION, | ) | |
| et al., | ) | |
| Defendants. | ) | |

<u>NOTICE</u>

Comes now Plaintiff and presents the attached receipt from the Missouri Supreme Court,

confirming payment of all pro hac vice fees on behalf of Brett Turnbull and Joe Leak, per this

Court's Order entered October 8, 2019.


/s/Mark H. Zoole
Mark H. Zoole #38635
P.O. Box 190549
St. Louis, MO  63119
(314) 223-0436
zoole@sbcglobal.net


<u>Certificate of Service</u>

The undersigned certifies that a true and correct copy of the foregoing was sent via email
and the Court Clerk's electronic filing notification system to all counsel of record, including
John F. Medler, 2030 Main Street, Ste, 1300, Irvine, CA, 92614, john@johnmedlerlawfirm.com,
on this 4th day of November, 2019.

/s/Mark H. Zoole

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI

CHRISTINA HILL, in her capacity as )
Next Friend for the following Minor )
Plaintiffs: )
███████████████████████ )
███████████████████████ )
██████████ and ████████ )
██████████ )
█████████, )
)
     Plaintiffs, )
)
vs. )    Case No. 1822-CC11782
)
THE MISSOURI HIGHWAYS AND )    Division 1
TRANSPORTATION COMMISSION )
a/k/a THE MISSOURI DEPARTMENT )
OF TRANSPORTATION a/k/a )
"MODOT," et al., )
)
     Defendants. )

**Answer and Affirmative Defenses of Defendant Continental Automotive Systems, Inc. to Plaintiffs' First Amended Petition for Wrongful Death and Personal Injury**

Defendant Continental Automotive Systems, Inc. ("CAS") hereby answers the allegations contained in the First Amended Petition as follows:

1.

With respect to the allegations contained in Paragraph 1 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

**PARTIES, JURISDICTION, AND VENUE**

2.

With respect to the allegations contained in Paragraph 2 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

1

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

3.

With respect to the allegations contained in Paragraph 3 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

4.

With respect to the allegations contained in Paragraph 4 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

5.

With respect to the allegations contained in Paragraph 5 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

6.

With respect to the allegations contained in Paragraph 6 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

7.

With respect to the allegations contained in Paragraph 7 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

8.

With respect to the allegations contained in Paragraph 8 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

9.

With respect to the allegations contained in Paragraph 8 of the First Amended Petition, the provisions of *Rev. Stat. Mo. Secs. 507.184 and 507.120* speak for themselves, and CAS denies all allegations that are inconsistent therewith.

10.

With respect to the allegations contained in Paragraph 10 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

11.

With respect to the allegations contained in Paragraph 11 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

12.

With respect to the allegations contained in Paragraph 12 of the First Amended Petition, the provisions of *Rev. Stat. Mo. Sec. 537.080, et seq.* speak for themselves, and CAS denies all allegations that are inconsistent therewith. CAS denies that it was negligent and further denies that it caused decedent's death. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in that paragraph and therefore denies the same.

13.

With respect to the allegations contained in Paragraph 13 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

14.

With respect to the allegations contained in Paragraph 14 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

15.

The allegations contained in Paragraph 15 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the First Amended Petition and therefore denies the same.

16.

With respect to the allegations contained in Paragraph 16 of the First Amended Petition, CAS admits that it is a corporation organized under the laws of Delaware with its principal place of business in Auburn Hills, MI and is a successor in interest to Continental Teves. The remaining allegations contained in Paragraph 16 of the First Amended Petition are a legal conclusion for which no answer is necessary. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth as to the remaining allegations contained in Paragraph 15 of the First Amended Petition and therefore denies the same.

17.

With respect to the allegations contained in Paragraph 16 of the First Amended Petition, CAS denies that it designs, manufactures, distributes and/or sells "braking systems" for any automobile, including certain Nissan vehicles. CAS is engaged in the business of, among other things, designing (in part), testing (in part), manufacturing (in part), and supplying (in part) component parts for vehicles sold in the United States.

18.

With respect to the allegations contained in Paragraph 18 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

19.

With respect to the allegations contained in Paragraph 19 of the First Amended Petition,

4

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

20.

With respect to the allegations contained in Paragraph 20 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

21.

The allegations contained in Paragraph 21 of the First Amended Petition contain legal conclusions to which no response is required.  To the extent a response is required, CAS denies that it is "either located in Missouri or otherwise do[es] regular and systematic business in Missouri" or that it "committed torts in Missouri". CAS is without knowledge or information sufficient to form a belief as to the truth as to the remaining allegations contained in Paragraph 21 of the First Amended Petition and therefore denies the same.

22.

With respect to the allegations contained in Paragraph 22 of the First Amended Petition, the provisions of *Rev. Stat. Mo. Secs. 508.010.4 and 508.010.11* speak for themselves, and CAS denies all allegations that are inconsistent therewith. CAS is without knowledge or information sufficient to form a belief as to the truth as to the remaining allegations contained in Paragraph 22 of the First Amended Petition and therefore denies the same.

## FACTUAL ALLEGATIONS

### I. The Accident

23.

With respect to the allegations contained in Paragraph 23 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

24.

5

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

With respect to the allegations contained in Paragraph 24 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

25.

With respect to the allegations contained in Paragraph 25 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

26.

With respect to the allegations contained in Paragraph 26 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

27.

With respect to the allegations contained in Paragraph 27 of the First Amended Petition, to the extent that any allegations are directed at CAS, CAS denies that any component of the braking system on the Nissan Armada supplied by CAS was defective. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 27 of the First Amended Petition and therefore denies the same.

28.

With respect to the allegations contained in Paragraph 28 of the First Amended Petition, to the extent that any allegations are directed at CAS, CAS denies that any component of the braking system on the Nissan Armada supplied by CAS was a cause of the accident. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 28 of the First Amended Petition and therefore denies the same..

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

29.

With respect to the allegations contained in Paragraph 29 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

30.

With respect to the allegations contained in Paragraph 30 of the First Amended Petition, to the extent that any allegations are directed at CAS, CAS denies that any component of the braking system on the Nissan Armada supplied by CAS was defective or "bad". CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 30 of the First Amended Petition and therefore denies the same.

31.

With respect to the allegations contained in Paragraph 31 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

32.

With respect to the allegations contained in Paragraph 32 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

33.

With respect to the allegations contained in Paragraph 33 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

34.

With respect to the allegations contained in Paragraph 34 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

35.

With respect to the allegations contained in Paragraph 35 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

36.

With respect to the allegations contained in Paragraph 36 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

**II. The Ownership and Maintenance of Riverview Drive**

37.

The allegations set forth in Paragraph 37 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

38.

The allegations set forth in Paragraph 38 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

39.

The allegations set forth in Paragraph 39 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, *Article IV, Section 30(b)(3)(e)* of the Missouri Constitution speaks for itself, and CAS denies all allegations that are inconsistent therewith. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 39 of the First Amended Petition and therefore denies the same.

8

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

40.

The First Amended Petition contains no Paragraph 40.

41.

The allegations set forth in Paragraph 41 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

42.

The allegations set forth in Paragraph 42 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

43.

The allegations set forth in Paragraph 43 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

44.

The allegations set forth in Paragraph 44 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

45.

The allegations set forth in Paragraph 45 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

46.

The allegations set forth in Paragraph 46 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

47.

The allegations set forth in Paragraph 47 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

**III. Factual Basis for MODOT's Liability**

48.

The allegations set forth in Paragraph 48 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

**A. MODOT's Negligent Failure to Warn: Inadequate Signage**

49.

The allegations set forth in Paragraph 49 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

50.

The allegations set forth in Paragraph 50 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

51.

The allegations set forth in Paragraph 51 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

52.

The allegations set forth in Paragraph 52 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

53.

The allegations set forth in Paragraph 53 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

54.

The allegations set forth in Paragraph 54 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

55.

The allegations set forth in Paragraph 55 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

56.

The allegations set forth in Paragraph 56 of the First Amended Petition are not directed at

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">57.</div>

The allegations set forth in Paragraph 57 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">58.</div>

The allegations set forth in Paragraph 58 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">59.</div>

The allegations set forth in Paragraph 59 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">60.</div>

The allegations set forth in Paragraph 60 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

### B. MODOT's Negligent Redesign and Marking of Riverview Driver in 2008; and Confusing Road Configuration Leading to Crossover Accidents

<div align="center">61.</div>

The allegations set forth in Paragraph 61 of the First Amended Petition are not directed at

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

62.

The allegations set forth in Paragraph 62 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

63.

The allegations set forth in Paragraph 63 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

64.

The allegations set forth in Paragraph 64 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

65.

The allegations set forth in Paragraph 65 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

66.

The allegations set forth in Paragraph 66 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

allegations contained in that paragraph and therefore denies the same.

<div align="center">67.</div>

The allegations set forth in Paragraph 67 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">68.</div>

The allegations set forth in Paragraph 68 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">69.</div>

The allegations set forth in Paragraph 69 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">70.</div>

The allegations set forth in Paragraph 70 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">71.</div>

The allegations set forth in Paragraph 71 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

72.

The allegations set forth in Paragraph 72 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

73.

The allegations set forth in Paragraph 73 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

74.

The allegations set forth in Paragraph 74 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

75.

The allegations set forth in Paragraph 75 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

76.

The allegations set forth in Paragraph 76 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

77.

The allegations set forth in Paragraph 77 of the First Amended Petition are not directed at

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

78.

The allegations set forth in Paragraph 78 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

79.

The allegations set forth in Paragraph 79 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

80.

The allegations set forth in Paragraph 80 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

81.

The allegations set forth in Paragraph 81 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

82.

The allegations set forth in Paragraph 82 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

allegations contained in that paragraph and therefore denies the same.

<div align="center">83.</div>

The allegations set forth in Paragraph 83 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">84.</div>

The allegations set forth in Paragraph 84 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">85.</div>

The allegations set forth in Paragraph 85 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">86.</div>

With respect to the allegations contained in Paragraph 86 of the First Amended Petition, to the extent that any allegations are directed at CAS, CAS denies that any component of the braking system on the Nissan Armada supplied by CAS was a cause of the accident. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 86 of the First Amended Petition and therefore denies the same.

<div align="center">87.</div>

The allegations set forth in Paragraph 87 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the

<div align="center">17</div>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

allegations contained in that paragraph and therefore denies the same.

88.

The allegations set forth in Paragraph 88 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

89.

The allegations set forth in Paragraph 89 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

90.

The allegations set forth in Paragraph 90 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

91.

The allegations set forth in Paragraph 91 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

92.

The allegations set forth in Paragraph 92 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

**VI. Factual Basis for the Liability of Nissan and Continental.**

93.

With respect to the allegations contained in Paragraph 93 of the First Amended Petition, CAS denies that Nissan North America, Inc. ("NNA") "chose" CAS to design the "braking system and its component parts". The remaining allegations set forth in Paragraph 93 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in that paragraph and therefore denies the same.

94.

With respect to the allegations contained in Paragraph 94 of the First Amended Petition, CAS admits that it supplied the Delta Stroke Sensor ("DSS") used in the vehicle identified in Plaintiffs' First Amended Petition, and it was located within the brake booster.  The DSS communicates certain information to the Electronic Control Unit ("ECU"). Except as specifically admitted, CAS denies the allegations contained in Paragraph 94 of the First Amended Petition.

95.

With respect to the allegations contained in Paragraph 95 of the First Amended Petition, CAS admits that the DSS communicates certain information to the ECU. Except as specifically admitted, CAS denies the allegations contained in Paragraph 95 of the First Amended Petition.

96.

With respect to the allegations contained in Paragraph 96 of the First Amended Petition, CAS admits that the DSS communicates certain information to the ECU, which can make Optimized Hydraulic Braking ("OHB") available under certain conditions. Except as specifically admitted, CAS denies the allegations contained in Paragraph 96 of the First Amended Petition.

97.

CAS denies the allegations contained in Paragraph 97 of the First Amended Petition and specifically denies that the DSS was defective.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

98.

With respect to the allegations contained in Paragraph 98 of the First Amended Petition, CAS admits that the DSS communicates certain information to the ECU, which can make OHB available under certain conditions. Except as specifically admitted, CAS denies the allegations contained in Paragraph 98 of the First Amended Petition and specifically denies that the DSS was defective.

99.

CAS denies the allegations contained in Paragraph 99 of the First Amended Petition and specifically denies that the DSS was defective.

100.

CAS denies the allegations contained in Paragraph 100 of the First Amended Petition insofar as they are directed at CAS, and specifically denies that the DSS was defective. The remaining allegations set forth in Paragraph 100 of the First Amended Petition are directed at Nissan North America, Inc. ("NNA"); therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies the same.

101.

The allegations set forth in Paragraph 101 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

102.

With respect to the allegations contained in Paragraph 102 of the First Amended Petition, CAS admits that Diagnostic Trouble Code ("DTC") C1179 relates to the DSS. Except as specifically admitted, CAS denies the allegations contained in Paragraph 102 of the First Amended Petition and specifically denies that the DSS was defective.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

103.

The allegations set forth in Paragraph 103 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

104.

With respect to the allegations contained in Paragraph 104 of the First Amended Petition, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

105.

CAS denies the allegations contained in Paragraph 105 of the First Amended Petition and specifically denies that the DSS was defective.

106.

The allegations set forth in Paragraph 106 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

107.

The allegations set forth in Paragraph 107 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

108.

The allegations set forth in Paragraph 108 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">109.</div>

The allegations set forth in Paragraph 108 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">110.</div>

The allegations set forth in Paragraph 110 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">111.</div>

The allegations set forth in Paragraph 111 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">112.</div>

The allegations set forth in Paragraph 112 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">113.</div>

With respect to the allegations contained in Paragraph 113 of the First Amended Petition, CAS admits that a meeting between CAS and NNA personnel occurred on October 27, 2005. Except as specifically admitted, CAS denies the allegations contained in Paragraph 113 of the

<div align="center">22</div>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

First Amended Petition and specifically denies that the DSS was defective.

<div align="center">114.</div>

With respect to the allegations contained in Paragraph 114 of the First Amended Petition, CAS admits that a meeting between CAS and NNA personnel occurred on October 27, 2005. Except as specifically admitted, CAS denies the allegations contained in Paragraph 114 of the First Amended Petition and specifically denies that the DSS was defective.

<div align="center">115.</div>

With respect to the allegations contained in Paragraph 115 of the First Amended Petition, CAS admits that Technical Service Bulletins were issued by NNA. Except as specifically admitted, CAS denies the allegations contained in Paragraph 115 of the First Amended Petition and specifically denies that the DSS was defective.

<div align="center">116.</div>

With respect to the allegations contained in Paragraph 116 of the First Amended Petition, CAS admits that Technical Service Bulletins were issued by NNA in May 2006, one of which was NTB06-040. Except as specifically admitted, CAS denies the allegations contained in Paragraph 116 of the First Amended Petition and specifically denies that the DSS was defective.

<div align="center">117.</div>

With respect to the allegations contained in Paragraph 117 of the First Amended Petition, CAS admits that Technical Service Bulletins were issued by NNA that reference or relate to DTC C1179. Except as specifically admitted, CAS denies the allegations contained in Paragraph 117 of the First Amended Petition and specifically denies that the DSS was defective.

<div align="center">118.</div>

The allegations set forth in Paragraph 118 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center"></div>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

119.

The allegations set forth in Paragraph 119 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, the provisions of 49 CFR Sec. 579.5 speak for themselves, and CAS denies all allegations that are inconsistent therewith. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in that paragraph and therefore denies the same.

120.

The allegations set forth in Paragraph 120 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

121.

The allegations set forth in Paragraph 121 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

122.

With respect to the allegations set forth in Paragraph 122 of the First Amended Petition, CAS denies that DSS was defective or that CAS had any duty to notify "owners" of anything. The remaining allegations set forth in Paragraph 122 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of those allegations and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

123.

The allegations set forth in Paragraph 123 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

124.

The allegations set forth in Paragraph 124 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

125.

The allegations set forth in Paragraph 125 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

126.

The allegations set forth in Paragraph 126 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

127.

The allegations set forth in Paragraph 127 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

128.

The allegations set forth in Paragraph 128 of the First Amended Petition are not directed

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

129.

The allegations set forth in Paragraph 129 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

130.

With respect to the allegations contained in Paragraph 130 of the First Amended Petition, CAS admits that a class action lawsuit was filed in the Northern District of California entitled *Brandon Banks, et al. v. Nissan North America, Inc., et al.,* Case No. C 11-2022 PJH. Except as specifically admitted, CAS denies the allegations contained in Paragraph 130 of the First Amended Petition and specifically denies that the DSS was defective.

131.

With respect to the allegations contained in Paragraph 131 of the First Amended Petition, CAS admits that a class action lawsuit was filed in the Northern District of California entitled *Brandon Banks, et al. v. Nissan North America, Inc., et al.,* Case No. C 11-2022 PJH and that the case was subsequently settled. Except as specifically admitted, CAS denies the allegations contained in Paragraph 131 of the First Amended Petition and specifically denies that the DSS was defective.

132.

CAS denies the allegations contained in Paragraph 130 of the First Amended Petition and specifically denies that the DSS was defective.

133.

The allegations set forth in Paragraph 133 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

134.

CAS admits the allegations set forth in Paragraph 134 of the First Amended Petition except the allegation "Nissan refused to pay the verdict". CAS is without knowledge or information sufficient to form a belief as to the truth of that allegation and therefore denies the same.

135.

With respect to the allegations contained in Paragraph 135 of the First Amended Petition, CAS admits that the accident that gives rise to this litigation occurred on October 26, 2018. Except as specifically admitted, CAS denies the allegations contained in Paragraph 135 of the First Amended Petition and specifically denies that the DSS was defective or the cause of the accident that gives rise to this litigation.

136.

CAS admits the allegations set forth in Paragraph 136 of the First Amended Petition.

137.

The allegations set forth in Paragraph 137 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

## COUNT I

**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq*);**

**MODOT: Negligent Signage; Negligent Roadway Design; Negligent Failure to Warn;**

**Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec.***

***537.600.1(2))***

138.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 137 of the First Amended Petition as set forth above.

139.

With respect to the allegations contained in Paragraph 139 of the First Amended Petition, the provisions of *Rev. Stat. Mo. Sec. 507.600.1(2)* speaks for itself, and CAS denies all allegations that are inconsistent therewith.

140.

The allegations set forth in Paragraph 140 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

141.

The allegations set forth in Paragraph 141 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

142.

The allegations set forth in Paragraph 142 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

143.

The allegations set forth in Paragraph 143 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

144.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

The allegations set forth in Paragraph 144 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 144 are directed at CAS, CAS denies that Plaintiffs are entitled to the relief that they seek.

## COUNT II

**(Personal Injuries of ███████████; MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

145.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 144 of the First Amended Petition as set forth above.

146.

The allegations set forth in Paragraph 146 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 144 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

## COUNT III

**(Personal Injuries of ███████████; MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))***

147.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 146 of the First Amended Petition as set forth above.

29

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

148.

The allegations set forth in Paragraph 148 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 148 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

## COUNT IV

**(Personal Injuries of ███████; MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))*

149.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 148 of the First Amended Petition as set forth above.

150.

The allegations set forth in Paragraph 150 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 150 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

## COUNT V

**(Personal Injuries of ███████████ MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under *Rev. Stat. Mo. Sec. 537.600.1(2))*

151.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

through 150 of the First Amended Petition as set forth above.

<p style="text-align:center">152.</p>

The allegations set forth in Paragraph 152 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 152 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that he seeks.

<p style="text-align:center"><strong><u>COUNT VI</u></strong></p>

<p style="text-align:center"><strong>(Personal Injuries of</strong> ███████ <strong>; MODOT: Negligent Signage, Negligent Roadway Design, Negligent Failure to Warn, and Negligent Maintenance; Waiver of Sovereign Immunity under <em>Rev. Stat. Mo. Sec. 537.600.1(2)</em>)</strong></p>

<p style="text-align:center">153.</p>

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 152 of the First Amended Petition as set forth above.

<p style="text-align:center">154.</p>

The allegations set forth in Paragraph 154 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 154 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that he seeks.

<p style="text-align:center"><strong><u>COUNT VII</u></strong></p>

<p style="text-align:center"><strong>(Wrongful Death of Whitney Thomas (<em>Rev. Stat. Mo. Secs. 537.080 et seq</em>);</strong></p>

<p style="text-align:center"><strong>Nissan: Strict Products Liability for Design Defects)</strong></p>

<p style="text-align:center">155.</p>

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1

<p style="text-align:center">31</p>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

through 154 of the First Amended Petition as set forth above.

<div align="center">156.</div>

The allegations set forth in Paragraph 156 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">157.</div>

The allegations set forth in Paragraph 157 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 157 and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">158.</div>

The allegations set forth in Paragraph 158 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">159.</div>

The allegations set forth in Paragraph 159 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">160.</div>

The allegations set forth in Paragraph 160 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

the allegations contained in that paragraph and therefore denies the same.

<div align="center">161.</div>

The allegations set forth in Paragraph 161 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 161 are directed at CAS, CAS denies that Plaintiffs are entitled to the relief that they seek.

<div align="center">

**COUNT VIII**

**(Personal Injuries of ⬛⬛⬛⬛⬛⬛; Nissan: Strict Products Liability for Design Defects)**

162.

</div>

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 161 of the First Amended Petition as set forth above.

<div align="center">163.</div>

The allegations set forth in Paragraph 163 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">164.</div>

The allegations set forth in Paragraph 164 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 164 and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">165.</div>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

The allegations set forth in Paragraph 165 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

166.

The allegations set forth in Paragraph 166 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

167.

The allegations set forth in Paragraph 167 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

168.

The allegations set forth in Paragraph 168 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 168 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

## COUNT IX

**(Personal Injuries of ███████████; Nissan: Strict Products Liability for Design Defects)**

169.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 168 of the First Amended Petition as set forth above.

34

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

170.

The allegations set forth in Paragraph 170 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

171.

The allegations set forth in Paragraph 171 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 171 and therefore denies the same and specifically denies that the DSS was defective.

172.

The allegations set forth in Paragraph 172 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

173.

The allegations set forth in Paragraph 173 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

174.

The allegations set forth in Paragraph 174 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

175.

The allegations set forth in Paragraph 175 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 175 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

## COUNT X

**(Personal Injuries of** ▮▮▮▮▮▮▮▮ **; Nissan: Strict Products Liability for Design Defects)**

176.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 175 of the First Amended Petition as set forth above.

177.

The allegations set forth in Paragraph 177 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

178.

The allegations set forth in Paragraph 178 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 178 and therefore denies the same and specifically denies that the DSS was defective.

179.

The allegations set forth in Paragraph 179 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">180.</div>

The allegations set forth in Paragraph 180 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">181.</div>

The allegations set forth in Paragraph 181 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">182.</div>

The allegations set forth in Paragraph 182 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 182 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that she seeks.

<div align="center"><strong><u>COUNT XI</u></strong></div>

<div align="center">(<strong>Personal Injuries of</strong> ███████████ <strong>Nissan: Strict Products Liability for Design Defects)</strong></div>

<div align="center">183.</div>

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 182 of the First Amended Petition as set forth above.

<div align="center">184.</div>

The allegations set forth in Paragraph 184 of the First Amended Petition are not directed

<div align="center">37</div>

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

185.

The allegations set forth in Paragraph 185 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 185 and therefore denies the same and specifically denies that the DSS was defective.

186.

The allegations set forth in Paragraph 186 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

187.

The allegations set forth in Paragraph 187 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

188.

The allegations set forth in Paragraph 188 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

189.

The allegations set forth in Paragraph 189 of the First Amended Petition are not directed

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 189 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that he seeks.

## COUNT XI

**(Personal Injuries of ▮▮▮▮▮▮▮; Nissan: Strict Products Liability for Design Defects)**

190.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 189 of the First Amended Petition as set forth above.

191.

The allegations set forth in Paragraph 191 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

192.

The allegations set forth in Paragraph 192 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 192 and therefore denies the same and specifically denies that the DSS was defective.

193.

The allegations set forth in Paragraph 193 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

39

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

194.

The allegations set forth in Paragraph 194 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

195.

The allegations set forth in Paragraph 195 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

196.

The allegations set forth in Paragraph 196 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 196 are directed at CAS, CAS denies that Plaintiff is entitled to the relief that he seeks.

## <u>COUNT XIII</u>

**(Wrongful Death of Whitney Thomas (*Rev. Stat. Mo. Secs. 537.080 et seq*);**

**Nissan: Strict Products Liability Failure to Warn)**

197.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 196 of the First Amended Petition as set forth above.

198.

The allegations set forth in Paragraph 198 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

the allegations contained in that paragraph and therefore denies the same.

<div align="center">199.</div>

The allegations set forth in Paragraph 199 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 199 and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">200.</div>

The allegations set forth in Paragraph 200 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

<div align="center">**[Paragraphs 201 to 209 Omitted in First Amended Petition]**</div>

<div align="center">210.</div>

The allegations set forth in Paragraph 210 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">211.</div>

The allegations set forth in Paragraph 211 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

<div align="center">212.</div>

The allegations set forth in Paragraph 212 of the First Amended Petition are not directed

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

213.

The allegations set forth in Paragraph 213 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 213 are directed at CAS, CAS denies that Plaintiffs are entitled to the relief that they seek.

## COUNT XIV

**(Personal Injuries of** ███████████ **; Nissan: Strict Products Liability Failure to Warn)**

214.

CAS reasserts and incorporates by reference each of its responses to Paragraphs 1 through 213 of the First Amended Petition as set forth above.

215.

The allegations set forth in Paragraph 215 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

164. [SIC]

The allegations set forth in Paragraph 216 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS reasserts and incorporates by reference each of its responses to Paragraphs 93 through 137 of the First Amended Petition as set forth above. CAS is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 216 and therefore denies the same and specifically denies that the DSS was defective.

Electronically Filed - City of St. Louis - November 15, 2019 - 02:28 PM

216.

The allegations set forth in Paragraph 216 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same and specifically denies that the DSS was defective.

217.

The allegations set forth in Paragraph 217 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

218.

The allegations set forth in Paragraph 218 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

219.

The allegations set forth in Paragraph 219 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same.

220.

The allegations set forth in Paragraph 220 of the First Amended Petition are not directed at CAS; therefore, no answer is necessary to those allegations. To the extent a response is required, CAS is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in that paragraph and therefore denies the same. To the extent the allegations in the "WHEREFORE" paragraph following Paragraph 220 are directed at CAS,